UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MEDICAL SOCIETY OF THE STATE OF NEW YORK, on behalf of its members and their patients, SOCIETY OF NEW YORK OFFICE BASED SURGERY FACILITIES, on behalf of its members and their patients, and PODIATRIC OR OF MIDTOWN MANHATTAN, P.C., on its own behalf, on behalf of its patients, and on behalf of all others similarly situated, <br><br>        Plaintiffs, <br><br>  v. <br><br>UNITEDHEALTH GROUP INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE LLC, OPTUM GROUP, LLC, and OPTUM, INC., <br><br>        Defendants. | Civil Action No. 16-cv-5265 <br><br><br><br><br><br><br><br><br>**CLASS ACTION COMPLAINT** |

  Plaintiffs the Medical Society of the State of New York ("MSSNY"), the Society of New York Office Based Surgery Facilities ("NYOBS"), and Podiatric OR of Midtown Manhattan, P.C. ("Podiatric OR") (collectively, "Plaintiffs"), based upon personal knowledge as to themselves and their own acts, and as to all other matters upon information and belief formed after an inquiry reasonable under the circumstances, assert the following in support of their claims against Defendants.

## INTRODUCTION

  1. Defendants United Healthcare and its group of subsidiary and affiliated companies (collectively referred to herein as "United") are in the business of insuring and administering health insurance plans, many of which are employer-sponsored and governed by

5591214.1

the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq*. (the "United Plans").  United is one of the largest health insurers in the State of New York.

2.      In some instances, United provides a fully-insured product in which the employer pays a per-employee premium to United, and United assumes the risk of providing health coverage for insured events.

3.      In other instances, United acts as an administrator of the insurance plan for the employer, and makes all benefit determinations.  United authorizes benefit checks to be issued out of bank accounts which United controls.  Periodically, United will notify the sponsors of the self-funded plans of the need to replenish the accounts so that benefits can be paid.  But United nevertheless continues to control these accounts and is fully responsible for processing the insurance claims and making the determination whether to issue the check from these accounts.

4.      On information and belief, in both instances, United has a substantial financial incentive to minimize expenditures for the plans, and United bears at least a portion of the risk. For example, United often provides "stop loss" coverage to self-insured plans for claims exceeding a pre-determined amount.  On information and belief, the claims at issue here involve both fully-insured and self-insured plans.

5.      With respect to all United Plans, United serves as the claims administrator, responsible for determining whether any given claim is covered by the corresponding United Plan and effectuating any resulting benefit payment.

6.      As such, United is a fiduciary with respect to all United Plans covered under ERISA.

7.      Under the terms of all United Plans, United is obligated to cause the plans to make benefit payments when someone insured by one of those plans (a "United Insured")

obtains health care treatment that is covered by the terms of that plan (a "Covered Service"). Most United Plans, and all those at issue in this action, allow United Insureds to receive insurance benefits from both in-network ("INET") providers and out-of-network ("ONET") providers.  This case concerns United's handling of ONET claims.

8. All United Plans define Covered Services to include outpatient surgery, and provide benefits for both: (1) the expense associated with the surgeon's time and expertise (a "surgeon's fee"); and (2) the expense associated with the "facility" in which the surgery was performed (a "facility fee").

9. Until recently, United honored these plan terms.  When a United Insured received medically necessary, ONET outpatient surgery, United caused the insured's United Plan to make one benefit payment for the surgeon's time/expertise and another for the "facility" fee.  With respect to the "facility fee", United paid benefits regardless of whether the entity was a hospital, an ambulatory surgical center ("ASC"), or an office-based surgery ("OBS") "facility" — that is, an operating room in an office which was registered with the state of New York, reported to the Department of Health of the State of New York (the DOH), and accredited by entities approved by the DOH, in which the surgeon performed the surgery.  Like hospitals, OBS practices are monitored and accredited under New York law, and the rationale for paying a fee to a hospital applies equally to an OBS practice. The expenses of running an operating room in an OBS practice are similar to those of other facilities. Although those other facilities may have other expenses, the costs of rendering care in an operating room are similar.

