UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE MEDICAL SOCIETY OF THE
STATE OF NEW YORK, *et al.*, and on
behalf of all others similarly situated,
                                    Plaintiffs,

                -v-

UNITEDHEALTH GROUP INC., *et al.*,
                                    Defendants.

16-CV-5265 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs The Medical Society of the State of New York; the Society of New York Office

Based Surgery Facilities; Dr. Jeffrey Adler; Podiatric OR of Midtown Manhattan, P.C.; Dr.

Darrick Antell; Columbia East Side Surgery, P.C.; and Dr. Albert B. Knapp, M.D., P.C., in his

own name and in the name of his eponymous business (collectively, "Plaintiffs"), bring this

putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"),

29 U.S.C. §§ 1001, *et seq.*, against Defendants UnitedHealth Group Inc.; United HealthCare

Services, Inc.; United HealthCare Insurance Company; United HealthCare Service LLC; Optum

Group, LLC; Optum, Inc.; and Oxford Health Plans LLC (collectively, "United").

In their First Amended Complaint ("Complaint"), Plaintiffs allege that United has

systematically violated the terms of its health insurance plans by refusing to pay the facility fees

charged by out-of-network office-based surgery practices. (Dkt. No. 36 ("FAC").) United now

moves to dismiss the Complaint for failure to state a claim upon which relief can be granted.

(Dkt. No. 50.) For the reasons that follow, the motion is granted in part and denied in part.

## I.      Background

United is one of the largest health insurance providers in the state of New York.  (FAC ¶ 1.)  United offers both fully-insured and self-insured plans (collectively, "United Plans"), many of which are employer-sponsored and governed by ERISA.[1]  (*Id.* ¶¶ 1, 4.)  For both types of plans, United bears sole responsibility for determining whether a given claim is covered by the corresponding health plan, and, as a result, United qualifies as a fiduciary under ERISA.  (*Id.* ¶¶ 5, 145.)  Under the terms of all United Plans, an insured individual ("United Insured") receives a benefit payment when she obtains treatment that is covered by the terms of her particular United Plan.  (*Id.* ¶ 6).  Most United Plans, and all plans at issue in this case, allow United Insureds to receive benefits for services provided by both in-network and out-of-network providers.  (*Id.*)

All United Plans cover outpatient surgeries.  (*Id.* ¶ 7.)  Outpatient surgeries may be performed in three types of settings: in a hospital, in an ambulatory surgical center ("ASC"), or in an operating room in a doctor's office ("office-based surgery" or "OBS").  (*Id.* ¶ 8.)

This case arises out of United's refusal to pay a portion of the fees charged by out-of-network OBS providers for outpatient surgeries.  (*Id.* ¶ 8.)  The cost of an outpatient surgery includes two categories of expenses: (1) the expense associated with the surgeon's time and expertise, called the "surgeon's fee," and (2) the expense associated with the facility in which the surgery was performed, called the "facility fee."  (*Id.* ¶ 7.)  Until recently, United paid facility fees for hospitals, ASCs, and OBS practices.  (*Id.* ¶ 39.)  Plaintiffs allege, however, that United

---

[1]      For fully-insured plans, United acts as the insurer, meaning that employers pay United a per-employee premium, and United assumes all the risk of paying for covered health events.  (FAC ¶ 2.)  For self-insured plans, United acts as the plan administrator, meaning that United makes benefits determinations and issues payments from accounts funded—at least up to a certain point—by employers themselves.  (*Id.* ¶¶ 3–4.)

has recently adopted a "Uniform Refusal to Pay" policy whereby United "uniformly . . . refuse[s] to pay" OBS facility fees for out-of-network providers. (*Id.* ¶¶ 10–11, 135–37.) Plaintiffs allege that United's new Uniform Refusal to Pay violates the terms of its standard "Certificate of Coverage" (*id.* ¶¶ 36–41) and the particular plan terms of Patients A through G[2] (*id* ¶¶ 42–134), who are represented in this action by their doctors. Plaintiffs claim that "United's [Uniform Refusal to Pay] was developed without regard to the terms of the United Plans" and, as a result, the Uniform Refusal to Pay "is . . . illegal . . . because it is not based on the language of any particular United Plan." (*Id.* ¶¶ 139–40.)

