**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| THE MEDICAL SOCIETY OF THE STATE OF NEW YORK, on behalf of its members; SOCIETY OF NEW YORK OFFICE BASED SURGERY FACILITIES, on behalf of its members; COLUMBIA EAST SIDE SURGERY, P.C., both directly and as the representative of PATIENTS C, D, E, and F; and on behalf of all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE LLC, OPTUM GROUP, LLC and OPTUM, INC., and OXFORD HEALTH PLANS LLC, <br><br> Defendants. | Civil Action No. 1:16-cv-05265-JPO <br> **(Oral Argument Requested)** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS'**
**MOTION FOR PARTIAL SUMMARY JUDGMENT [NOTICE OF MOTION,**
**STATEMENT OF MATERIAL FACTS, AND DECLARATION OF SLOANE**
**ACKERMAN FILED CONCURRENTLY HEREWITH]**

O'MELVENY & MYERS LLP
Times Square Tower
7 Times Square
New York, New York 10036
Telephone:  (212) 326-2000
Facsimile:  (212) 326-2061

O'MELVENY & MYERS LLP
1625 Eye Street, N.W.
Washington, D.C. 20006
Telephone:  (202) 383-5300
Facsimile:  (202) 383-5414

*Attorneys for Defendants*

June 28, 2018

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................. 1

STATEMENT OF FACTS ...................................................................................... 3

    I.    The Parties ....................................................................................... 3

    II.    Procedural and Factual History................................................................ 4

    III.    Columbia East Side Claims Relating To New York Fully-Insured Plans ............ 6

        A.    United Fully-Insured Plans ................................................................. 6

        B.    Oxford Fully-Insured Plans................................................................. 6

    IV.    New York Fully-Insured Plan Anti-Assignment Provisions ................................ 7

        A.    United Fully-Insured Plan Anti-Assignment Provisions .......................... 8

        B.    Oxford Fully-Insured Plan Anti-Assignment Provisions.......................... 8

UNITED IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE
COLUMBIA EAST SIDE CLAIMS UNDER NEW YORK FULLY-INSURED PLANS
BECAUSE PLAINTIFFS LACK STANDING TO BRING THOSE ERISA CLAIMS ............ 11

    I.    Plaintiffs lack standing to bring ERISA claims under the New York Fully-
        Insured Plans. .................................................................................... 11

        A.    Plaintiffs rely on the purported assignments of benefits from
            patients for standing to bring ERISA claims. ......................................... 12

            1.    This Court has already held that anti-assignment provisions
                render purported assignments of benefits void. .......................... 12

            2.    The United Fully-Insured Plans contain clear and
                unambiguous anti-assignment provisions. .................................. 13

            3.    The Oxford Fully-Insured Plans contain clear and
                unambiguous anti-assignment provisions. .................................. 14

        B.    United has not waived its right to enforce the anti-assignment
            provisions. ..................................................................................... 15

            1.    Payment of benefits directly to a provider does not
                constitute waiver of an unambiguous anti-assignment
                provision. ................................................................................ 16

            2.    "Payment to Provider" provisions in the Plans demonstrate
                that United has not waived its rights to enforce the Plans'
                anti-assignment provisions............................................................ 16

CONCLUSION................................................................................................... 19

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Advanced Orthopedics and Sports Medicine v. Blue Cross Blue Shield of Massachusetts*,
No. 14-7280, 2015 WL 4430488 (D.N.J. July 20, 2015) .................................................. 17

*Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*,
890 F.3d 445 (3d Cir. 2018)................................................................................ 16, 19

*Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*,
821 F.3d 352 (2d Cir. 2016)................................................................................ 11, 12

*Anderson v. Liberty Lobby, Inc.*,
477 U.S. 242 (1986)..................................................................................................... 11

*Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*,
706 F. App'x 442 (9th Cir. 2017) ......................................................................... 16

*Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*,
572 F.3d 76 (2d Cir. 2009)......................................................................................... 17

*Celotex Corp. v. Catrett*,
477 U.S. 317 (1986) .................................................................................................... 11

*Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*,
720 F. App'x 862 (9th Cir. 2018) ......................................................................... 16

*Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*,
No. 13 Civ. 6551, 2014 WL 4058321 (S.D.N.Y. Aug. 15, 2014) .......................... 15

*Merrick v. UnitedHealth Grp., Inc.*,
175 F. Supp. 3d 110 (S.D.N.Y. Mar. 25, 2016)................................................. 14, 16

*Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*,
919 F. Supp. 2d 345 (S.D.N.Y 2013).......................................................... 12, 15, 16

*Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*,
371 F.3d 1291 (11th Cir. 2004) ................................................................................ 12

*Scotto v. Almenas*,
143 F.3d 105 (2d Cir. 1998)....................................................................................... 11

*Simon v. Gen. Elec. Co.*,
263 F.3d 176 (2d Cir. 2001)....................................................................................... 12

**Statutes**

29 U.S.C. § 1132(a) ......................................................................................................... 12

29 U.S.C. § 1132(a)(1)..................................................................................................... 12

**TABLE OF AUTHORITIES**
(continued)

**Page(s)**

29 U.S.C. § 1132(a)(1)(B) ............................................................................................ 4, 11

29 U.S.C. § 1132(a)(3) ................................................................................................... 12

29 U.S.C. §§ 1001, et seq .............................................................................................. 3

