UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MEDICAL SOCIETY OF THE STATE OF NEW YORK, on behalf of its members; SOCIETY OF NEW YORK OFFICE BASED SURGERY FACILITIES, on behalf of its members; COLUMBIA EAST SIDE SURGERY, P.C., both directly and as the representative of PATIENTS C, D, E, and F; and on behalf of all others similarly situated,<br><br>                Plaintiffs,<br><br>        v.<br><br>UNITEDHEALTH GROUP, INC., UNITED HEALTHCARE SERVICES, INC., UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE LLC, OPTUM GROUP, LLC and OPTUM, INC., and OXFORD HEALTH PLANS LLC,<br><br>                Defendants. | Civil Action No. 1:16-cv-05265-JPO<br>**(Oral Argument Requested)** |

**REPLY IN SUPPORT OF DEFENDANTS'
MOTION FOR PARTIAL SUMMARY JUDGMENT**

| | |
|---|---|
| O'MELVENY & MYERS LLP<br>Times Square Tower<br>7 Times Square<br>New York, New York 10036<br>Telephone: (212) 326-2000<br>Facsimile: (212) 326-2061 | O'MELVENY & MYERS LLP<br>1625 Eye Street, N.W.<br>Washington, D.C. 20006<br>Telephone: (202) 383-5300<br>Facsimile: (202) 383-5414<br><br>*Attorneys for Defendants*<br><br>August 6, 2018 |

**TABLE OF CONTENTS**

Page

INTRODUCTION ................................................................................................................... 1

    I.    UNITED HAS NOT WAIVED THE ANTI-ASSIGNMENT PROVISIONS ................................................................................................. 1

        A.    None of the Conduct Plaintiffs Cite is Inconsistent with Enforcement of the Anti-Assignment Provisions ....................................... 1

        B.    Direct Payments Are Fully Consistent with Anti-Assignment Clauses ................................................................................................ 2

        C.    The Recovery of Overpayments Does Not Waive Anti-Assignment Clauses ................................................................................................ 4

        D.    United's Internal Claim Processing Procedures Are Irrelevant, and in Any Event Are Fully Consistent with Enforcement of Anti-Assignment Clauses ................................................................................... 5

        E.    No Further Discovery Is Warranted ............................................................ 8

    II.    COLUMBIA EAST SIDE IS NOT SUING AS THE AUTHORIZED REPRESENTATIVE OF THE PATIENTS WHOSE CLAIMS ARE AT ISSUE ........................................................................................................... 8

    III.    GRANTING UNITED'S MOTION WILL SIMPLIFY CLASS CERTIFICATION BRIEFING AND DISCOVERY ........................................... 9

CONCLUSION ....................................................................................................................... 9

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*,
   No. 14-7280, 2015 WL 4430488 (D. N.J. July 20, 2015) ........................................................2

*Aviation West Charters, Inc. v. United Healthcare Ins. Co.*,
   No. CV-14-0038-PHX-NVW, 2014 WL 5814232 (D. Ariz. Nov. 10, 2014) .......................2, 4

*Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*,
   448 F.3d 573 (2d Cir. 2006).................................................................................................1

*Dallas Aerospace, Inc. v. CIS Air Corp.*,
   352 F.3d 775 (2d Cir. 2003)..................................................................................................2

*Haag v. MVP Health Care*,
   866 F. Supp. 2d 137 (N.D.N.Y. 2012)...................................................................................3

*MBody Minimally Invasive Surgery, P.C. v. United HealthCare Ins. Co.*,
   No. 14 Civ. 2495 (ER), 2016 WL 4382709 (S.D.N.Y. Aug. 16, 2016) ..................................2

*Merrick v. UnitedHealth Grp., Inc.*,
   175 F. Supp. 3d 110 (S.D.N.Y. 2016)....................................................................................4

*Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*,
   No. 09 C 5619, 2011 WL 6819081 (N.D. Ill. Dec. 28, 2011) .................................................2

*Rojas v. Cigna Health & Life Ins. Co.*,
   793 F.3d 253 (2d Cir. 2015)..................................................................................................6

*Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*,
   No. 11-80799-CV, 2012 WL 993097  (S.D. Fla. Mar. 22, 2012)............................................2

**INTRODUCTION**

The claims at issue in this Motion are unequivocally barred.[1] Each of the 19 plans contain unambiguous anti-assignment clauses, and United has never agreed to waive them, nor has it engaged in conduct inconsistent with them. Most of the conduct Plaintiffs allege in support of their waiver argument has nothing to do with the claims at issue, but even if it did— and even accepting all of Plaintiffs' allegations as true—it would have no effect on the enforceability of the anti-assignment clauses. United's reliance on patient authorizations to pay providers directly, or to permit providers to pursue administrative appeals on their patients' behalf, treats *the patient* as the continuing owner of his or her *legal rights* under the plan. The conduct alleged is thus fully consistent with the anti-assignment clauses, and waives nothing.