10. United caused the plans to pay these facility fees because they are covered by the United Plans, and because United (and the plans) recognized that there are substantial costs associated with setting up and maintaining any operating room, whether it is an OBS, ASC or

hospital in which surgeries could be performed, which are separate and apart from the professional fees paid to the surgeons themselves. In fact, many types of outpatient surgery (for example, foot surgery; ear, nose and throat surgery; and colonoscopies) can be performed as safely and at lower cost in office-based settings, rather than in ambulatory surgery locations and the risk of complications is much less than in hospitals. This is why New York State has created a separate credentialing process for OBS practices.

11. More recently, however, United has asserted that it can use its authority to cause all United Plans uniformly to refuse to pay OBS fees, despite the fact that the language in the overwhelming majority of United Plans related to outpatient surgeries has not materially changed. This is United's "Uniform Refusal to Pay."

12. Upon information and belief, United adopted the Uniform Refusal to Pay because that policy allows it to save millions of dollars in OBS fees that it would otherwise be required to pay vis-à-vis both fully-insured and self-insured United Plans.

13. The Medical Society of the State of New York ("MSSNY") and the Society of New York Office Based Surgery Facilities ("NYOBS") are associations which represent the interests of health care providers and their patients. The memberships of both MSSNY and NYOBS include ONET providers who operate OBS practices. MSSNY and NYOBS bring this action in associational capacity seeking injunctive and/or declaratory relief under ERISA to challenge United's Uniform Refusal to Pay, which it applied to deny all OBS claims under all plans.

14. Plaintiff Podiatric OR of Midtown Manhattan, P.C., dba Adler Footcare ("Podiatric OR") is an OBS practice in which health care providers perform surgeries. It brings

this action on behalf of claimants whose claims for OBS fees under ERISA plans were denied by United pursuant to the Uniform Refusal to Pay.

## THE PARTIES

15.     MSSNY is a non-profit membership organization representing the interests of physicians and their patients in New York, and has approximately 30,000 member physicians, medical residents and medical students. Its members include physicians operating ONET OBS practices that are subject to United's Uniform Refusal to Pay and whom would otherwise have standing to pursue their own claims. For example, MSSNY member Dr. Darrick E. Antell, who operates the Columbia Eastside Ambulatory Surgery, P.C. (an OBS practice), has had a number of patients who are United Insureds and whose claims were wrongfully denied by Defendants.

16.     MSSNY, which is headquartered in Westbury, New York, is committed to representing the medical profession in advocating health-related rights, responsibilities and issues. It lobbies on behalf of its members involving numerous issues that impact providers and their patients, including regarding reimbursement rates and state law requirements for OBS practices.

17.     NYOBS is a not-for-profit 501(c)(6) corporation that advocates for accredited office based surgery practices in New York State. Its members are composed of those physicians, dentists and podiatrists in New York State who have accredited OBS practices. It is headquartered in Albany, New York. NYOBS's goals are to: (1) promote excellence in the practice of office based surgery, (2) encourage ethical ideals in the practice of office based surgery, (3) educate the public regarding office based surgery, and (4) represent office based surgery facilities at the state and national level.

18.     Many of NYOBS's members, including Dr. Jeffrey Adler (the owner of Podiatric OR) and Dr. Albert Knapp (a gastroenterologist practicing in Manhattan, New York) operate

OBS practices that are the subject of United's Uniform Refusal to Pay. The claims of several of Dr. Adler's patients are described below. Dr. Knapp similarly has a number of patients who are United Insureds and whose claims were wrongfully denied by Defendants.

19. As part of its goal of assisting its members in protecting their interests and those of their patients, NYOBS spends substantial time addressing grievances concerning the policies and practices of insurers. In particular, NYOBS has received many complaints concerning United's Uniform Refusal to Pay. In response, members of NYOBS discussed the matter with United Healthcare, explaining why these facility fees should be paid, and also met with the Department of Financial Services (DFS) of New York State along with several insurance company representatives in attempts to address this situation.

20. Podiatric OR is a health care provider with offices in Manhattan and White Plains. It does not have a direct contractual relationship with United, but regularly provides treatment to United Insureds on an ONET basis.