Plaintiffs in this action include a collection of physicians and medical practices that provided outpatient surgeries to United Insureds on an out-of-network basis. (*Id.* ¶¶ 19–21.) The physicians and practices named as plaintiffs in this case are as follows:

- Dr. Jeffrey Adler is the sole owner and operator of Podiatric OR of Midtown Manhattan, P.C. ("Podiatric"). (*Id.* ¶ 13.) Dr. Adler and Podiatric bring this action as the representatives of Patient A, who is insured under a United Plan sponsored by Byram Healthcare Center, Inc. (the "Byram Plan") (*id.* ¶ 42), and Patient B, who is insured under a United Plan sponsored by Diageo North America (the "Diageo Plan") (*id.* ¶ 56).

- Dr. Darrick Antell is the sole owner and operator of Columbia East Side Surgery, P.C. ("Columbia"). (*Id.* ¶ 13.) Dr. Antell and Columbia bring this action as the representatives of Patients C and D, who are insured under a United Plan sponsored by Morgan Stanley (*id.* ¶¶ 69, 83); Patient E, who is insured under a United Plan (*id.* ¶ 94) sponsored by the Hospital for Special Surgery (Dkt. No. 52-4 at 5); and Patient F, who is insured under a United Plan sponsored by CBS Corporation (FAC ¶ 104).

- Dr. Albert B. Knapp is the sole owner and operator of his eponymous practice ("Dr. Knapp's Practice"). (*Id.* ¶ 13.) Dr. Knapp and Dr. Knapp's Practice bring this action as the representatives of Patient G, who is insured under a United Plan sponsored by Ambrose Employer Group LLC. (*Id.* ¶ 122).

---

[2]     To protect patients' privacy, individual names have been replaced with aliases. (*see* FAC n.1.)

Plaintiffs allege that Patients A through G have validly assigned their claims to their respective physicians and practices. (*Id.* ¶¶ 55, 57 (Patients A and B); ¶¶ 71, 84, 95, 105 (Patients C through F); ¶ 134 (Patient G).)

In addition to Drs. Adler, Antell, and Knapp (collectively, "Physician Plaintiffs") and Podiatric, Columbia, and Dr. Knapp's Practice (collectively, "Practice Plaintiffs"), two associations are also named as plaintiffs in this action. The Medical Society of the State of New York ("MSSNY") and the Society of New York Office Based Surgery Facilities ("NYOBS") (collectively, "Association Plaintiffs") represent the interests of health care providers—including out-of-network OBS providers subject to United's Uniform Refusal to Pay—and their patients. (*Id.* ¶¶ 12, 14–18.) MSSNY and NYOBS bring this action in their associational capacities. (*Id.* ¶ 12.)

The Complaint asserts two claims for relief. Physician Plaintiffs and Practice Plaintiffs, on behalf of themselves and a putative class of others similarly situated, bring a claim under 29 U.S.C. § 1132(a)(1)(B) for unpaid benefits. (*Id.* ¶¶ 157–60 ("Count I").) Physician Plaintiffs, Practice Plaintiffs, and Association Plaintiffs, on behalf of themselves and the putative class, bring another claim under 29 U.S.C. § 1132(a)(1)(B) or, alternatively, § 1132(a)(3), for injunctive and declaratory relief from United's Uniform Refusal to Pay. (*Id.* ¶¶ 161–64 ("Count II").)

United has filed a motion to dismiss the Complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 50.) United makes four arguments: (1) the United Plans held by Patients A through G do not cover out-of-network OBS facility fees; (2) Patients B and G failed to exhaust administrative remedies; (3) various plaintiffs lack a cause of

action because they do not hold a validly assigned claim; and (4) the Association Plaintiffs lack standing.