NY Public Health L Art 28 ............................................................................................ 4

**Rules**

Fed. R. Civ. P. 56 ........................................................................................................... 1

Fed. R. Civ. P. 56(a) ...................................................................................................... 11

## PRELIMINARY STATEMENT

Pursuant to Federal Rule of Civil Procedure 56, United[1] respectfully submits the following memorandum of law in support of its motion for partial summary judgment against plaintiffs Columbia East Side Ambulatory Surgery, P.C. ("Columbia East Side"), The Medical Society of the State of New York ("MSSNY"), and the Society of New York Office Based Surgery Facilities ("NYOBS") (collectively, "Plaintiffs").  Plaintiffs lack standing to bring claims under 18 fully-insured health benefit plans offered by Oxford and United in New York and Connecticut:  (1) this Court has already held that anti-assignment provisions render purported assignments of benefits void; (2) the United and Oxford fully-insured plans contain clear and unambiguous anti-assignment provisions; and (3) United has in no way waived its right to enforce the anti-assignment provisions.  Partial summary judgment in United's favor is therefore warranted.

Plaintiff Columbia East Side is a New York office-based surgery ("OBS") practice that is seeking payments for 72 "facility fee" charges (the "Columbia East Side Claims") it claims it is owed for procedures performed on patients insured by ERISA-governed health benefit plans administered and/or sponsored by United (the "Plans").  The 72 claims encompass 53 different ERISA plans.  Joined by the associational plaintiffs MSSNY and NYOBS, Columbia East Side seeks certification of a putative class of New York-based, out-of-network OBS providers.

This Court has already ruled that as providers, Plaintiffs require valid assignments of benefits from their patients to have standing to pursue ERISA claims.[2]  This Court has further

---

[1] Defendants are UnitedHealth Group, Incorporated, United HealthCare Services, Inc., UnitedHealthcare Insurance Company, UnitedHealthcare Service LLC, Optum Group, LLC, Optum, Inc., and Oxford Health Plans LLC (collectively, "United").

[2] As explained below, on September 11, 2017, this Court dismissed claims asserted by Plaintiff Dr. Jeffrey Adler and his OBS practice, Podiatric OR of Midtown Manhattan, P.C. ("Podiatric"), because the assignments that purported to grant Podiatric standing to bring this suit were barred by anti-assignment

already ruled that anti-assignment clauses in ERISA plans are enforceable and have the effect of

invalidating purported assignments of legal rights under a plan from a patient to a provider.

United accordingly seeks summary judgment dismissing Columbia East Side Claims that relate

to United and Oxford fully-insured plans with certificates of coverage ("COCs") issued in New

York State (the "New York Fully-Insured Plans"), all of which contain identical or substantively

identical anti-assignment clauses.  Dismissing these claims will significantly streamline the

ongoing litigation by removing all COCs issued in New York State from the case, thereby

reducing the number of different plans at issue in the upcoming class certification briefing from

53 to 35.[3]  The minimal facts necessary for the Court to resolve this motion are not in dispute,

and are apparent on the face of the plan documents.

   Plaintiffs have signaled their intention to argue that the Court should reconsider its

previous ruling enforcing United's anti-assignment clauses, positing that United has waived

those clauses by paying the claims at issue directly to Columbia East Side, and by corresponding

with Columbia East Side about those payments.  This argument has been rejected by

overwhelming authority, and the Court need look no further than the relevant plan documents to

resolve it.  All of the New York State COCs (as well as the lone Connecticut COC) not only bar

the assignment of legal rights under the plan, but expressly afford United discretion to route a

patient's benefit payment directly to a provider.  United's routing of benefit payments directly to

---

provisions in the relevant Plan documents.  Thus, the claims for Patients A and B—the patients who
purportedly assigned their claims to Podiatric—were dismissed as well.  *See* Dkt. No. 59 ("MTD Order")
at 13.

[3] United includes in this motion one claim that involves a fully-insured Oxford COC issued in
Connecticut, which contains an anti-assignment clause that is identical to those found in several Oxford
fully-insured COCs issued in New York State.  United does expect to later contend that numerous self-
insured, "administrative services only" ("ASO") Plans at issue among the 72 Columbia East Side Claims
also contain anti-assignment provisions, but limits this motion to fully-insured plans because of the
substantial homogeneity of their anti-assignment language.

Columbia East Side pursuant to these reserved rights is fully consistent with the anti-assignment clauses in the plans, and—as overwhelming authority holds—waives nothing.

Without valid assignments of benefits, Columbia East Side lacks standing to bring ERISA benefit claims under the New York Fully-Insured Plans.  Accordingly, those claims must be dismissed.

## STATEMENT OF FACTS

### I.      The Parties

United is a health insurance provider that insures and/or administers health benefit plans in New York, some of which are employer-sponsored and governed by ERISA, 29 U.S.C. §§ 1001, et seq.  Statement of Material Facts ("Fact Statement") ¶ 6.  For some of these Plans, United offers a fully-insured product in which an employer pays a per-employee premium to United and United provides health coverage for insured events ("Fully-Insured Plans").  *Id*. ¶ 7.  For other plans that are self-funded by the employer, United offers third-party administrative services only, including claim processing and adjudication ("Administrative Services Only Plans," or "ASO Plans").  *Id*. ¶ 8.