Plaintiffs' throwaway argument that Columbia East Side (CES) is acting as "attorney-in-fact" for the patients is meritless, because it manifestly is not doing so. The First Amended Complaint ("FAC") (ECF No. 73) is not brought on behalf of any of the patients at issue in this Motion and does not mention any of their claims. To the contrary, in discovery CES expressly identified each of the claims at issue as its own. Partial summary judgment should be granted.

**I.     UNITED HAS NOT WAIVED THE ANTI-ASSIGNMENT PROVISIONS**

    **A.     None of the Conduct Plaintiffs Cite is Inconsistent with Enforcement of the Anti-Assignment Provisions**

In the Second Circuit, "the defense of waiver requires a clear manifestation of an intent by plaintiff to relinquish her known right[,] and mere silence, oversight or thoughtlessness in failing to object to a breach of the contract will not support a finding of waiver." *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of New Jersey, Inc.*, 448 F.3d 573, 585 (2d Cir.

---

[1] After United filed its opening brief, it informed Plaintiffs it inadvertently excluded one patient (Patient AC) from its Motion. Plaintiffs have agreed to include Patient AC's claims in United's Motion, as the relevant plan provisions are identical to others addressed therein.

2006) (internal quotation marks omitted). Only conduct that is ***manifestly inconsistent*** with a contractual right will be deemed to waive that right. *Dallas Aerospace, Inc. v. CIS Air Corp.*, 352 F.3d 775, 783 (2d Cir. 2003) (conduct cannot waive contractual right unless it is "not otherwise [] compatible with the agreement as written" and evidences "an indisputable mutual departure from the written agreement"). Plaintiffs' waiver argument must be rejected because they fail to identify any inconsistent conduct.

### B. Direct Payments Are Fully Consistent with Anti-Assignment Clauses

Plaintiffs' core waiver argument is predicated on the notion that a direct payment is the same thing as an assignment. The anti-assignment clauses themselves say otherwise, and overwhelming authority rejects Plaintiffs' position. *See* Mem. of Law in Support of Defs' Mot. for Summary Judgment ("Br.") 16 (ECF No. 108) (citing numerous Circuit Court and district court cases holding that direct payments do not waive anti-assignment clauses).[2] In addition, the claims at issue in this Motion ***were not paid*** (directly to CES or otherwise), and United's direct payment of ***other*** claims cannot possibly waive the anti-assignment clauses at issue here.[3]

---

[2] For additional authority, *see MBody Minimally Invasive Surgery, P.C. v. United HealthCare Ins. Co.,* No. 14 Civ. 2495 (ER), 2016 WL 4382709, at *7 n.10 (S.D.N.Y. Aug. 16, 2016) (not reaching waiver, but noting "United will not be found to have waived anti-assignment clauses by directly paying claims to Plaintiffs if the underlying plans expressly permitted such direct payments") (citations omitted); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.,* No. 14-7280, 2015 WL 4430488, at *7 (D. N.J. July 20, 2015) ("sending a direct payment alone does not constitute waiver of an anti-assignment provision, at least where the plan authorizes direct payment"); *Aviation West Charters,* 2014 WL 5814232 at *3 (direct payment does not constitute waiver because "[t]he anti-enforcement provision expressly authorized United's discretion to make direct payment to Plaintiff"); *Pa. Chiropractic Ass'n v. Blue Cross Blue Shield Ass'n*, No. 09 C 5619, 2011 WL 6819081, at *6 (N.D. Ill. Dec. 28, 2011) ("[T]here is law supporting the proposition that direct payment to a provider does not waive reliance on a plan's anti-assignment provision if the plan also authorizes direct payment."); *Sanctuary Surgical Ctr., Inc. v. Aetna, Inc.*, No. 11-80799-CV, 2012 WL 993097, at *2 (S.D. Fla. Mar. 22, 2012) (no waiver where "the clauses specifically allow the right to payment for benefits to be assigned.").

[3] Plaintiffs do not to cite ***any*** authority that has ***ever*** held that waiver of an anti-assignment clause with respect to one claim also can waive an anti-assignment clause with respect to other claims.