21. Defendant UnitedHealth Group Inc. issues, administers, and makes benefit determinations related to ERISA health care plans in New York through its various wholly-owned and controlled subsidiaries, including Defendants United HealthCare Services, Inc., United HealthCare Service LLC, and United HealthCare Insurance Company. Defendant UnitedHealth Group Inc. operates as, and owns the trademark to, "UnitedHealthcare."

22. Defendant United HealthCare Insurance Company is a wholly-owned subsidiary of Unimerica, Inc., which is wholly-owned and controlled by Defendant United HealthCare Services, Inc. It is the underwriter of insurance provided by United HealthCare Services, Inc. and certain state-level subsidiaries/affiliates. It participates in the claims administration process

5591214.1

related to United Plans insured or administered by such subsidiaries/affiliates, and issues and administers other United Plans, most of which are governed by ERISA.

23. Defendant United HealthCare Service LLC is a subsidiary of Defendant United HealthCare Insurance Company, and serves as its agent with respect to benefits claim adjudication.

24. Defendants Optum Group, LLC and Optum, Inc. are both wholly-owned subsidiaries of UnitedHealth Group Inc. and act as UnitedHealth Group Inc.'s agents with respect to benefit claims processing and adjudication.

25. Defendants, other than UnitedHealth Group Inc., do not operate independently and in their own interests, but serve solely to fulfill the purpose, goals and policies of Defendant UnitedHealth Group Inc.

## JURISDICTION AND VENUE

26. Plaintiffs assert subject matter jurisdiction under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

27. Venue is appropriate in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in New York, and a substantial part of the property that is the subject of the action – the OBS facilities and the accounts receivable for the facility fees – is also situated here. Venue is also appropriate under 29 U.S.C. § 1132(e)(2) because Defendants may be found here and are authorized to do business in New York, either directly or through wholly owned and controlled subsidiaries.

28. This Court has personal jurisdiction over Defendants because Defendants have substantial contacts with, and regularly conduct business in, New York.

## FACTUAL ALLEGATIONS

A. **Office-Based Surgery**

29. Over the years, many health care providers licensed to perform surgery invested substantial sums of money establishing and maintaining their own OBS practices. They did so because OBS, in contrast to hospital-based surgery, is generally both more convenient and safer for patients (for example, it exposes patients to a lesser risk of infection).

30. Generally, OBS practices are separately incorporated entities that have their own Taxpayer Identification Numbers and National Provider Identifier (NPI) numbers distinct from those used by the provider.

31. Recognizing the significance and usefulness of OBS practices, New York monitors and credentials those practices. New York's Public Health Law (PHL) § 230-d defines Office-Based Surgery as "any surgical or other invasive procedure requiring general anesthesia, moderate sedation, or deep sedation, and any liposuction procedure, where such surgical or other invasive procedure or liposuction is performed by a licensee in a location other than a hospital, as such term is defined in article twenty-eight of this chapter, excluding minor procedures and procedures requiring minimal sedation."

32. The OBS law's definition of "licensee" includes physicians, certain podiatrists, physician assistants, and specialist assistants. A licensee under New York law may perform "office-based surgery in a setting that has obtained and maintains full accredited status." PHL § 230-d(i). "Accredited status" under the law is defined as "the full accreditation by nationally-recognized agency(ies) determined by the commissioner." *Id.* § 230-d(a). Plaintiff Podiatric OR has obtained "accredited status" as defined under New York law.

33. In contrast to the OBS law, PHL Article 28 refers to "hospitals." The term "hospital" as defined in PHL § 2801(1) includes acute care or general hospitals, nursing homes,

diagnostic and treatment centers, and free-standing ambulatory surgical centers. Article 28-facilities are not subject to the OBS law, and accredited OBS practices are not subject to PHL Article 28.

### B.     United Plans Require Benefit Payments for OBS "Facility Fees"

34. United has made publicly available an exemplar of its standard "Certificate of Coverage" (the "Certificate") (excerpts attached as Exhibit A). The Certificate sets forth the basic terms under which United Plans provide medical/surgical benefits.