## II. Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "[A] judge ruling on a defendant's motion to dismiss a complaint 'must accept as true all of the factual allegations contained in the complaint.'" *Twombly*, 550 U.S. at 572 (quoting *Swierkiewicz v. Sorema N. A.*, 534 U.S. 506, 508 n.1 (2002)). And while "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678, courts must draw "all inferences in the light most favorable to the non-moving party[]," *In re NYSE Specialists Sec. Litig.*, 503 F.3d 89, 95 (2d Cir. 2007) (Sotomayor, J.).

The court's task at the motion-to-dismiss stage "is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits." *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006). "The question in a Rule 12 motion to dismiss 'is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims.'" *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 115 (S.D.N.Y. 2016) (quoting *Villager Pond, Inc. v. Town of Darien,* 56 F.3d 375, 378 (2d Cir. 1995)). "Dismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

When considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may "look[] only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken." *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at \*3 (S.D.N.Y. Sept. 12, 2014) (citing *Samuels v. Air Transp. Local 504*, 992 F.2d 12, 15 (2d Cir. 1993)).[3]

## III.    Discussion

### A.    Plan Coverage

United first argues that Plaintiffs fail to state a claim under the United Plans covering Patients A through G.  (Dkt. No. 51 at 12.)  United accurately points out that when "a plan gives the administrator 'authority to determine eligibility for benefits or to construe the terms of the plan,' [courts] review the administrator's interpretation of benefits for abuse of discretion." *Duncan v. CIGNA Life Ins. Co. of New York*, 507 F. App'x 61, 62 (2d Cir. 2013) (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989)).  United holds such interpretive authority under the terms of the United Plans at issue in this case.  (FAC ¶ 145.)  Thus, United argues that its benefits determinations with respect to Patients A through G may be overturned by the Court only "if [United's] decision was 'without reason, unsupported by substantial evidence or erroneous as a matter of law.'" *Celardo v. GNY Auto. Dealers Health &*

---

[3]    Plaintiffs did not attach Patients A through G's United Plans to the Complaint; instead, United supplied the relevant plans to the Court through the Declaration of Sloane Ackerman. (*See* Dkt. Nos. 52-1 to 52-6.)  These plans are "integral to the complaint," *Rhee-Karn v. Burnett*, 2014 WL 4494126, at \*3, and may properly be considered in deciding United's motion to dismiss. *See Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551, 2016 WL 2939164, at \*3 (S.D.N.Y. May 19, 2016) ("The Governing Plan documents submitted by the defendants firmly fit into the category of documents integral to a complaint.  Courts routinely consider ERISA plan documents and their summary plan descriptions on motions to dismiss."); *DeSilva v. N. Shore-Long Island Jewish Health Sys., Inc.*, 770 F. Supp. 2d 497, 545 n.22 (E.D.N.Y. 2011) (considering "plan documentation submitted by defendants" when ruling on a motion to dismiss "because the plaintiffs' claims are based upon the ERISA plans and the plan documents plainly are integral to plaintiffs' complaint").

*Welfare Tr.*, 318 F.3d 142, 146 (2d Cir. 2003) (quoting *Pagan v. NYNEX Pension Plan*, 52 F.3d 438, 442 (2d Cir. 1995)).

Plaintiffs, however, have plausibly alleged that United's conduct precludes application of an abuse-of-discretion standard and instead requires *de novo* review. "[W]hen denying a claim for benefits, a plan's failure to comply with the Department of Labor's claims-procedure regulation, 29 C.F.R. § 2560.503–1, will result in that claim being reviewed *de novo* in federal court . . . ." *Halo v. Yale Health Plan*, 819 F.3d 42, 45 (2d Cir. 2016). Section 2560.503–1 requires that "any adverse benefit determination" include "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503–1(g); *see also id.* § 2560.503–1(j) (same). The Complaint alleges that United's denial notifications to Patients A through G failed to identify the specific terms of the underlying health plans that supported the adverse determinations. FAC ¶¶ 50, 62, 75, 88, 93, 99, 103, 109, 127, 133. As such, Plaintiffs have alleged facts which, if true, would trigger *de novo* review of United's benefit denials.[4]