Plaintiff Columbia East Side is an OBS practice in the state of New York that provides outpatient surgical services to patients covered by plans sponsored and/or administered by United on an out of network ("ONET") basis, meaning that it has no contract or agreement with United to receive payment at a specific rate.  *Id*. ¶¶ 1-2.  As a New York OBS practice, Columbia East Side is required to maintain accreditation with one of three third-party accreditation agencies approved by the New York Department of Health.  *Id*. ¶ 3.  Unlike hospitals or ambulatory surgery centers ("ASCs"), however, Columbia East Side does not have a license under Article 28 of the New York Public Health Law.  *Id*.  ¶ 4.

3

Plaintiffs MSSNY and NYOBS are associations of health care providers who purport to represent the interests of OBS practices. Dr. Darrick Antell ("Antell"), the owner and operator of Columbia East Side, is a member of both organizations. *Id*. ¶ 5.

## II.   Procedural and Factual History

In Plaintiffs' First Amended Complaint ("FAC"), Columbia East Side and Antell brought claims for ERISA benefits under 29 U.S.C. § 1132(a)(1)(B), alleging that United must pay Columbia East Side the "facility fee" charges it billed them relating to services provided to four patients insured by United Plans – Patient C, Patient D, Patient E, and Patient F. *Id*. ¶ 10. Columbia East Side and Antell were joined by additional plaintiffs: Dr. Jeffrey Adler ("Adler") and his New York, ONET OBS practice, Podiatric OR of Midtown Manhattan, P.C. ("Podiatric"), brought ERISA benefit claims for services provided to additional Patients A and B; and Dr. Albert B. Knapp ("Knapp") and his New York, ONET OBS practice, Albert B. Knapp, M.D., P.C. (the "Knapp Practice"), brought an ERISA benefit claim for services provided to additional Patient G. *Id*. ¶¶ 9-10. Plaintiffs MSSNY and NYOBS joined the provider plaintiffs in their claim for injunctive relief. *Id*.

United moved to dismiss the FAC on December 2, 2016, arguing in part that: (1) Plaintiffs lacked standing to bring ERISA benefit claims because they were not participants, beneficiaries, or fiduciaries with respect to the Plans at issue, (2) nor were they the assignees of participants' ERISA benefits. *Id*. ¶ 11; Dkt. No. 51 ("United MTD"). The Court partially granted United's motion on September 11, 2017, dismissing certain claims for lack of standing based on Plaintiffs' failure to plead and establish the existence of valid assignment of benefits from their respective patients. Fact Statement ¶ 11. Specifically, the Court held that anti-assignment provisions in the plan documents governing Patients A's and B's Plans prevented them from assigning their benefits to Podiatric or Adler. *Id*.

4

On January 10, 2018, Plaintiffs filed a [Corrected] First Amended Complaint ("CFAC") withdrawing the allegations regarding Patients A, B, and G, and removing the dismissed Plaintiffs (Podiatric, Adler, Antell, and the Knapp Practice), as well as Knapp, from the case. *Id*. ¶ 12; Dkt. No. 73.

On January 19, 2018, United served its First Set of Interrogatories on Plaintiffs. In Interrogatory No. 1, United asked Columbia East Side to identify "all claims denied in whole or in part by United that you contend give rise to damages that you seek to recover in your complaint or that you contend give rise to United's violation of the United plans and/or ERISA." Fact Statement ¶ 17. In response, Plaintiffs identified 72 "OBS facility fee claims submitted by Columbia East Side to United for reimbursement that were denied, notwithstanding that United found coverage for the professional fee corresponding to the service," including the original Patient C, D, E, and F claims (collectively, the "Columbia East Side Claims"). *Id*. ¶ 18. Columbia East Side submitted these 72 claims to United for services it provided to 66 separate patients, including the original Patients C, D, E, and F. Consistent with the naming conventions used by Plaintiffs in the FAC and CFAC, United has designated the new patients Patients H-BQ (Patients H-Z, Patients AA-AZ, and Patients BA-BQ). *Id*. ¶ 19; Declaration of Sloane Ackerman ("Ackerman Decl.") Ex. A at 16-19.

After receiving the list of the 72 Columbia East Side Claims from Plaintiffs on March 16, 2018, United began assembling the administrative record claim files for each of the claims, eventually producing the files on May 15, 2018. Fact Statement ¶ 20. The claim files include documents relevant to United's processing of each claim, including the claim form, Explanations of Benefits, correspondence, appeals, and the governing document for each Plan. *Id*. ASO Plans

are governed by the terms set out in a Summary Plan Description ("SPD"), while Fully-Insured

Plans are governed by the terms set out in a Certificate of Coverage ("COC").

### III.     Columbia East Side Claims Relating To New York Fully-Insured Plans

Eighteen of the 72 Columbia East Side Claims were submitted under New York Fully-

Insured Plans.  *Id*. ¶¶ 19-21, 23.  An additional Columbia East Side Claim was submitted under a

Connecticut fully-insured plan that contains an anti-assignment clause that is identical to the

anti-assignment clause found in several of the New York Fully-Insured Plans.  *Id*. ¶ 22.