Direction of a payment and assignment of a contractual right are fundamentally different concepts. ERISA plans owe contractual legal obligations to plan participants and beneficiaries. Plans routinely prohibit assignment of those contractual rights for two reasons: (1) it protects the plan by limiting the universe of individuals or entities to which the plan owes legal obligations, and (2) it protects the participants and beneficiaries by ensuring they do not relinquish their legal rights under the plan (if a plan allows assignments, and a patient does so, the patient irrevocably relinquishes the assigned contractual rights to the assignee). *See, e.g., Haag v. MVP Health Care,* 866 F. Supp. 2d 137, 141 (N.D.N.Y. 2012) (patient "lacks standing to bring [] action because she assigned her rights to recover benefits under the plan").

Directing a payment is different. When a patient owes a provider for services rendered, and the plan owes the patient benefits, it is typically convenient for all involved for the plan to send the patient's benefit check directly to the provider, and for the parties to balance their books accordingly. Every one of the anti-assignment clauses at issue here expressly permits such direct payments. Statement of Material Facts ("SMF") ¶¶ 36, 38-42 (ECF No. 109). For each claim at issue, CES submitted a claim form to United in which it represented that it had the patient's signature on file authorizing United to send the patient's benefit check directly to the provider. *See, e.g.,* Declaration of Sloane Ackerman in Support of Defs' Reply in Support of Motion for Partial Summary Judgment ("Ackerman MSJ Reply Decl."), Ex. T at MSSNY-UHG-0003991; Ex. U at CESAS_411. Plaintiffs criticize United for relying on CES's representations, Pls' Mem. in Opposition to Defs' Mot. for Partial Summary Judgment ("Opp'n") 8 (ECF No. 113), but the entire healthcare system (from CMS on down) relies on providers to be honest in their claim submissions.

Plaintiffs' argument that the direct payment provisions in the anti-assignment clauses "render the anti-assignment clauses ineffectual," Opp'n 7, ignores the critical difference between the two concepts. Plaintiffs rely on two older district court decisions that erroneously conflated the concepts, Opp'n 7, but those cases were wrongly decided, as an avalanche of more recent authority makes clear. Br. 16; *Merrick v. UnitedHealth Grp., Inc.*, 175 F. Supp. 3d 110, 123 (S.D.N.Y. 2016) (rejecting those authorities). Simply put, none of the payment-related conduct Plaintiffs allege is inconsistent with barring patients from transferring their legal rights. *See, e.g., Merrick*, 175 F. Supp. 3d at 123 (direct payments, communications requesting supporting documentation, and overpayment recovery efforts were not inconsistent with anti-assignment clauses); *Aviation West Charters, Inc. v. United Healthcare Ins. Co.*, No. CV-14-0038-PHX-NVW, 2014 WL 5814232, at *3 (D. Ariz. Nov. 10, 2014) (rejecting waiver based on "communications regarding claims made by Plaintiff, payments made to Plaintiff, and recoupment from Plaintiff").

### C. The Recovery of Overpayments Does Not Waive Anti-Assignment Clauses

None of the claims at issue were paid by United, much less overpaid. United's conduct in seeking repayment of *other* claims that *were* overpaid has no bearing on the enforceability of the anti-assignment clauses at issue with respect to the claims at issue in this Motion. Plaintiffs' overpayment recovery arguments, Opp'n 14-18, are therefore irrelevant.

Even if United's overpayment recovery actions were relevant to these claims, such actions in no way treat overpaid providers as assignees of patients' legal rights. To be sure, when United overpays a provider, it requests that the provider return the overpaid amount. United does the same thing when it overpays plumbers, who obviously are not assignees of ERISA rights. That is, refund requests are issued to overpayment recipients, regardless of assignee status. And the same is true of the overpayment recoupment process: if an overpaid

4

plumber fails to return an overpayment, the next time that plumber provides services to United, United applies the prior overpayment to the plumber's bill, thus recovering the outstanding debt. This is a straightforward application of offset rights, and has nothing to do with assignee status.

In separate litigation, Plaintiffs' counsel has alleged that United's recoupments are unlawful when they involve multiple plans. Opp'n 14; *see Peterson v. UnitedHealth Group Inc., et al.,* No. 14-cv-2101 (D. Minn.). But it is not as though the *Peterson* plaintiffs are arguing that United's recoupments would be lawful if only the providers were assignees. To the contrary, they contend that United's recoupments are always illegal, without regard to assignee status, while United contends the recoupments are always legal, without regard to assignee status. There is nothing in United's overpayment recovery conduct that waives plan anti-assignment clauses, expressly or implicitly.