35. United's Certificate contains a lengthy list of "Covered Health Services." One "covered health service" is "Surgery – Outpatient," which is defined as "Surgery and related services received on an outpatient basis at a Hospital or Alternate Facility or in a Physician's office." In such a case, United promises to cover "the facility charge and the charge for supplies and equipment." The Certificate goes on to define an Alternate Facility as "a health care facility that is not a Hospital and that provides [surgical] . . . services on an outpatient basis, as permitted by law."

36. Thus, the typical United Plan agrees to pay OBS "facility charges" because they are for outpatient surgery at "a health care facility that is not a Hospital" and which is indisputably authorized by New York State law.

37. Consistent with its Plans' language, United did not historically distinguish between OBS "facility fees" and hospital facility fees. It uniformly caused all United Plans to pay both.

C. **United's Adoption of Its Uniform Refusal to Pay**

38. More recently, however, United has routinely refused to cause United Plans to pay OBS facility fees – despite the fact that the terms of most United Plans have not changed with respect to the coverage provided for out-of-network outpatient surgeries.

39. Instead, United has conditioned payment of "facility fees" on a provider's ability to demonstrate that it is licensed under Article 28 (i.e., a hospital or ambulatory surgery center). Indeed, United is now demanding *repayment* of several of the "facility fees" it previously paid to OBS practices, despite the fact that its retroactive denials of such claims uniformly fail to cite any plan language supporting United's actions.

**Patient A**

40. On August 16, 2014, for example, Plaintiff Podiatric OR's accredited OBS practice in Manhattan was the site of surgery on a United Insured referred to herein as Patient A,[1] who was insured under a United Plan sponsored by Byram Healthcare Center, Inc. and governed by ERISA.

41. Patient A has executed documents related to her care and to her claims for benefits which provide as follows:

- Patient A has named Podiatric OR as her Authorized Representative as provided for in ERISA, 29 C.F.R. § 2560.503-1(b)(4).

- Patient A has assigned solely to Podiatric OR all of her rights, claims and other interests – including the right to file suit – connected to the care provided by Podiatric OR to Patient A on August 16, 2014.

- Patient A has appointed Podiatric OR as her attorney-in-fact "to exercise all powers required in connection with the successful maintenance of any claims for benefits or other relief in connection with any insurance for" her care on August 16, 2014.

---

[1] The names of the patients referenced in the body of this complaint have been replaced with aliases (Patient A, Patient B, etc.) to protect those patients' privacy. For the same reason, identifying information related to the patients identified in all of the PEOBs attached to this Complaint has been redacted.

42. Patient A has agreed to pay the difference between any payments received from United, and her cost of care by Podiatric OR.

43. Upon successful completion of the surgery, Podiatric OR submitted an insurance claim to United, informing United that it had an assignment from Patient A and directing that all benefits due under the Byram Healthcare Center, Inc./United Plan be paid directly to Podiatric OR.

44. On or about November 3, 2014 United provided Podiatric OR with a Provider Explanation of Benefits (the "November 3, 2014 PEOB") that described how it had processed the claim Podiatric OR submitted on behalf of Patient A. The November 3, 2014 PEOB was provided to Podiatric OR online from a United website. A redacted copy of the PEOB is attached hereto as Exhibit B.

45. In the November 3, 2014 PEOB, United recognized that Podiatric OR was the assignee of the claim and the proper recipient of any subsequent benefit payment. In processing the claim, United stated that a total of $72,378.00 of the claim was "denied" under the Byram Healthcare Center, Inc./United Plan because "facility fees are not payable on this claim." United then stated that this non-covered amount – $72,378.00– was the "patient['s] responsibility."

46. Podiatric OR hires a third party consultant, American National Medical Management ("ANMM"), to file all appeals on its patients' behalf when insurers deny benefit claims. Patient A designated ANMM as her authorized representative consistent with 29 C.F.R. § 2560.503-1(b)(1) during the internal appeals process described below.

47. On February 2, 2015, ANMM submitted a written first-level appeal to United of the denial of benefits for OBS "facility fees" for Patient A's August 16, 2014 procedure.

5591214.1

48.     On February 4, 2015, ANMM received a letter from United acknowledging receipt of the appeal. In a letter dated February 11, 2015, directed to a representative from ANMM but sent to Patient A's address, United denied the appeal, stating that it was a duplicate that had already been addressed.