---

[4] An ERISA fiduciary such as United may reinstate abuse-of-discretion review if its "failure to comply with the regulation in the processing of a particular claim was inadvertent *and* harmless." *Halo*, 819 F.3d at 45. However, United's argument that its alleged non-compliance "is harmless on its face" is unpersuasive. (Dkt. No. 58 at 3.) The Second Circuit has warned district courts that "[t]o prevent the exception from swallowing the rule, . . . deviations [from Department of Labor regulations] should not be tolerated lightly." *Halo*, 819 F.3d at 57–58. Furthermore, United "bears the burden of proof on this issue." *Id.* at 58. At this stage of litigation, the Court is not prepared to conclude that the plausibly alleged non-compliance was "inadvertent *and* harmless." *Id.* at 45. *Cf. Wilson v. Aetna Life Ins. Co.*, No. 15 Civ. 752, 2016 WL 5717370, at *8 (N.D.N.Y. Sept. 30, 2016) (granting the plan administrator deferential review and distinguishing *Halo* because "in *Halo*, the plan's denials of coverage were not only repeatedly untimely, but also failed to provide an explanation as to why the plan was denying coverage" and "[a]s such, it was impossible for the plaintiff and the reviewing court to determine the reason for the denial of coverage").

The Court will not conduct provisional *de novo* review of United's benefit determinations at the motion-to-dismiss stage. Especially because United's proffered denial justifications appear in the motion briefing but not the factual record, United's coverage arguments are better resolved at a later juncture with the benefit of a complete record and full briefing. For now, it is plausible to infer from the constellation of alleged denials and "stock letter[s]" mailed by United (*see* FAC ¶ 136; Dkt. No. 36-10) that "United's Uniform Refusal to Pay was developed without regard to the terms of the United Plans, and that it applies this policy uniformly to all United Plans, without regard to those Plans' particular terms and provisions" (FAC ¶ 139). This claim is further supported by the allegation that United "did not historically distinguish between OBS 'facility fees' and hospital facility fees" (*id.* ¶ 39), which may give rise to the inference that such a distinction is unreasonable.

In sum, Plaintiffs have plausibly alleged that United has refused to pay out-of-network OBS facility fees in violation of the terms of Plaintiffs' United Plans. The Court cannot conclude "from the face of the complaint, and matters of which the court may take judicial notice, that the plaintiff's claims are barred as a matter of law." *Parkcentral Glob. Hub*, 763 F.3d at 208–09 (quoting *Conopco*, 231 F.3d at 86) (internal quotation mark omitted). As a result, Patients A through G's claims survive United's motion to dismiss for failure to state a claim for benefits under the terms of their United Plans.

## B.    Exhaustion

United next argues that Patients B and G failed to exhaust the administrative remedies available under their United Plans and, as a result, cannot bring their claims in federal court. (Dkt. No. 51 at 22–24.) Specifically, United argues that Patient B's appeal should have been sent to Diageo instead of United (*id.* at 23–24), and that Patient G filed only one written appeal instead of the required two (*id.* at 24.)

Establishing failure to exhaust is an uphill battle for defendants on a motion to dismiss. "ERISA itself does not contain an exhaustion requirement," *Kirkendall v. Halliburton, Inc.*, 707 F.3d 173, 179 (2d Cir. 2013), and, as a result, "a failure to exhaust ERISA administrative remedies is not jurisdictional, but is an affirmative defense." *Paese v. Hartford Life & Accident Ins. Co.*, 449 F.3d 435, 445 (2d Cir. 2006). "A complaint may be dismissed on the grounds of an affirmative defense only 'if the defense appears on the face of the complaint.'" *Morillo v. 1199 SEIU Benefit & Pension Funds*, 783 F. Supp. 2d 487, 489 (S.D.N.Y. 2011) (quoting *Reid v. Supershuttle Int'l, Inc.*, No. 08 Civ. 4854, 2010 WL 1049613, at *7 (E.D.N.Y. Mar. 22, 2010)).