#### A.     United Fully-Insured Plans

Seven claims—the claims for Patients S, AS, AT, AU, AX, BL, and BQ—were

submitted under Plans offered and underwritten by UnitedHealthcare Insurance Company of

New York (the "United Fully-Insured Plans"):

- Patient S is covered by a Plan sponsored by TD Securities (USA) LLC (the "TD Securities Plan")

- Patients AS, AT, AU, and BQ are covered by Plans sponsored by Ambrose Employer Group LLC (the "Ambrose Employer Group Plans")

- Patient AX is covered by a Plan sponsored by PRADA USA Corp. (the "Prada Plan")

- Patient BL is covered by a Plan sponsored by Van Eck Associates Corporation (the "Van Eck Associates Plan").

Fact Statement ¶¶ 36-42; Ackerman Decl. Ex. M-S.

#### B.     Oxford Fully-Insured Plans

Eleven claims—the claims for Patients K, P, Y, AG, AJ, AK, BK, BM, and BN, and two

claims for Patient AZ—were submitted under Plans offered and underwritten in New York by

Oxford Health Insurance, Inc. or Oxford Health Plans (NY), and one claim—the claim for

Patient AR— was submitted under a Plan offered and underwritten in Connecticut by Oxford

Health Insurance, Inc. (collectively, the "Oxford Fully-Insured Plans"):

- Patient K is covered by an NY POS Individual Health Maintenance plan (the "NY Individual Plan")

- Patient P is covered by a Plan sponsored by Harrison Tarrant, Inc. (the "Harrison Tarrant Plan")

- Patient Y is covered by a Plan sponsored by Select Equity Group (the "Select Equity Group Plan")

- Patient AG is covered by a Plan sponsored by Touchtones Music Corporation (the "Touchtones Music Plan")

- Patient AJ is covered by a Plan sponsored by the Legal Aid Society (the "Legal Aid Society Plan")

- Patient AK is covered by a Plan sponsored by Tams-Witmark Music Library, Inc. (the "Tams-Witmark Plan")

- Patient AZ is covered by a Plan sponsored by ADP Totalsource, Inc. (the "ADP Totalsource Plan")

- Patient BK is covered by a Plan sponsored by Metro Systems Corp. (the "Metro Systems Plan")

- Patient BM is covered by a Plan sponsored by the Center for Reproductive Rights (the "Center for Reproductive Rights Plan")

- Patient BN is covered by a Plan sponsored by Addison Design Company (the "Addison Design Company Plan")

- Patient AR is covered by a Plan sponsored by Harley-Davidson of Danbury (the "Harley-Davidson of Danbury Plan").

Fact Statement ¶¶ 25-35; Ackerman Decl. Ex. B-L.

## IV. New York Fully-Insured Plan Anti-Assignment Provisions

Each of the COCs for the 17 New York Fully-Insured Plans and the 1 Connecticut Fully-Insured Plan governing Columbia East Side Claims contains a provision prohibiting participants from assigning their benefits under the Plans to third parties, including health care providers. Each COC also contains a provision granting United or Oxford (whichever is the plan sponsor) the discretion to make benefit payments directly to providers.

7

## A.      United Fully-Insured Plan Anti-Assignment Provisions

The United Fully-Insured Plans all contain an identical statement that "[y]ou may not assign your Benefits under the Policy to a non-Network provider without our consent."  Fact Statement ¶¶ 36-42; Ackerman Decl. Ex. M at MSSNY-UHG-008011 (TD Securities Plan); Decl. Ex. N at MSSNY-UHG-0019125 (Patient AS Ambrose Employer Group Plan); Ackerman Decl. Ex. O at MSSNY-UHG-0019338 (Patient AT Ambrose Employer Group Plan); Ackerman Decl. Ex. P at MSSNY-UHG-0019990 (Patient AU Ambrose Employer Group Plan); Ackerman Decl. Ex. Q at MSSNY-UHG-0030475 (Patient BQ Ambrose Employer Group Plan); Ackerman Decl. Ex R at MSSNY-UHG-0021272 (Prada Plan), Ackerman Decl. Ex. S at MSSNY-UHG-0027798 (Van Eck Associates Plan).

The United Fully-Insured Plans also all contain an identical statement that "[w]hen an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill."  *Id*.  With the exception of one Ambrose Employer Group Plan (Patient AS), every United Fully-Insured Plan also contains an identical statement that "[w]e may, however, pay a non-Network provider directly for services rendered to you."  *Id*.  Patient AS's Ambrose Employer Group Plan likewise allows United to pay a non-Network provider directly and states that "[w]e may, however, pay a non-Network provider directly for services rendered to you if you provide written authorization to allow this."  Fact Statement ¶ 37; Ackerman Decl. Ex. N at MSSNY-UHG-0019125.

## B.      Oxford Fully-Insured Plan Anti-Assignment Provisions

The NY Individual, Touchtones Music, Metro Systems, and Center for Reproductive Rights Plans (Patients K, AG, BK, and BM) all contain the statement that "[y]ou cannot assign any benefits or monies due under this Certificate to any person, corporation, or other organization.  Any assignment by You will be void."  Fact Statement ¶¶ 25, 28, 32, 33;

Ackerman Decl. Ex. B at MSSNY-UHG-0004018; Ackerman Decl. Ex. E at MSSNY-UHG-0014852 (Touchtones Music Plan); Ackerman Decl. Ex. I at MSSNY-UHG-0027221 (Metro Systems Plan); Ackerman Decl. Ex. J at MSSNY-UHG-0028438 (Center for Reproductive Rights Plan). The Tam-Witmark and Addison Design Company Plans (Patients AK and BN) both contain the substantively identical statement that "[y]ou cannot assign any benefits under this Certificate to any person, corporation, or other organization. . . Any assignment by You other than monies due for a surprise bill will be void." Fact Statement ¶¶ 30, 34; Ackerman Decl. Ex. G at MSSNY-UHG-0016495 (Tam-Witmark Plan); Ackerman Decl. Ex. K at MSSNY-UHG-0028905 (Addison Design Company Plan).