### D. United's Internal Claim Processing Procedures Are Irrelevant, and in Any Event Are Fully Consistent with Enforcement of Anti-Assignment Clauses

Plaintiffs also make a preposterous mass waiver argument that is not specific to any individual claim. They assert that United's claims adjudication process categorically waives *every* anti-assignment clause in *every* plan United administers "across its entire claim processing operations." Opp'n 5. But Plaintiffs' argument relies on (1) United's non-controversial administrative practice of paying providers directly if they obtain required patient authorizations, and (2) the fact that United's claim processors sometimes internally refer to such direct payments as "honoring assignments." *Id*. This is nothing more than a regurgitation of Plaintiffs' direct payment argument dressed up in a veneer of industry vernacular, and does not demonstrate conduct inconsistent with the anti-assignment clauses.

Waiver requires a "clear manifestation" of intent to relinquish a known right. *See* Section I(A), *supra*. Only external conduct or statements can satisfy this standard—Plaintiffs

have not identified a single case in which a party's *internal* conduct or statements was held to waive a contractual right.  Here, Plaintiffs claim to have unearthed United's unannounced mass anti-assignment clause waiver in the sealed records of *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11-425(ES) (D.N.J.), another case litigated by Zuckerman Spaeder.  As plaintiffs admit, the only *external conduct* that results from the policies they invoke is the routing of payments directly to providers:  "As a result, when United issues payment, it pays providers directly."  Opp'n at 5.  Again, that conduct in no way waives the anti-assignment clauses.

United's internal verbiage is not only irrelevant to the waiver analysis, it is also in no way inconsistent with enforcement of the anti-assignment clauses.  Within the healthcare industry, there are a number of types of provider forms that have varying legal effects—direct payment authorizations, authorized representative designations, and true assignments of benefits, to name a few.  All of these forms are often colloquially referred to as "assignments."  *See, e.g., Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015) ("Not all ERISA assignments convey the same rights.").  The United claims processors from *Premier*, whom Plaintiffs selectively quote out of context, in fact testified that they were *not* using the term "assignment" in its formal legal sense to mean a transfer of legal rights.  *See* Ackerman MSJ Reply Decl., Ex. V (Vaught-Williams Dep.) at 140:3-141:14

Instead, they understood "assignment" to mean nothing more than authorization to pay a provider directly.  *See, e.g.,* Ex. 12 (Britton Dep.) at 19:17-21 ("Assignment of benefits is an agreement the member would provide or sign to allow a provider to receive payment for services provided or rendered to that member.") (ECF No. 115-16); Ackerman MSJ Reply Decl., Ex. V

6

(Vaught-Williams Dep.) at 141:21-142:2)

Plaintiffs criticize United for not consulting anti-assignment clauses during claims processing, Opp'n 8, but that is a red herring. Claims processors are tasked with determining whether a provider has been authorized to submit a patient's claim and to receive the corresponding benefit payment. Who owns the underlying legal rights is irrelevant to this process. Thus, for submissions using the form CMS-1500, claims processors solely consult Box 13, Counter-SMF ¶¶ 63, 66 (ECF No. 114), which states "I authorize ***payment of medical benefits*** to the undersigned physician or supplier for services described below." Ackerman MSJ Reply Decl., Ex. W (emphasis added). For submissions using the form UB04, the instructions state that submission of the form *itself* certifies that the submitting provider has a patient-signed payment authorization on file: "Submissions of this claim constitutes certification that… (5) Signature of patient or his representative on certifications, authorization information, ***and payment request***… ." *See, .e.g.,* Ackerman MSJ Reply Decl., Ex. X at 15 (emphasis added); *see also* Ex. T at 2. United does not inquire into or rely on information about who owns legal rights when processing claims, and its reliance on patient authorizations to pay provider directly is fully consistent with the anti-assignment clauses.[4]

---

[4] Plaintiffs assert that United waived anti-assignment clauses in six plans when it failed to respond to language in purported assignment forms stating that "I instruct my applicable insurance plan … to please advise and disclose to Provider in writing such anti-assignment provision within 30 days upon receipt of my assignment, otherwise this assignment should be reasonably expected to be effective and such anti-assignment is waived on any pending claims for benefits under the respective policies." Opp'n 12. The forms plaintiffs cite are all agreements between CES and its patients; United is not a signatory. Such agreements cannot waive the anti-assignment rights of United or of a United-administered plan. Moreover, the record shows United does not consult assignment forms when adjudicating claims, but rather relies on provider certifications that the patient has authorized direct payment. United had no

Relatedly, CES argues that United waives anti-assignment clauses by "deal[ing] with CESAS directly on appeal." Opp'n 13. That is absurd. CES does not claim that it prosecuted any appeals on its own behalf as an assignee. Rather, it claims that it obtained patient authorizations to file administrative appeals on the patients' behalf. Authorized representative status has nothing to do with assignment of legal rights, and United did not waive the anti-assignment clauses by allowing CES to prosecute administrative appeals.