49.     After United failed to pay, ANMM submitted an April 10, 2015 written second-level appeal regarding that claim denial. Despite these two appeals, the claim remains unpaid. The second appeal was denied on June 10, 2015 in a letter addressed to Podiatric OR.

**Patient B**

50.     On October 17, 2014, Podiatric OR's accredited OBS practice in Manhattan was the site of surgery for Patient B, who resides in Long Island City, New York, was insured under a United Plan sponsored by Diageo North America and governed by ERISA.

51.     Patient B has executed documents related to her care and to her claims for benefits which are identical to those signed by Patient A.

52.     Patient B has agreed to pay the difference between any payments received from United, and her cost of care by Podiatric OR.

53.     Upon successful completion of the surgery, Podiatric OR submitted an insurance claim to United, informing United that it had an assignment from Patient B and directing that all benefits due under the Diageo/United Plan be paid directly to Podiatric OR.

54.     On or about December 9, 2014 United provided Podiatric OR with a PEOB (the "December 9, 2014 PEOB") that described how it had processed the claim Podiatric OR submitted on behalf of Patient B for the October 17, 2014 surgery. The December 9, 2014 PEOB was provided to Podiatric OR online from United's website. A redacted copy of the PEOB is attached hereto as Exhibit C.

55. In the December 9, 2014 PEOB, United recognized that Podiatric OR was the assignee of the claim and the proper recipient of any subsequent benefit payment. In processing the claim, United stated that a total of $46,360.50 of the claim was "denied" under the Diageo/United Plan because "facility fees are not payable on this claim." United then stated that this non-covered amount – $46,360.50 – was the "patient['s] responsibility."

56. Patient B designated ANMM as her authorized representative consistent with 29 C.F.R. § 2560.503-1(b)(1) at all relevant times during the internal appeals process described below.

57. On February 2, 2015, ANMM appealed United's claim denial for OBS "facility fees" for Patient B's October 17, 2014 procedure.

58. In a letter dated February 19, 2015, addressed to Patient B, United denied the first level appeal. ANMM itself never received a response from United regarding the first level appeal.

59. After United failed to pay, ANMM submitted a written second-level appeal on April 20, 2015, to which it never received a response. The claim remains unpaid.

60. United's denials of claims for Patients A and B were not isolated, or based on the facts of any individual claim or plan. Rather, they represent United's Uniform Refusal to Pay that appears to be applied across the board. Indeed, United sent a letter to Podiatric OR dated August 11, 2014 (attached as Exhibit D) which was not tied to a particular claim, but addressed all pending and future claims which Podiatric OR might submit on behalf of any United Insured and any United Plan. In this letter, United stated: "As a non-participating [ONET] physician office with an OBS accreditation, ***UnitedHealth Group will not reimburse facility fees***. This letter is sent as notice that any future claims for facility or ASC [Ambulatory Surgical Center]

5591214.1

charges *will not be paid*." (Emphasis added.) United did not offer Podiatric OR an opportunity to appeal or otherwise challenge this policy, but instead presented it as a final – and irrefutable – coverage determination that would be applied in any future claims.

61. United repeated its policy in another letter it sent Podiatric OR, dated December 17, 2014, which stated that its purpose was "to reiterate that unless you have a license to operate as an Ambulatory Surgery Center, *facility fees will not be paid*." (Attached as Exhibit E (emphasis added)).

62. Most recently, United informed Podiatric OR in an April 6, 2015 letter, expressly referencing Patient A and Patient B, among others, that the insurance company wanted to "reiterate that unless [Plaintiff has] a license to operate as an Ambulatory Surgery Center, *facility fees will not be paid*." (Attached as Exhibit F (emphasis added)).

63. These letters from United are commonly sent to providers operating OBS practices. Indeed, in a letter dated May 11, 2016, United stated to another provider that "without a valid operating certificate to operate as a free-standing Ambulatory Surgery Center issued by the New York Commissioner of Health, UnitedHealth Group will not reimburse facility charges performed in a physician's office."