The Complaint contains sufficient factual allegations that Plaintiffs complied with their United Plans' exhaustion requirements. Plaintiffs allege that Patient G did, in fact, appeal more than once (FAC ¶¶ 132–33), and that Patient B fully exhausted her administrative remedies by completing two levels of appeal to United (*id.* ¶¶ 63–68).

Furthermore, regardless of whether Patients B and G actually exhausted their remedies in accordance with their plans' terms, Plaintiffs have plausibly alleged that they are excused from exhaustion. A plan's failure to comply with Department of Labor regulations results in deemed exhaustion. The C.F.R. states that

> in the case of the failure of a plan to establish or follow claims procedures consistent with the requirements of this section, a claimant shall be deemed to have exhausted the administrative remedies available under the plan and shall be entitled to pursue any available remedies under [§ 1132(a)] of [ERISA].

29 C.F.R. § 2560.503-1(*l*)(1). As discussed above, Plaintiffs allege that United failed to comply with the requirement that denials include "[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503–1(g); *see also id.* § 2560.503–1(j). Accepting the facts alleged in the Complaint as true, the Court cannot conclude that United's affirmative exhaustion defense

"appears on the face of the complaint." *Morillo*, 783 F. Supp. 2d at 489. Accordingly, Patients B and G's claims survive United's motion to dismiss for failure to exhaust administrative remedies.

### C. Assignment of Claims

The rights of action that Plaintiffs seek to assert are available only to participants, beneficiaries, and fiduciaries of benefit plans. 29 U.S.C. § 1132(a)(1), (3). Although physicians and their practices do not fall into any of these three categories, the Second Circuit has recognized a "narrow exception" that "allow[s] physicians to bring claims under [§ 1132(a)] based on a valid assignment from a patient." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016) (first quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)). United argues that: (1) the Physician Plaintiffs cannot bring claims on their patients' behalf because those patients' claims were assigned to the practices only, and (2) Podiatric cannot bring claims on behalf of Patients A and B because those patients' plans include anti-assignment provisions.

### 1. Assignments to Physician Plaintiffs

United argues that none of the Physician Plaintiffs hold valid assignments from their patients. (Dkt. No. 51 at 18.) This assertion is partially accurate. Plaintiffs concede that Patients A through F assigned their claims only to the OBS practices that treated them—Podiatric and Columbia—and not to Drs. Adler and Antell as natural persons. (Dkt. No. 54 at 12 n.7.) Plaintiffs also concede that Patient G assigned his claim to Dr. Knapp as a natural person, and not to Dr. Knapp's Practice as an incorporated entity. (*Id.*) Consequently, Dr. Adler, Dr. Antell, and Dr. Knapp's Practice are dismissed from this suit.

### 2. Assignments to Podiatric by Patients A and B

United argues that Patients A and B cannot validly assign their claims to Podiatric. A claim is not validly assigned—and is therefore the assignment is void—where the health plan in question "unambiguously prohibits assignment." *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013); *see also Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) (noting that "the majority of federal courts . . . have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision" and collecting cases); *Merrick*, 175 F. Supp. 3d at 120 (concluding that "the patients' assignments to Plaintiffs are void pursuant to the unambiguous language of the [plan] provision").

"In determining whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551, 2016 WL 2939164, at *4 (S.D.N.Y. May 19, 2016). Furthermore, "because [the Second Circuit] appl[ies] rules of contract law to ERISA plans, a court must not 'rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous.'" *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) (quoting *Cruden v. Bank of N.Y.*, 957 F.2d 961, 976 (2d Cir. 1992)) (citation omitted).