The Touchtones Music, Metro Systems, Center for Reproductive Rights, Tam-Witmark, and Addison Design Company Plans all also contain the statement that, "[i]f you receive services from a Non-Participating Provider, We reserve the right to pay either You or the Provider regardless of whether an assignment has been made." Fact Statement ¶¶ 28, 30, 32-34; Ackerman Decl. Ex. E at MSSNY-UHG-0014856 (Touchtones Music Plan); Ackerman Decl. Ex. G at MSSNY-UHG-0016500; Ackerman Decl. Ex. I at MSSNY-UHG-0027225 (Metro Systems Plan); Ackerman Decl. Ex. J at MSSNY-UHG-0028438 (Center for Reproductive Rights Plan); Ackerman Decl. Ex. K at MSSNY-UHG-0028909 (Addison Design Company Plan).

The NY Individual Plan contains the statement that "[y]ou may request Us to make payment for services directly to Your Provider instead of You." Fact Statement ¶ 25; Ackerman Decl. Ex. B at MSSNY-UHG-0004108.

The Harrison Tarrant, Select Equity Group, Legal Aid Society, ADP Totalsource, and Harley-Davidson of Danbury Plans (Patients P, Y, AJ, AZ, and AR) all contain the statement

that "[a]ny benefits under this Certificate are not assignable by any Member without Our written consent."  Fact Statement ¶¶ 26, 27, 29, 31, 35; Ackerman Decl. Ex. C at MSSNY-UHG-0006464, -0006472 (Harrison Tarrant Plan); Ackerman Decl. Ex. D at MSSNY-UHG-0011128, -0011138 (Select Equity Group Plan); Ackerman Decl. Ex. F at MSSNY-UHG-0016079; Ackerman Decl. Ex. H at MSSNY-UHG-0022565 (ADP Totalsource Plan); Ackerman Decl. Ex. L at MSSNY-UHG-0018995 (Harley-Davidson of Danbury Plan).

The Harrison Tarrant, Select Equity Group, and ADP Totalsource Plans also contain the statement that "[y]ou may not assign your right to reimbursement under this Certificate to a Non-Network Provider without Our written consent.  However, in Our discretion, We may pay a Non-Network Provider directly."  Fact Statement ¶¶ 26, 27, 31; Ackerman Decl. Ex. C at MSSNY-UHG-0006472 (Harrison Tarrant Plan); Ackerman Decl. Ex. D at MSSNY-UHG-0011138 (Select Equity Group Plan); Ackerman Decl. Ex. H at MSSNY-UHG-0022575 (ADP Totalsource Plan).

Likewise, the Harley-Davidson of Danbury Plan contains the statement that, "[w]ith the exception of the providers and services listed below, you may not assign your right to reimbursement under this Certificate to a Non-Network Provider without Our written consent. However, in Our discretion, We may pay a Non-Network Provider directly."  The COC lists only two services for which an "[a]ssignment will always be accepted:" "Assignment of Dental Benefits" and "Emergency Ambulance Services Coverage."  Fact Statement ¶ 35; Ackerman Decl. Ex. L at MSSNY-UHG-0018987 - 0018988.

The Legal Aid Society and ADP Totalsource Plans also contain the statement that "You may request Us to make payment directly to you or to the provider. . . Although We will generally follow your instructions, We reserve the right to make the final determination."  Fact

Statement ¶¶ 29, 31; Ackerman Decl. Ex. F at MSSNY-UHG-0016076 (Legal Aid Society Plan);

Ackerman Decl. Ex. H at MSSNY-UHG-0022560 (ADP Totalsource Plan).

### <u>UNITED IS ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO THE COLUMBIA EAST SIDE CLAIMS UNDER NEW YORK FULLY-INSURED PLANS BECAUSE PLAINTIFFS LACK STANDING TO BRING THOSE ERISA CLAIMS</u>

The Court should grant summary judgment to a moving party if that party "shows that

there is no genuine dispute as to any material fact and [it] is entitled to judgment as a matter of

law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). In

opposition to a summary judgment motion, parties "may not rely on conclusory allegations or

unsubstantiated speculation" but "must produce specific facts"—i.e., evidence—showing a

genuine dispute of material fact. *Scotto v. Almenas*, 143 F.3d 105, 114 (2d Cir. 1998). A fact is

"material" if it "might affect the outcome of the suit under governing [substantive] law."