### E. No Further Discovery Is Warranted

Plaintiffs have presented the court a kettleful of red herrings, and request additional discovery into each. No further discovery is warranted, because even if every one of Plaintiffs' allegations proved to be true, it would not demonstrate waiver of the anti-assignment clauses.

## II. COLUMBIA EAST SIDE IS NOT SUING AS THE AUTHORIZED REPRESENTATIVE OF THE PATIENTS WHOSE CLAIMS ARE AT ISSUE

Plaintiffs appropriately tuck into the back of their brief their argument that Patients K, P, S, Y, AG, AJ, AK, AR, AS, AT, AU, AX, AZ, BK, BL, BM, BN, and BQ are actually named plaintiffs in the case, and that CES is merely acting as their authorized representative or "attorney-in fact." Opp'n 18-22. None of these patients appear in the caption of the FAC, nor are the claims at issue mentioned in the FAC. Moreover, in discovery CES identified each of the claims as one that it is seeking to recover *for itself*: "Exhibit A includes OBS facility fee claims submitted by Columbia East Side to United for reimbursement that were denied, notwithstanding that United found coverage for professional fee corresponding to the service, and as to which Columbia East Side seeks damages *on its own behalf*." Ex. A at 4 (emphasis added) (ECF No. 110-1).

---

obligation (or reason) to read the boilerplate language that CES inserts into its forms, and neither CES nor the patients can unilaterally waive United's anti-assignment rights.

8

If the patients at issue had been included in the FAC, and if CES had alleged it was pursuing the claims on their behalf, to determine whether CES was in fact authorized to do so the Court would need to address complicated individualized questions concerning, *inter alia*, (1) whether the patients in fact signed authorized representative designations;[5] (2) the scope of those designations and whether they extended beyond administrative appeals, (3) whether each patient exhausted his or her administrative remedies and thereafter timely filed suit, and (4) whether the patients are still United insureds with standing to seek forward-looking injunctive relief. But as the claims at issue in this Motion are all ones that CES expressly purports to bring on its own behalf, summary judgment can and should be granted without further inquiry.[6]

### III. GRANTING UNITED'S MOTION WILL SIMPLIFY CLASS CERTIFICATION BRIEFING AND DISCOVERY

Granting United's motion will reduce the class certification briefing sample set from 72 claims under 53 plans, to 51 claims under 34 plans—much closer to the sample size originally contemplated by the Court and the parties. Br. 2. In addition, it will simplify discovery by eliminating from the case all fully insured plans from New York and Connecticut—the very states Plaintiffs previously raised to the Court in a denied discovery dispute. ECF No. 101 at 3. The Motion should be granted because it is correct, but it should be granted *now* because doing so will help streamline the litigation.

### CONCLUSION

Because all of the COCs at issue contain valid anti-assignment provisions that have not been waived, the Court should grant United's motion for summary judgment.

---

[5] Plaintiffs do not have authorized representative designation forms for at least four of the patients (AK, BM, BN, and BL). Counter-SMF ¶ 47. In addition, Plaintiffs have not produced a patient-signed form of any kind for patient BL.

[6] United's counsel is flattered that Plaintiffs recognize him as a leading authority on the law of provider standing. He suggests, however, that Plaintiffs read the articles in full. They will discern they do not support their cause.

9

| | |
|---|---|
| Dated:  August 6, 2018 | Respectfully submitted, |
| Washington, D.C. | |
| | By: */s/ Gregory F. Jacob* |
| O'MELVENY & MYERS LLP | O'MELVENY & MYERS LLP |
| Brian D. Boyle (*pro hac vice*) | Anton Metlitsky |
| Gregory F. Jacob (*pro hac vice*) | Sloane Ackerman |
| 1625 Eye Street, N.W. | Times Square Tower |
| Washington, D.C. 20006 | 7 Times Square |
| Telephone:  (202) 383-5300 | New York, New York 10036 |
| Facsimile:  (202) 383-5414 | Telephone:  (212) 326-2000 |
| gjacob@omm.com | Facsimile:  (212) 326-2061 |
| bboyle@omm.com | ametlitsky@omm.com |
| | sackerman@omm.com |

*Attorneys for Defendants UnitedHealth Group Incorporated, United HealthCare Services, Inc., United HealthCare Insurance Company, United HealthCare Service LLC, Optum Group, LLC, Optum, Inc., and Oxford Health Plans LLC*