64. United's letters demonstrate that United's Uniform Refusal to Pay was developed without regard to the terms of the United Plans, and that it applies this policy uniformly to all United Plans, without regard to those Plans' particular terms and provisions. United has decided as a matter of internal policy that "UnitedHealth Group will not reimburse facility charges performed in a physician's office." (Exh. F at 1).

65. United's Uniform Refusal to Pay is perplexing – and illegal – because it is not based on the language of any particular United Plan. If it were, United would be unable to assert

definitively that "*facility fees will not be paid*." (Exh. F at 1 (emphasis added)). Moreover, if United was relying on plan terms, it presumably would have cited such language in one or more of the letters it sent to Podiatric OR and to other providers.

66. United's actions demonstrate that Defendants' acts and decisions are entitled to no deference because they did not rely on the language of the United Plans in developing or applying the Uniform Refusal to Pay.

    D.    **United's ERISA Violations**

67. At all relevant times, and with respect to United's acts alleged herein, the United Plans delegated all claims administration duties to United, and United therefore served as an ERISA fiduciary. In particular, United was responsible for interpreting and applying plan terms; making coverage and benefit decisions; developing internal policies – such as United's Uniform Refusal to Pay – to aid those activities; complying with ERISA's notice and appeal requirements set forth in 29 C.F.R § 2560.503-1 ("ERISA Claims Procedure"); and effectuating benefit payments, in all or substantially all instances from its own assets.

68. Additionally, as an ERISA fiduciary, United was required to discharge its duties with respect to the United Plans "solely in the interest of the participants and beneficiaries" and "for the exclusive purpose of . . . providing benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1). This means, among other things, that United was required to act "in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with [ERISA]." *Id.* By using its discretionary authority to develop the Uniform Refusal to Pay without regard to the terms of the United Plans (either individually or collectively), and then using that policy as a basis for refusing to cause any United Plan to pay OBS "facility fees" (thus imposing the liability for such fees on United

Insureds) without regard to the particular provisions of any particular plan, United violated its fiduciary duties.

69.     In each of the OBS claims at issue here, United refused outright to pay any benefit at all for the use of Podiatric OR's OBS practice.  United has done so without any legal authority under the United Plans or otherwise, and has left the United Insureds financially responsible for unpaid bills for Covered Services that their respective United Plans are obligated to pay.

## CLASS-RELATED ALLEGATIONS

70.     Plaintiff Podiatric OR brings claims on behalf of a class defined as:

All claimants who sought a health insurance benefit payment for an accredited OBS "facility fee" from a United health insurance plan governed by ERISA, for covered services rendered in the State of New York in an ONET OBS practice, and whose claim for payment was denied by United because it was not for a hospital or ambulatory surgical center, or for like or similar reasons.

71.     The members of the Class are so numerous that joinder of all members is impractical.  Although the precise number of members in the Class is known only to United, upon information and belief, there are approximately 970 accredited OBS practices in New York State as of June 2016, which, combined, treat tens of thousands of United Insureds.  A large percentage of United Plans which govern those United Insureds are governed by ERISA.

72.     Common questions of law and fact that can be resolved with common answers exist as to all class members. Such common questions include whether:

    (1)     United adopted a uniform policy or practice to refuse to pay OBS "facility fees";

    (2)     United relied upon the terms of one or more United Plans when adopting that policy;

    (3)     United's Uniform Refusal to Pay constituted a breach of its fiduciary duty;

    (4)     United consistently applies its Uniform Refusal to Pay to all United Plans;

5591214.1

      (5)    Class members are entitled to equitable relief requiring United to reprocess their OBS claims in compliance with ERISA;

      (6)    Class members are entitled to recover unpaid benefits of OBS fees and, if so, the amounts they should receive;

      (7)    Class members are entitled to interest on the payment of unpaid benefits under ERISA; and

      (8)    Class members are entitled to other equitable relief as sought herein.

73.    Podiatric OR's claims with respect to Patients A and B are typical of the claims of the class members. Podiatric OR is a member of the class pursuant to assignments it has received from its United Insured patients, or as an authorized representative of such patients, or as its patients' power of attorney designee.

74.    Podiatric OR will fairly and adequately protect the interests of the members of the class; is committed to the vigorous prosecution of this action; has retained counsel competent and experienced in class action litigation and the prosecution of ERISA claims; and has no interests antagonistic to, or in conflict with, those of the class.