The United Plans covering both Patients A and B unambiguously bar assignment of claims. The Diageo Plan, held by Patient B, states that "[n]either you nor Diageo NA can assign, transfer, or attach your benefits . . . except as described below." (Dkt. No. 52-2 at 184.) This language is categorical and unambiguous. *See Neuroaxis Neurosurgical Assocs.*, 919 F. Supp. 2d at 354 (concluding that plans with similar clauses "render any purported assignment void"); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551,

2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (same).  The Byram Plan, held by Patient A,

states that "[y]ou may not assign your Benefits under the Policy to a non-Network provider

without our consent."  (Dkt. No. 52-1 at 43.)  The Complaint does not allege that Patient A

received United's consent, and Plaintiffs have never indicated that such consent could be

established through targeted discovery.  As such, the Court concludes that Patient A's purported

assignment was also unambiguously prohibited.  *See Merrick*, 175 F. Supp. 3d at 119 & n.13

(concluding that "assignments to Plaintiffs are void pursuant to the unambiguous language" of a

similar anti-assignment provision with a "Consent Clause" and declining to grant discovery

where "Plaintiffs do not allege that they sought and received consent and do not request

discovery to determine whether such consent was sought and received").

Plaintiffs try to distinguish the right to assign *benefits* from the right to assign a *cause of

action*.  (*See* Dkt. No. 54 at 12–13.)  This argument is unpersuasive.  It would be "internally

inconsistent . . . [to] allow the plaintiffs to pursue benefit payments in court, but contractually bar

them from receiving those payments."  *Mbody*, 2016 WL 2939164, at *6.  Joining other courts in

this district, this Court rejects such a strained distinction.  *See, e.g., id.* (collecting cases).

Plaintiffs argue in the alternative that Podiatric may pursue this claim as the "authorized

representative" or "attorney-in-fact" for Patients A and B.  (*See* Dkt. No. 54 at 14–16.)  But this

argument is unavailing.  ERISA "unambiguously provides that a civil action . . . may be brought

'by a participant, beneficiary, or fiduciary,'" *Am. Psychiatric Ass'n*, 821 F.3d at 360 (quoting 29

U.S.C. § 1132(a)(3)), and "[c]ourts have consistently read [this provision] as strictly limiting the

universe of plaintiffs who may bring certain civil actions," *id.* (alterations in original) (quoting

*Connecticut v. Physicians Health Servs. of Conn.*, 287 F.3d 110, 121 (2d Cir. 2002)) (internal

quotation marks omitted).  "ERISA carefully enumerates the parties entitled to seek relief,"

*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Tr. for S. California*, 463 U.S. 1, 27 (1983), and courts "cannot expand the congressionally-created statutory list of those who may bring a cause of action by importing third-party prudential considerations[,] . . . irrespective of whether [physicians] may stand in the shoes of their patients in other matters," *Am. Psychiatric Ass'n*, 821 F.3d at 360. Absent a valid assignment of Patient A and B's claims, Podiatric lacks a cause of action under ERISA. Consequently, Podiatric is dismissed from this suit.

### D. Associational Standing

In addition to Physician and Practice Plaintiffs, MSSNY and NYOBS join this suit in their associational capacities. *Hunt v. Washington State Apple Advertising Commission* held that

> an association has standing to bring suit on behalf of its members when: (a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit.

432 U.S. 333, 343 (1977). United challenges the Association Plaintiffs' standing under the first and third prongs of the *Hunt* test.

As to the first prong, United accurately notes that to support associational standing, some individual association member must hold a validly assigned claim such that the member could sue in its own right. But United's conclusion—that no "member" has standing to sue because only *physicians* are members while only *practices* hold assignments—takes too restrictive a view of associational membership.

Following *Hunt*'s warning not to "exalt form over substance," *Hunt*, 432 U.S. at 345, the Court is satisfied that, for standing purposes, the Association Plaintiffs' membership includes both physicians and their practices. The Complaint states that both "MSSNY and NYOBS are associations which represent the interest of health care providers and their patients" and that their

memberships include "ONET providers who operate OBS practices." (FAC ¶ 12.) Plaintiffs further allege that MSSNY "is committed to representing the medical profession," while NYOBS "advocates for accredited office-based surgery practices in New York State." (*Id.* ¶¶ 15–16.) Regardless of how each association defines its members in a technical sense, it is clear that the Association Plaintiffs functionally represent the interests of both the Physician Plaintiffs and those physicians' solely owned practices. As such, the Association Plaintiffs have members that would otherwise have standing to sue in their own right.[5]