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the

evidence is such that a reasonable jury could return a verdict for the nonmoving party based on

that evidence. See *id.*

I.     **Plaintiffs lack standing to bring ERISA claims under the New York Fully-Insured Plans.**

Plaintiffs' central claim is that Columbia East Side was wrongfully denied payment for

OBS facility fees under the terms of its patients' ERISA plans, and Columbia East Side thus

brings a claim for benefits under ERISA § 502(a)(1)(B). 29 U.S.C. § 1132(a)(1)(B). Only

participants, beneficiaries, and fiduciaries of benefit plans have standing to bring a claim for

benefits under ERISA. See 29 U.S.C. § 1132(a)(1), (3); *Am. Psychiatric Ass'n v. Anthem Health

Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016).

11

A.      **Plaintiffs rely on the purported assignments of benefits from patients for standing to bring ERISA claims.**

Plaintiffs do not allege that Columbia East Side is a participant, beneficiary, or fiduciary of the health plans at issue here.  Rather, Plaintiffs rely on a "narrow exception" to ERISA's strict standing requirements that allows providers to bring claims under §1132(a) "based on a valid assignment from a patient."  *Am. Psychiatric Ass'n.*, 821 F.3d at 361 (first quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001)); Fact Statement ¶ 15.

1.      **This Court has already held that anti-assignment provisions render purported assignments of benefits void.**

As this Court previously held in this case, "[a] claim is not validly assigned—and [] therefore the assignment is void—where the health plan in question 'unambiguously prohibits assignment.'"  MTD Order at 11 (quoting *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y 2013); *Physicians Multispecialty Grp. v. Health Care Plan of Horton Homes, Inc.*, 371 F.3d 1291, 1295 (11th Cir. 2004) (noting that "the majority of federal courts . . . have concluded that an assignment is ineffectual if the plan contains an unambiguous anti-assignment provision" and collecting cases)).

In its motion to dismiss, United argued that the relevant Plan documents for two of the patients identified in Plaintiffs' FAC contained anti-assignment provisions precluding the type of patient-to-provider assignment that would be required to grant a provider standing under ERISA. United MTD at 16-18.  This Court agreed.  Patient A's Byram Plan provided that "[y]ou may not assign your Benefits under the Policy to a non-Network provider without our consent."  MTD Order at 12.  Patient B's Diageo Plan similarly provided that "[n]either you nor Diageo NA can assign, transfer, or attach your benefits . . . except as described below."  *Id*.  The Court concluded that in light of this "categorical and unambiguous" plan language, there could be no valid

12

assignment for Patients A and B, and it thus dismissed named plaintiff Podiatric (the provider who sought to assert claims for Patients A and B) from the case. *Id*. at 11-12.

For the same reason this Court dismissed the Patient A and B claims, it should grant summary judgment to United with respect to all of the Columbia East Side Claims submitted under New York and Connecticut Fully-Insured Plans. The COCs containing the terms of coverage for these Plans all include "categorical and unambiguous" anti-assignment provisions that render any purported assignment of benefits ineffectual, leaving Plaintiffs without standing to bring claims for benefits under ERISA.[4]

## 2.     The United Fully-Insured Plans contain clear and unambiguous anti-assignment provisions.

The seven United Fully-Insured Plans, which govern Columbia East Side's Patient S, AS, AT, AU, BQ, AX, and BL claims, all contain an identical statement that "[y]ou may not assign your Benefits under the Policy to a non-Network provider without our consent." Fact Statement ¶¶ 36-42. This is the exact same "categorical and unambiguous" anti-assignment provision that is contained in the dismissed Patient A's Byram Plan. MTD Order at 12.

There is no evidence indicating that Patients S, AS, AT, AU, BQ, AX, or BL ever sought (much less received) United's consent to assign their benefits to Columbia East Side. Consequently, even if Plaintiffs did allege that Patients S, AS, AT, AU, BQ, AX, or BL attempted to assign their benefits, any purported assignment would be "unambiguously prohibited" and void. *Id*.

---

[4] As United argued in its motion to strike class allegations, determination of a provider's standing to bring an ERISA benefit claim requires a "member-specific, plan-specific review to determine whether a plan permits assignments and if so, its permissible scope," followed by a review to determine whether a "valid and enforceable assignment" exists, based on the member's actions under the terms of the plan. Dkt. No. 76 at 5. These member- and plan-specific inquiries demonstrate why certification of a class of potentially thousands of OBS providers would be impractical and inappropriate.

3.    **The Oxford Fully-Insured Plans contain clear and unambiguous anti-assignment provisions.**

The eleven Oxford Fully-Insured Plans, which govern Columbia East Side's Patient K, P, Y, AG, AJ, AK, AR, AZ, BK, BM, and BN claims, all also contain "categorical and unambiguous" anti-assignment provisions.

The COCs for Patient P's Harrison Tarrant Plan, Patient Y's Select Equity Group Plan, Patient AJ's Legal Aid Society Plan, Patient AR's Harley-Davidson of Danbury Plan, and Patient AZ's ADP Totalsource Plan all contain the same statement that "[a]ny benefits under this Certificate are not assignable by any Member without Our written consent."  Fact Statement ¶¶ 26, 27, 29, 31, 35.

This statement is substantively identical to the anti-assignment provisions in Patient A's Byram Plan and the seven United Fully-Insured Plans, and it is the same type of provision that courts, including this Court, have found to clearly establish that assignment is "unambiguously prohibited" unless consent to an assignment is expressly granted in writing.  MTD Order at 12 (citing *Merrick v. UnitedHealth Grp., Inc.*, 175 F. Supp. 3d 110, 119, 120 & n.13 (S.D.N.Y. Mar. 25, 2016) (concluding that "assignments to Plaintiffs are void pursuant to the unambiguous language" of a similar anti-assignment provision with a "consent clause")).  Again, Plaintiffs do not allege or provide any evidence indicating that Patients P, Y,  AJ, AR, or AZ ever sought (much less received) written consent to assign their benefits, so Columbia East Side lacks standing to assert claims arising from these benefit claims.