75.    The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for United.

76.    By routinely withholding benefits owed for OBS claims, United has acted and refused to act on grounds that apply generally to the class.

77.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members of the class is impracticable.

78.    United maintains claims databases that record when and how it receives, processes and pays (or refuses to pay) OBS "facility fees." Accordingly, the members of the class can be readily and objectively ascertained through use of records maintained by United.

5591214.1

## COUNT I

### CLAIM FOR BENEFITS
**(on behalf of Podiatric OR and the class against all Defendants)**

79. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

80. Count I is brought under 29 U.S.C. § 1132(a)(1)(B).

81. United systematically violated the terms of the United Plans by adopting its Uniform Refusal to Pay; applying that policy routinely and without known exception to claims for OBS fees submitted on behalf of United Insureds; and relying upon that policy as a basis for refusing to cause the United Plans to pay benefits for such OBS facility fees.

82. United should be required to pay all benefits for such OBS facility fees.

## COUNT II

### CLAIM FOR INJUNCTIVE AND DECLARATORY RELIEF
**(on behalf of Plaintiffs and the class against all Defendants)**

83. The foregoing allegations are re-alleged and incorporated by reference as if fully set forth herein.

84. Count II is brought under 29 U.S.C. § 1132(a)(1)(B) or, alternatively, 1132(a)(3).

85. United has systematically violated ERISA by failing to honor plan terms, by adopting the Uniform Refusal to Pay, applying that policy routinely and without known exception to claims for OBS fees submitted on behalf of United Insureds, and relying upon that policy as a basis for refusing to cause the United Plans to pay benefits for such fees.

86. The Court should declare that United's systematic application of its Uniform Refusal to Pay violates ERISA and United should be enjoined from applying its Uniform Refusal to Pay policy to claims for OBS fees submitted on behalf of United Insureds, and from relying upon that policy as a basis for refusing to cause the United Plans to pay benefits for such fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs demand judgment in their favor against United as follows (subject to the caveat that MSSNY and NYOBS are seeking solely injunctive and declaratory relief under ERISA on behalf of their members and their patients):

A. Certifying the Class and appointing Podiatric OR as Class Representative and Plaintiffs' counsel as Class Counsel;

B. Ordering United to reprocess all denied OBS claims in compliance with ERISA and/or using specific United Plan language;

C. Ordering United to notify all Class Members and all MSSNY and NYOBS members of the right to resubmit claims for services provided through an OBS practice for which "facility fees" were not submitted in which such "facility fees" may be included, and ordering United to reprocess such claims in compliance with ERISA and/or using specific United Plan language;

D. Declaring that United is obliged to cause the United Plans to pay benefits for OBS claims unless expressly excluded by Plan language;

E. Ordering United to make payment, with interest, of all benefits previously denied under these circumstances;

F. Ordering United to disgorge the profits it earned by failing to pay benefits under these circumstances;

G. Permanently enjoining United from denying benefits under these circumstances;

H. Awarding Plaintiffs disbursements and expenses of this action, including reasonable attorneys' fees, in amounts to be determined by the Court; and

I. Granting such other and further relief as is just and proper.

Dated:  July 1, 2016

Respectfully submitted,

s/ D. Brian Hufford
D. Brian Hufford
Jason S. Cowart
ZUCKERMAN SPAEDER LLP
399 Park Avenue, 14th Floor
New York, NY  10022
212.704.9600
212.704.4256 (fax)
dbhufford@zuckerman.com
jcowart@zuckerman.com

Cyril V. Smith (*pro hac vice* motion forthcoming)
ZUCKERMAN SPAEDER LLP
100 East Pratt Street, Suite 2440
Baltimore, MD  21202
410.332.0444
410.659.0436 (fax)
csmith@zuckerman.com

John W. Leardi
BUTTACI & LEARDI, LLC
103 Carnegie Center, Suite 323
Princeton, NJ  08540
609.799.5150
609.799.5180 (fax)
jwleardi@buttacilaw.com

*Counsel for Plaintiffs and the Putative Class*

5591214.1