As to the third prong, the Association Plaintiffs appropriately emphasize that they seek only injunctive and declaratory relief from United's alleged Uniform Refusal to Pay policy. (*See* Count II.) The Association Plaintiffs do not seek payments for individual benefits. As a result— and contrary to United's contention (*see* Dkt. No. 51 at 20–21)—the Association Plaintiffs need not show that *every* member has a validly assigned claim for which administrative remedies were fully exhausted. *See All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 651 F.3d 218, 229 (2d Cir. 2011) (citing *Warth v. Seldin*, 422 U.S. 490, 515 (1975)) ("[T]he 'relief requested' component of the third *Hunt* prong has been satisfied because the Associations seek an injunction barring enforcement of [a generally applicable policy], which will not necessitate the participation of individual members in the lawsuit."), *aff'd sub nom. Agency for Int'l Dev. v. All. for Open Soc'y Int'l, Inc.*, 133 S. Ct. 2321 (2013).

To be sure, the fact that the Association Plaintiffs seek only equitable relief does not end the inquiry. United may yet demonstrate that the Association Plaintiffs' claim requires, for

---

[5]     Because Dr. Adler and Podiatric are dismissed from this suit, MSSNY and NYOBS must count Columbia and Dr. Antell, and/or Dr. Knapp and Dr. Knapp's Practice, among their members. Plaintiffs have sufficiently alleged as much in the Complaint. (FAC ¶¶ 14, 17.)

example, examination of individual benefit denial determinations. *See Bano v. Union Carbide Corp.*, 361 F.3d 696, 714 (2d Cir. 2004) (holding that an "organization lacks standing to assert claims of injunctive relief on behalf of its members where 'the fact and extent' of the injury that gives rise to the claims for injunctive relief 'would require individualized proof'" (quoting *Warth*, 422 U.S. at 515–16)).

However, it would be premature at this stage of litigation to predict conclusively that the Association Plaintiffs' claims will require an unacceptable amount of individualized participation. *Cf. Am. Med. Ass'n v. United HealthCare Corp.*, No. 00 Civ. 2800, 2007 WL 1771498, at *21 (S.D.N.Y. June 18, 2007) (explaining that the court previously "expressed its doubts about" the associational plaintiffs' ability to pursue ERISA claims without individual participation but nevertheless "accepted the fact that it [was] possible" given "the procedural posture at that time" (internal quotation marks and alterations omitted)). The Court's hesitation is especially appropriate because "[t]he fact that a limited amount of individuated proof may be necessary does not in itself preclude associational standing." *All. for Open Soc'y Int'l*, 651 F.3d at 230 (quoting *Nat'l Ass'n of Coll. Bookstores v. Cambridge Univ. Press*, 990 F. Supp. 245, 250 (S.D.N.Y. 1997)) (internal quotation marks omitted). After discovery, the Court may conclude that "individualized evidence . . . 'would be duplicative and redundant[,] counsel[ing] in favor of granting associational standing in the interests of judicial economy.'" *Id.* at 229 (alterations in original) (quoting *All. for Open Soc'y Int'l, Inc. v. U.S. Agency for Int'l Dev.*, 570 F. Supp. 2d 533, 544 (S.D.N.Y. 2008)). As a result, the Association Plaintiffs survive United's motion to dismiss.

IV.    **Conclusion**

For the foregoing reasons, United's motion to dismiss the First Amended Complaint is DENIED in part and GRANTED in part. The motion to dismiss the superseded complaint at

Docket Number 32 is DENIED as moot.  United shall file an answer to the surviving claims by September 25, 2017.

The Clerk of Court is directed to close the motions at Docket Numbers 32 and 50.  The Clerk of Court is further directed to dismiss Plaintiffs Dr. Jeffrey Adler; Podiatric OR of Midtown Manhattan, P.C.; Dr. Darrick Antell; and Dr. Albert B. Knapp, M.D., P.C., in the name of his business only.

SO ORDERED.

Dated:  September 11, 2017
        New York, New York

_____
J. PAUL OETKEN
United States District Judge