The COCs for the remaining six Oxford Fully-Insured Plans contain a flat prohibition on the assignment of benefits.  Patient K's NY Individual Plan, Patient AG's Touchtones Music Plan, Patient BK's Metro Systems Plan, and Patient BM's Center for Reproductive Rights Plan all contain the statement that "[y]ou cannot assign any benefits or monies due under this

14

Certificate to any person, corporation, or other organization.  Any assignment by You will be void."  Fact Statement ¶¶ 25, 28, 32, 33.  Patient AK's Tam-Witmark Plan and Patient BN's Addison Design Company contain the nearly identical statement that "[y]ou cannot assign any benefits under this Certificate to any person, corporation, or other organization. . . Any assignment by You other than monies due for a surprise bill will be void."  *Id.*  ¶¶ 30, 34.

The flat prohibition on the assignment of benefits in the Patient K, AG, BK, BM, AK, and BN Plans is substantively identical to the anti-assignment provision in the dismissed Patient B's Diageo Plan, which stated that "[n]either you nor Diageo NA can assign, transfer, or attach your benefits . . . except as described below."  MTD Order at 11.  As the Court held for Patient B's Diageo Plan, "[t]his language is categorical and unambiguous."  *Id.* (citing *Neuroaxis Neurosurgical Assocs.*, 919 F. Supp. 2d at 354 (concluding that plans with similar clauses "render any purported assignment void"); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) (same)).  As such, any purported assignments of benefits from Patient K, AG, BK, BM, AK, or BN would be prohibited by the terms of the Plans.

### B.   United has not waived its right to enforce the anti-assignment provisions.

In Plaintiffs' opposition to United's motion to strike class allegations, Plaintiffs argued, citing to their own brief in another case, that United has waived its right to enforce anti-assignment provisions because "United has a policy of honoring all provider assignments."  Dkt. No. 81 at 10.  All that means, however, is that United typically honors patient requests to route benefit payments directly to providers, even if the underlying plan has an anti-assignment clause. The anti-assignment clauses at issue expressly permit United to do so, and even if they did not, there is an obvious difference between *allowing a patient to route his or her benefit payment directly to a provider* and *allowing a patient to transfer his or her legal rights under the plan*.

15

Overwhelming authority accordingly holds that sending a patient's benefit payment directly to a provider does not waive a plan's anti-assignment clause.  Plaintiffs' anticipated argument that United is estopped from enforcing the anti-assignment provisions in the New York Fully-Insured Plans is thus without merit.

> **1.     Payment of benefits directly to a provider does not constitute waiver of an unambiguous anti-assignment provision.**

Courts around the country (including the Southern District of New York) have repeatedly and overwhelmingly held that waiver of an ERISA plan provision must be intentional, and that sending a patient's benefit payment directly to a provider does not waive a plan's anti-assignment clause.  *See Eden Surgical Ctr. v. Cognizant Tech. Sols. Corp.*, 720 F. App'x 862, 863 (9th Cir. 2018) (no waiver); *Brand Tarzana Surgical Inst., Inc. v. Int'l Longshore & Warehouse Union-Pac. Mar. Ass'n Welfare Plan*, 706 F. App'x 442, 443 (9th Cir. 2017) (same); *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) ("[R]outine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal do not demonstrate 'an evident purpose to surrender' an objection to a provider's standing in a federal lawsuit[.]"); *Neuroaxis Neurosurgical Assocs.*, 919 F. Supp. 2d at 355 ("Prior payments to healthcare providers do not create a 'viable estoppel claim,' however, where ERISA plans unambiguously prohibit assignments."); *Merrick*, 175 F. Supp. 3d at 121 (direct payment does not waive enforcement of anti-assignment provisions).

> **2.     "Payment to Provider" provisions in the Plans demonstrate that United has not waived its rights to enforce the Plans' anti-assignment provisions.**

Even the handful of courts that have erroneously given some credence to Plaintiffs' waiver theory have recognized that administrators do not waive anti-assignment provisions by making direct payments to providers when such payments are explicitly authorized by the plan

16

document.  *See,* e.g., *Advanced Orthopedics and Sports Medicine v. Blue Cross Blue Shield of Massachusetts*, No. 14-7280, 2015 WL 4430488, at *7 (D.N.J. July 20, 2015) ("[F]ederal courts in New Jersey and other jurisdictions have held, under various state laws, that sending a direct payment alone does not constitute waiver of an anti-assignment provision, at least where the plan authorizes direct payment.").  As the Court previously held in this case, "because [the Second Circuit] appli[es] rules of contract law to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract where the term is clear and unambiguous."  MTD Order at 11 (quoting *Burke v. PriceWaterHouseCoopers LLP Long Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009)).

The COCs for all of the United and Oxford Self-Insured Plans contain provisions authorizing United to make direct payment to ONET providers regardless of assignment, distinguishing between payment and assignment of benefits and demonstrating that any such payments would not waive United's right to enforce the Plans' anti-assignment provisions.

The United Fully-Insured Plan COCs for Patients S, AT, AU, BQ, AX, and BL each contain the statement, immediately following the anti-assignment provision, that "[w]e may, however, pay a non-Network provider directly for services rendered to you."  Fact Statement ¶¶ 36, 38-42.  Similarly, the Ambrose Employer Group Plan for Patient AS states that "[w]e may, however, pay a non-Network provider directly for services rendered to you if you provide written authorization to allow this."  *Id*. ¶ 37.  These provisions unequivocally state that even where United has not consented to an assignment of benefits (and the plan's anti-assignment clause has not been waived), United may nonetheless make direct payments to a non-Network provider, such as Columbia East Side.  A direct payment to a provider under these plans accordingly cannot qualify as consent to a requested assignment of benefits.

Similarly, Patient P's Harrison Tarrant Plan, Patient Y's Select Equity Group Plan, and Patient AZ's ADP Totalsource Plan all contain the statement that "[y]ou may not assign your right to reimbursement under this Certificate to a Non-Network Provider without Our written consent.  However, in Our discretion, We may pay a Non-Network Provider directly."  *Id*. ¶¶ 26, 27, 31.  Likewise, Patient AR's Harley-Davidson Plan contains the statement that, "[w]ith the exception of the providers and services listed below"—"Assignment of Dental Benefits" and "Emergency Ambulance Services Coverage," neither of which apply to Columbia East Side's claims—"you may not assign your right to reimbursement under this Certificate to a Non-Network Provider without Our written consent.  However, in Our discretion, We may pay a Non-Network Provider directly."  *Id*. ¶ 35.  Again, these provisions indicate that Oxford retains the discretion to make payments directly to a provider regardless of whether it accepts an assignment of benefits to that provider.

Even more explicitly, Patient AG's Touchtones Music Plan, Patient BK's Metro Systems Plan, Patient BM's Center for Reproductive Rights Plan, Patient AK's Tam-Witmark Plan, and Patient BN's Addison Design Company Plans all state that, "[i]f you receive services from a Non-Participating Provider, We reserve the right to pay either You or the Provider regardless of whether an assignment has been made."  *Id*. ¶¶ 28, 30, 32-34.  This provision explicitly states that Oxford may make direct payments to a provider "regardless of whether" it grants consent to an assignment of benefits, indicating that a direct provider payment does not itself represent consent to an assignment of benefits.

Finally, the COCs for Patient K's NY Individual Plan and Patient AJ's Legal Aid Society Plans both contain provisions, separate from the Plans' anti-assignment clauses, allowing patients to request Oxford to make payments directly to providers.  The NY Individual Plan

18

states that "[y]ou may request Us to make payment for services directly to Your Provider instead of You," *id*. ¶ 25, and the Legal Aid Society Plan states that "[y]ou may request Us to make payment directly to you or to the provider. . . Although We will generally follow your instructions, We reserve the right to make the final determination."  *Id*. ¶¶ 29.  Again, these provisions indicate that Oxford's decision to pay benefits directly to a provider does not itself constitute consent to a requested assignment of benefits, but rather is effected pursuant to these separate provisions of the plans expressly allowing for direct payment authorizations.

United's payment practices thus do not create a question of material fact as to whether United has waived its right to enforce anti-assignment provisions in the documents of relevant Plans.  Each of the New York and Connecticut Fully-Insured Plans explicitly (and separately) authorizes United to make payments directly to providers, rendering any such payments irrelevant to the question of waiver.  Plaintiffs have not provided and cannot provide any other indication of an "evident purpose to surrender," *Am. Orthopedic & Sports Med.*, 890 F.3d at 454, as neither United's production nor Plaintiffs' production contains any evidence that any of the patients at issue in the New York Fully-Insured Claims ever sought or obtained United's consent to waive the anti-assignment clauses at issue.  The anti-assignment provisions in each of the New York and Connecticut Fully-Insured Plan documents accordingly remain enforceable and bar Columbia East Side from pursuing any of the New York or Connecticut Fully-Insured Claims under ERISA.

## CONCLUSION

Because all of the COCs at issue contain enforceable anti-assignment provisions, the Court therefore should grant United's motion for summary judgment on claims arising under those plans.

Dated:  June 28, 2018                       Respectfully submitted,
            Washington, D.C.

                                            By: */s/ Gregory F. Jacob*

O'MELVENY & MYERS LLP                       O'MELVENY & MYERS LLP
Brian D. Boyle (*pro hac vice*)             Anton Metlitsky
Gregory F. Jacob (*pro hac vice*)           Sloane Ackerman
1625 Eye Street, N.W.                       Times Square Tower
Washington, D.C. 20006                      7 Times Square
Telephone:  (202) 383-5300                  New York, New York 10036
Facsimile:  (202) 383-5414                  Telephone:  (212) 326-2000
gjacob@omm.com                              Facsimile:  (212) 326-2061
bboyle@omm.com                              ametlitsky@omm.com
                                            sackerman@omm.com

*Attorneys for Defendants UnitedHealth Group Incorporated, United HealthCare Services,*
*Inc., United HealthCare Insurance Company, United HealthCare Service LLC, Optum*
*Group, LLC, Optum, Inc., and Oxford Health Plans LLC*