UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE MEDICAL SOCIETY OF THE
STATE OF NEW YORK, *on behalf of its
members, et al.*,
                                    Plaintiffs,

                    -v-

UNITEDHEALTH GROUP INC., *et al.*,
                                    Defendants.

16-CV-5265 (JPO)

<u>OPINION AND ORDER</u>

J. PAUL OETKEN, District Judge:

Plaintiffs the Medical Society of the State of New York, the Society of New York Office

Based Surgery Facilities, and Columbia East Side Surgery, P.C. bring this putative class action

under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et

seq.*, against Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., United

HealthCare Insurance Company, United HealthCare Service LLC, Optum Group, LLC, Optum,

Inc., and Oxford Health Plans LLC (collectively, "United").

Plaintiffs allege that United has a policy of violating the health insurance plans it operates

or administers by refusing to pay the facility fees charged by out-of-network office-based

surgery practices.  (Dkt. No. 73 ¶ 38.)  Defendants have asserted state-law counterclaims against

Columbia in connection with allegedly fraudulent benefit claim billing practices.  (Dkt. No. 96 at

35–46.)  Columbia now moves to dismiss Defendants' counterclaims (Dkt. No. 97), and United

moves for partial summary judgment on Plaintiffs' claims (Dkt. No. 107).  For the reasons that

follow, both motions are granted.

I.      **Background**

Plaintiffs initiated this action on July 1, 2016, and filed a first amended complaint on

September 23, 2016.[1]  (Dkt. Nos. 1, 36.)  United moved to dismiss the first amended complaint (Dkt. No. 50.)  The Court granted in part and denied in part that motion.  (Dkt. No. 59 at 15–16.)

As relevant here, the Court dismissed the claims of some of the original plaintiff healthcare providers, holding that they lacked a cause of action due to the absence of a valid assignment from their patients of the right to seek reimbursement from United.  (Dkt. No. 59 at 10–13.)  Specifically, the Court reasoned that because two patients were insured under United plans that "unambiguously bar[red] assignment of claims" (*id.* at 11), the purported assignment of their claims to the service providers was void (*id.* at 11–12).

After the motion to dismiss was resolved, Plaintiffs filed the operative Corrected First Amended Class Action Complaint ("Complaint") on January 10, 2018.  (Dkt. No. 73 ("Compl.").)  United moved to strike the class allegations (Dkt. No. 75), and subsequently answered the Complaint (Dkt. No. 80).  The Court denied the motion to strike (Dkt. No. 87), and United then sought and was granted leave to amend its answer (Dkt. Nos. 88, 95).  United filed its Amended Answer on May 14, 2018, asserting counterclaims against Plaintiff Columbia. (Dkt. No. 96 at 35–47 ("CC").)

A.    **General Factual Background**

The Court assumes familiarity with the factual background of this case, as set forth in the Court's prior opinion.  *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2017 WL

---

[1]    The Plaintiffs who filed the first amended complaint included those named above, as well as Dr. Jeffrey Adler, Podiatric OR of Midtown Manhattan, P.C., Dr. Darrick Antell, and Dr. Albert B. Knapp, M.D., P.C.  However, the claims brought by these additional plaintiffs were largely dismissed by the Court's September 11, 2017 Opinion and Order (Dkt. No. 59 at 16), and they were not named as plaintiffs in the Corrected First Amended Class Action Complaint (Dkt. No. 73 at 1).

4023350, at *1–2 (S.D.N.Y. Sept. 11, 2017). The Court briefly recounts those underlying facts here, with a focus on the details relevant to the motions under consideration.

United is a health insurance provider and plan administrator that offers various insurance plans governed by ERISA. (Compl. ¶¶ 1, 20–25.) The United plans at issue in this case cover services from both in-network and out-of-network providers, and cover outpatient surgeries. (Compl. ¶¶ 6–7.) Outpatient surgeries may be performed in a hospital, in an ambulatory surgical center ("ASC"), or in an operating room in a doctor's office ("office-based surgery" or "OBS"). (Compl. ¶ 8.) Any outpatient surgery entails fees related to both the surgeon's time and the cost of using the facility (the "facility fee"). (Compl. ¶ 7.)

Plaintiffs allege that United has adopted a uniform policy of refusing to pay or approve OBS facility fees for out-of-network providers (Compl. ¶¶ 9–11, 38–39), which Plaintiffs allege violates the terms of United's insurance plans (Compl. ¶¶ 34–38).

Plaintiff Columbia East Side Surgery, P.C. ("Columbia") is an OBS medical practice that has provided out-of-network outpatient surgeries to patients covered by United's plans, and it represents four patients insured under United plans who have not been paid benefits for the facility fees for such surgeries. (Compl. ¶¶ 13, 19, 40–92.)[2]

The other two plaintiffs, the Medical Society of the State of New York ("MSSNY") and the Society of New York Office Based Surgery Facilities ("NYOBS") (collectively, the "Association Plaintiffs"), are associations that represent the interests of health care providers—including out-of-network OBS providers subject to United's uniform refusal to pay—and their patients. (Compl. ¶¶ 12, 14–18.)

---

[2] To protect patients' privacy, individual names have been replaced with aliases. (*See* Compl. at 1 n.1.)

As the representative of four patients insured under United plans and subject to the refusal-to-pay policy, Columbia brings a claim on behalf of those patients and a putative class for failure to pay benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 13, 115–118.)  Additionally, Columbia and the Association Plaintiffs, on behalf of themselves and the putative class, bring another claim under ERISA § 502(a)(1)(B) or § 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), for injunctive and declaratory relief from United's refusal-to-pay policy.  (Compl. ¶¶ 119–122.)

### B.    Facts Specific to Defendants' Counterclaims

The facts relevant to United's counterclaims are taken from the Answer and are presumed true for the purposes of Columbia's motion to dismiss.

If it receives authorization from a patient insured by a United plan, an out-of-network service provider like Columbia can seek reimbursement for covered surgical procedures directly from United.  (CC ¶ 25.)  To do so, the service provider submits to United a "health service claim form," which uses an "alphanumeric coding regime" to convey relevant information about the procedure.  (*Id.*)  United processes the form and reimburses the service provider for the covered amount.  (*Id.*)

United alleges that hospitals and ASCs are entitled to charge a facility fee for use of their premises under the policies of the Centers for Medicare & Medicaid Services ("CMS") (CC ¶¶ 28–29), but "OBS practices generally are not entitled to receive a 'facility fee' under the reimbursement policies of CMS" (CC ¶ 31).  According to United, Columbia is an OBS practice, but it "nonetheless submitted numerous claims to United using billing codes that were reserved for ASCs or outpatient hospital facilities" (CC ¶ 33), some of which claims United paid based on Columbia's alleged misrepresentations (CC ¶ 38).

In addition to United's facility-type billing codes, there are "Current Procedural Terminology" codes published by the American Medical Association, which healthcare providers use to describe procedures. (CC ¶ 39.) One such code in particular—"CPT Modifier code '59'"—indicates that a procedure was a "Distinct Procedural Service," *i.e.*, a service that was "distinct or independent from other services performed on the same day," so that the insurer knows not to treat the services as bundled and apply a discount. (CC ¶ 40.) United alleges that Columbia improperly used this code for procedures that did not meet the code's requirements, thus overbilling United for reimbursement. (CC ¶ 44.)

In connection with this billing code conduct, United asserts counterclaims against Columbia for fraudulent reimbursement, unjust enrichment, and deceptive trade practices under New York law. (CC ¶¶ 45–64.) Plaintiffs now move to dismiss these counterclaims for failure to state a claim on which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). (Dkt. No. 97.)

## C. Facts Specific to United's Summary Judgment Motion

In addition, United moves for partial summary judgment under Rule 56 on Plaintiffs' claims under ERISA §§ 502(a)(1)(B) and (a)(3). (Dkt. No. 107; *see also* Compl. ¶¶ 115–122.) United's motion for partial summary judgment, like its earlier motion to dismiss, involves the existence of anti-assignment clauses in its insurance plans. Here, United argues that Plaintiffs lack standing to seek payment for twenty benefit claims brought under nineteen fully insured health benefit plans due to the lack of a valid assignment of the claims. (Dkt. No. 108 at 1; Dkt. No. 122 at 1 n.1; Dkt. No. 123 ("SUF") ¶ 44.)

The facts relevant to this motion are taken from the parties' Local Rule 56.1 statements of undisputed facts and are not subject to a genuine dispute except where otherwise noted.

Plaintiff Columbia submitted 72 total claims to United for services to 66 individual patients, the facility fees associated with which Columbia argues United wrongfully denied. (SUF ¶ 18.) Twenty of those 72 claims are at issue in this motion for partial summary judgment. The twenty claims were submitted on behalf of nineteen different patients under nineteen different fully insured benefit plans.[3] Twelve of the claims were submitted under eleven insurance plans underwritten by Oxford Health Insurance, Inc. or Oxford Health Plans (NY), Inc., in New York State. (SUF ¶ 21; Dkt. No. 122 at 1 n.1; Dkt. No. 115-12.) One claim was submitted under an Oxford Health plan in Connecticut. (SUF ¶ 22.) And seven claims were submitted under seven New York plans underwritten by UnitedHealthcare Insurance Company of New York or UnitedHealthcare Insurance Company. (SUF ¶ 23.)

The nineteen insurance plans relevant to this motion all contain provisions purporting to bar the assignment of patients' rights under the plan ("anti-assignment clauses") and to grant the plan administrator discretion to directly pay out-of-network providers for services rendered under the plan ("direct payment provisions").[4] For example, the certificates of coverage for six of the UnitedHealthcare plans at issue provide:

> You may not assign your Benefits under the Policy to a non-Network provider without our consent. When an assignment is not obtained, we will send the reimbursement directly to you (the Subscriber) for you to reimburse them upon receipt of their bill. We may, however, pay a non-Network provider directly for services rendered to you. In the case of any such assignment of Benefits or payment to a non-Network provider, we reserve the right to offset Benefits to be paid to the provider by any amounts that the provider owes us.

---

[3] United originally represented that its motion pertained to nineteen claims under eighteen different plans. (Dkt. No. 108 at 6–7.) But the parties agreed that the motion actually encompasses twenty claims under nineteen plans. (Dkt. No. 122 at 1 n.1.) The plans at issue involve Patients S, AS, AT, AU, AX, BL, BQ, K, P, Y, AG, AJ, AK, BK, BM, BN, AZ, AR, and AC. (Dkt. No. 108 at 6–7; Dkt. No. 122 at 1 n.1.)

[4] Though there is some variation in language across the plans, Plaintiffs do not argue that these variations are at all dispositive.

(SUF ¶¶ 36, 38–42; *see, e.g.*, Dkt. No. 110-52 at 14.)  United contends that these provisions

"prohibit[] participants from assigning their benefits under the Plans to third parties, including

health care providers," but Plaintiffs dispute their legal effect.  (SUF ¶ 24; *see* SUF ¶¶ 25–42.)

Plaintiffs contend that Columbia has been "assigned benefits for all of the [nineteen]

patients and [twenty] claims at issue here" (SUF ¶ 44), relying on assignment-of-benefit forms,

authorized-representative-designation forms, and forms granting power of attorney (SUF ¶¶ 45–

48).  United acknowledges the existence of these forms[5] (SUF ¶¶ 45–48), but denies that

Columbia "has been validly assigned benefits for any of the patients and claims" (SUF ¶ 44).

In denying the claims at issue here, United sent a denial notice to the individual patients,

as well as notice directly to Columbia, in the form of a "Provider Explanation of Benefits" or

"Remittance Advice."  (SUF ¶ 82.)  These denial notices did not reference any anti-assignment

language from the particular insurance plans at issue.  (SUF ¶ 83.)  The "Provider Explanation of

Benefits" notices informed Columbia that "[t]he member, provider, or an authorized

representative may request reconsideration or appeal the decision" (SUF ¶ 84), and went on to

explain that "[i]f you are . . . a non-network provider appealing a decision on behalf of a

member, follow the process for appeals in the member's benefit plan document" (*see, e.g.*, Dkt.

No. 129-1 at 28 (all-caps omitted)).  The "Remittance Advice" notices stated that if "you . . . are

not fully satisfied with the resolution of your claim, you may contact Provider Services" and

"you may appeal the determination."  (SUF ¶ 84 (italics omitted); *see, e.g.*, Dkt. No. 129-1 at

11.)

---

[5]     However, United does not concede the existence of assignment-of-benefit forms
for Patients AK and BM, and notes that Columbia has not provided an executed form for Patient
BL.  (SUF ¶ 45.)

Plaintiffs offer additional evidence that they rely on for the proposition that United has waived the anti-assignment provisions. For instance, United has a "Standard Operating Procedure" for "Assignment of Benefits," but the parties dispute the meaning of the document. (SUF ¶ 52; *see also* SUF ¶¶ 53–58.) Plaintiffs allege that United has a "practice of honoring assignments to out-of-network providers" (SUF ¶ 63), by which it regularly "remits payment directly to a provider" (SUF ¶ 61); and for all claims at issue in this motion, United paid the insurance benefits—absent the disputed facility fee—directly to the service provider (SUF ¶ 65). United agrees that it regularly pays benefits directly to service providers, but asserts that in this context, "the phrase 'assignment of benefits,'" as used by its claim processors to refer to these payments, "is [not] being used . . . in its technical legal sense." (SUF ¶ 61.)

Plaintiffs have also adduced evidence of United's claims denial and appeal process. When United denies a claim for reimbursement submitted by Columbia, it sends Columbia a letter regarding the process for appealing the denial. United has sent Columbia at least twenty-two such letters between August 2013 and May 2016. (SUF ¶¶ 73, 81.) These letters state:

> The patient may initiate an appeal of this determination as outlined in the Summary Plan Description. Pursuant to the federal regulations, 29 CFR 2560.503-1(b)(4), if the patient does not file the appeal on their own behalf, we may require that the patient has designated an authorized representative to file an appeal on their behalf.
> This determination can be appealed as outlined in the claimant's explanation of benefits. You may initiate an appeal by following the procedure outlined below.

(*See, e.g.*, Dkt. No. 115-33 at 2–3; *see also* SUF ¶ 81.)

Additionally, United routinely seeks repayment directly from service providers who were overpaid for claims, regardless of any anti-assignment clause in the relevant insurance plan. (SUF ¶¶ 90–91.) United has specifically sought repayment from Columbia of overpaid claims, and in doing so it has offset overpayments for claims for some patients by deducting from

benefits paid for services rendered to other patients under other plans.  (SUF ¶¶ 98–103.)  United disputes that its repayment efforts, or the facts offered by Plaintiffs about its claim denial and appeal notifications, are material to its motion for summary judgment.  (SUF at 29.)

## II.     Motion to Dismiss

### A.     Legal Standard

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A court assessing such a motion must "accept[] as true the factual allegations in the complaint and draw[] all inferences in the [non-moving party's] favor."  *Allaire Corp. v. Okumus*, 433 F.3d 248, 249–50 (2d Cir. 2006) (quoting *Scutti Enters., LLC v. Park Place Entm't Corp.*, 322 F.3d 211, 214 (2d Cir. 2003)).  In considering a motion to dismiss for failure to state a claim under Rule 12(b)(6), a court may "look[] only to the complaint; documents that are attached as exhibits to, incorporated by reference, or integral to the complaint; and matters of which judicial notice may be taken."  *Rhee-Karn v. Burnett*, No. 13 Civ. 6132, 2014 WL 4494126, at *3 (S.D.N.Y. Sept. 12, 2014).

Rule 9(b) creates a heightened pleading standard for claims alleging fraud or mistake, requiring that the party alleging fraud "state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To survive a motion to dismiss on such a claim, the party alleging fraud must "(1) specify the statements that the [party] contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent."  *U.S. ex rel. Kester v. Novartis Pharm. Corp.,* 23 F.Supp.3d 242, 251–52 (S.D.N.Y. 2014) (quoting *Rombach v. Chang*, 355 F.3d 164, 170 (2d Cir. 2004)).

Additionally, when a motion to dismiss disputes the existence of liability for the challenged conduct, "[d]ismissal is appropriate when 'it is clear from the face of the complaint, and matters of which the court may take judicial notice, that the [challenged] claims are barred as a matter of law.'" *Parkcentral Glob. Hub Ltd. v. Porsche Auto. Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014) (per curiam) (quoting *Conopco, Inc. v. Roll Int'l*, 231 F.3d 82, 86 (2d Cir. 2000)).

**B.     Discussion**

Plaintiffs now move to dismiss United's counterclaims, arguing (i) that they are preempted by ERISA, and (ii) in the alternative, that United has failed to adequately plead the claims. Because the Court determines that dismissal is proper on the basis of preemption, the Court does not address whether United has plausibly alleged its counterclaims.

ERISA § 514(a) provides that ERISA "supersede[s] any and all State laws insofar as they . . . relate to any employee benefit plan." 29 U.S.C. § 1144(a). This "expansive pre-emption provision[]" is "intended to ensure that employee benefit plan regulation would be 'exclusively a federal concern.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 208 (2004) (quoting *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523 (1981)). Where "the essence of [a state-law] fraud claim . . . rel[ies] on the pension plan's operation or management," it is preempted under § 514(a). *Geller v. Cty. Line Auto Sales, Inc.*, 86 F.3d 18, 23 (2d Cir. 1996). But where an ERISA plan provides "only the context in which [a] garden variety fraud occurred," the fraud claim is not preempted. *Id.*; *see DaPonte v. Manfredi Motors, Inc.*, 157 F. App'x 328, 331 (2d Cir. 2005) (summary order) (holding that there was no preemption where "neither the existence of an ERISA plan nor the interpretation of any such plan's terms [was] material" to the allegedly preempted claims).

The parties dispute whether United's counterclaims "relate to" employee benefit plans regulated by ERISA.[6] Plaintiffs argue that the counterclaims are related to the ERISA plans at issue, because for Columbia's alleged "misrepresentations to be *material*, United needs to point to language in the underlying benefit plan that would have *properly* denied reimbursement to [Columbia] for the facility fees in question." (Dkt. No. 98 at 11; *see* Dkt. No. 105 at 1–3.)

For support, Plaintiffs rely on *Antell v. United Healthcare Insurance Co. of New York*, No. 10 Civ. 3194, 2012 WL 13042822 (S.D.N.Y. Mar. 16, 2012), in which Judge Sullivan held that state-law fraud claims directed at alleged conduct substantially similar to Columbia's "related to" ERISA plans because "[w]hether there was fraud . . . depends, at least in part, upon whether" the claims submitted to the plan administrator "were 'covered' under the terms of the ERISA plans such that" an out-of-network service provider "could collect benefits in the form of a 'facility fee,'" *id.* at *2.

United disagrees, arguing that the case is "on all fours" with *Geller v. County Line Auto Sales, Inc*., 86 F.3d 18 (2d Cir. 1996)—in which the Second Circuit rejected a preemption claim—and that the counterclaims are not preempted because Columbia was neither a plan participant nor a plan fiduciary and thus did not have any duties to the plan, and because United's fraud claims do not rely on the "plan's operation or management" (Dkt. No. 104 at 7–10, 12–13).

Contrary to United's reading, however, nothing in *Geller* limits preemption under § 514(a) to claims against ERISA plan participants, beneficiaries, or fiduciaries. Although the Second Circuit in *Geller* held that the defendants were not fiduciaries, 86 F.3d at 21, their status

---

[6] Because the parties do not distinguish among United's three state-law counterclaims in their preemption arguments, the Court will do the same. (Dkt. No. 105 at 5 (addressing "United's state law counterclaims" collectively); Dkt. No. 104 at 14 (same).)

was not considered in the court's preemption analysis, *id*. at 22–23.  Rather, the court looked to the purpose of ERISA and how the fraud related to the plan.  *Id*.; *see also Gerosa v. Savasta & Co.*, 329 F.3d 317, 324 (2d Cir. 2003) (noting that "[c]ourts are reluctant to find that Congress intended to preempt state laws that do not affect the relationships among" core ERISA entities, but not creating a bright line rule).

To correctly apply *Geller* and its progeny, then, the Court considers whether United's counterclaims rely on the "plan's operation or management."  *Geller*, 86 F.3d at 23.  As the Second Circuit has since elaborated, "state laws affecting the determination of eligibility for benefits [and] amounts of benefits . . . have typically been found to be preempted."  *Gerosa*, 329 F.3d at 324.

Here, the Court agrees with Plaintiffs and Judge Sullivan's opinion in *Antell* that the interpretation of terms under the ERISA plans at issue is necessary to determining whether Columbia's challenged billing practices were fraudulent.  Indeed, United seems to recognize as much in its counterclaim complaint and opposition brief, acknowledging that the interpretation of plan terms is required to determine whether a plan covers certain services, and the amount of payment required.  (*See* CC ¶¶ 23, 25, 31, 55; Dkt. No. 104 at 3.)  After all, the gravamen of United's complaint is that Columbia mislabeled itself as an ASC or a hospital in the claims it submitted to United.  But that mislabeling becomes fraudulent, rather than merely sloppy, if it was designed to cheat United out of funds that Columbia would not otherwise be entitled to receive *under the plans at issue*.  Accordingly, the interpretation and application of the terms of those plans is a central issue in resolving the question of Columbia's eligibility for the facility fees it sought to claim from United through its alleged fraud.

Furthermore, the necessity of interpreting these substantive provisions of the plan in evaluating the counterclaims demonstrates that the claims in fact rely on the operation of the plan. *See Enigma Mgmt. Corp. v. Multiplan, Inc.*, 994 F. Supp. 2d 290, 303 (E.D.N.Y. 2014) (holding claims preempted where "resolving the [fraud] claim will require the court to interpret the plan's terms"). And this is not a case where a definition of a plan term is merely tangentially involved as context for the fraud. *See Conn. Gen. Life Ins. Co. v. Advanced Chiropractic Healthcare*, 54 F. Supp. 3d 260, 267–68 (E.D.N.Y. 2014) (holding that a fraud claim was not preempted where a healthcare provider submitted claims for services that may not have been provided at all). Rather, under these circumstances, the counterclaims interposed by United are aimed at "affecting the determination of . . . [the] amounts of benefits," *Gerosa*, 329 F.3d at 324, that certain patients will receive under the plan for services provided by Columbia (*see* CC ¶¶ 23, 25, 27; Dkt. No. 96-1).

Ultimately, the Court concludes that United's state-law counterclaims are preempted under ERISA § 514(a). Plaintiffs' motion to dismiss is therefore granted.

In the event that the counterclaims were dismissed, United requested "the opportunity to amend its pleadings to correct any identified deficiencies." (Dkt. No. 104 at 2 n.1.) Under Rule 15(a)(2), a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2). "As a general matter, a [party] may amend a complaint to avoid preemption under ERISA." *Schultz v. Tribune ND, Inc.*, No. 10 Civ. 2652, 2011 WL 4344168, at *6 n.5 (E.D.N.Y. Sept. 14, 2011). Given that Plaintiffs have expressed no opposition to United's request, and United has not yet had an opportunity to cure any deficiencies in its counterclaims, the Court grants United's request for leave to amend.

### III.     Motion for Partial Summary Judgment

United also moves for partial summary judgment on Plaintiffs' claims, to the extent that those claims rely on the non-payment of certain benefits under health insurance plans that contain anti-assignment provisions.  (Dkt. No. 108 at 1.)  Plaintiffs oppose summary judgment, arguing mainly that United has waived reliance on these anti-assignment provisions.[7]  (Dkt. No. 113 at 4–18.)

#### A.     Legal Standard

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is material if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party.  *Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense.  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).  "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence."  *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc*., No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014)

---

[7]      As a preliminary matter, Plaintiffs ask the Court to defer ruling on the motion until they have had the opportunity to obtain relevant discovery.  (Dkt. No. 113 at 3–4; *see* Dkt. No. 116.)  United disagrees, asserting that "even if every one of Plaintiffs' allegations proved to be true, it would not demonstrate waiver of the anti-assignment clauses."  (Dkt. No. 122 at 8.)  The Court agrees with United that the additional discovery sought would not affect the Court's conclusion regarding waiver of the anti-assignment provisions.

(citing Fed. R. Civ. P. 56(c); *Anderson*, 477 U.S. at 250–51). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lund's, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)).

### B.    Discussion

ERISA § 502(a)(1)(B) affords only plan participants or beneficiaries the right to bring an action for payment of unpaid benefits. 29 U.S.C. § 1132(a)(1)(B). And § 502(a)(3) affords only plan participants, beneficiaries, or fiduciaries the right to bring claims for injunctive relief against violations of ERISA or covered plans. *Id.* § 1132(a)(3). However, under a "narrow exception," physicians and service providers may "bring claims under § 502(a) based on a valid assignment from a patient." *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 361 (2d Cir. 2016) (first quoting *Simon v. Gen. Elec. Co.*, 263 F.3d 176, 178 (2d Cir. 2001) (per curiam)).

"The validity of assignments for ERISA purposes is a question of federal common law." *Merrick v. UnitedHealth Grp. Inc.*, 175 F. Supp. 3d 110, 117 (S.D.N.Y. 2016) (brackets and citation omitted). "In determining whether contract language prohibits assignment to a healthcare provider, courts apply traditional principles of contract interpretation." *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551, 2016 WL 2939164, at *4 (S.D.N.Y. May 19, 2016). And "because the Second Circuit applies 'rules of contract law to ERISA plans, a court must not rewrite, under the guise of interpretation, a term of the contract when the term is clear and unambiguous.'" *Id.* (quoting *Burke v. PriceWaterHouseCoopers LLP Term Disability Plan*, 572 F.3d 76, 81 (2d Cir. 2009) (per curiam)). Rather, courts must "interpret[] ERISA plans in an ordinary and popular sense as

would a person of average intelligence and experience." *Id.* (quoting *Critchlow v. First UNUM Life Ins. Co. of Am.*, 378 F.3d 246, 256 (2d Cir. 2004)).

As the Court explained in its prior opinion, "[a] claim is not validly assigned—and . . . therefore the assignment is void—where the health plan in question 'unambiguously prohibits assignment.'" (Dkt. No. 59 at 11 (quoting *Neuroaxis Neurosurgical Assocs., PC v. Costco Wholesale Co.*, 919 F. Supp. 2d 345, 351 (S.D.N.Y. 2013)).) Here, Plaintiffs (i) dispute whether the plans at issue unambiguously bar assignment, and (ii) argue that United, through its course of conduct, has waived reliance on the anti-assignment provisions in the plans at issue.

### 1. Effect of the Anti-Assignment Clauses

Plaintiffs do not dispute that the anti-assignment provisions in the plans at issue, on their own, would unambiguously bar assignment. (*See* Dkt. No. 113 at 4–18 (not contesting the meaning of the purported anti-assignment clauses).) But they argue that the plan provisions allowing United to reimburse providers directly "render the anti-assignment clauses ineffectual." (Dkt. No. 113 at 7.)

For this proposition, Plaintiffs rely on a decision from this District, which reasoned that because a plan with an anti-assignment provision "also provide[d] for the possibility of direct payment to the health care provider," the plan could not be read to "prevent all assignments." *Protocare of Metro. N.Y., Inc. v. Mut. Ass'n Adm'rs, Inc.*, 866 F. Supp. 757, 761–62 (S.D.N.Y. 1994); *see also Biomed Pharm., Inc. v. Oxford Health Plans (N.Y.), Inc.*, No. 10 Civ. 7427, 2011 WL 803097, at *5 (S.D.N.Y. Feb. 18, 2011) (reasoning that the existence of a direct payment provision in a plan with an anti-assignment clause "at the very least[] creates an ambiguity within the contract that should be construed against the drafter").

Contrary to these cases, however, other courts in this District have held that an anti-assignment clause remains effective notwithstanding the existence of a direct payment

provision in the plan.  *See Merrick*, 175 F. Supp. 3d at 120–22 (holding that an anti-assignment

clause was "unambiguous" and enforceable, despite direct payment provision);  *Neuroaxis*, 919

F. Supp. 2d at 355 ("[T]he fact that [an insurer] has reserved for itself the right to make direct

payments to healthcare providers does not suggest that the Plan members also have the right to

unilaterally assign rights to healthcare providers.").

   The Court agrees that it is possible to give effect to both the anti-assignment clauses and

the direct payment provisions in these plans, by interpreting the concepts of assigning rights and

of directly paying service providers not to be coterminous.  (*See* Dkt. No. 108 at 17 (arguing that

the plans "distinguish[] between payment and assignment of benefits").)  Indeed, it is necessary

to interpret the provisions according to their plain meaning and give effect to both.  To do

otherwise would "create an ambiguity where none exists," *Merrick*, 175 F. Supp. 3d at 122,

which would be an improper interpretive exercise under ERISA, *see Burke*, 572 F.3d at 81 ("[A]

court must not 'rewrite, under the guise of interpretation, a term of the contract when the term is

clear and unambiguous.'" (citation omitted)).

   The Court thus concludes that the anti-assignment clauses in the plans at issue are not

rendered ambiguous or nugatory by the existence of direct payment provisions.

### 2.     Waiver

   Because the anti-assignment clauses that United has identified are unambiguous, they

will bar Plaintiffs from bringing claims under the plans at issue unless they are deemed

unenforceable due to waiver.[8]

---

[8]     In the alternative, Plaintiffs briefly assert that United has "effectively consented to
assignment."  (Dkt. No. 113 at 4.)  But elsewhere, Plaintiff acknowledges that "no such process"
for securing United's consent to assignment "or 'consent' exists, or has ever been invoked."
(Dkt. No. 113 at 8.)  Because Plaintiffs do not point to any facts supporting that United
*affirmatively* consented to assignment of the claims at issue, the Court construes the argument
about "effective consent" to simply be an alternate characterization of "waiver."

Although the Second Circuit has not specifically addressed whether a plan administrator can "waive its right to enforce an anti-assignment provision, it has found the equitable doctrines of estoppel and waiver are applicable to ERISA actions" generally, and courts in this District have applied the doctrine of waiver to anti-assignment provisions in ERISA plans. *Merrick*, 175 F. Supp. 3d at 120. "Waiver arises when a party has voluntarily or intentionally relinquished a known right." *Id.* at 122 (citation omitted). It "requires a 'clear manifestation of an intent by [a party] to relinquish [its] known right' and 'mere silence, oversight or thoughtlessness in failing to object' to a breach of the contract" are insufficient. *Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 585 (2d Cir. 2006) (quoting *Courtney-Clarke v. Rizzoli Int'l Publ'ns*, 251 A.D.2d 13, 13 (N.Y. App. Div. 1st Dep't 1998)).[9]

Plaintiffs contend that there is at least a genuine dispute as to whether United has waived reliance on the anti-assignment provisions through its course of conduct with respect to the plans. (Dkt. No. 113 at 5.) Plaintiffs point to four sets of actions taken by United that they assert amount to waiver: (i) direct payment to service providers; (ii) denying claims submitted by out-of-network providers without reference to assignment; (iii) allowing service providers to appeal claim denials; and (iv) seeking recoupment from service providers that have received overpayments. (Dkt. No. 113 at 5–6.) The Court addresses each in turn.

---

[9] The parties do not address whether federal common law or state law provides the appropriate standard for assessing waiver in this case. *Merrick*, on which both parties rely on their briefs, in turn articulates a standard for waiver under both federal and New York state law. *See* 175 F. Supp. 3d at 122 (citing *Ludwig v. NYNEX Serv. Co.*, 838 F. Supp. 769, 796 (S.D.N.Y. 1993); *Beth Israel*, 448 F.3d at 585). And Plaintiffs have not argued that a different state law standard for waiver applies to the one Connecticut plan at issue. Accordingly, without resolving the question, the Court will apply the waiver standard articulated in *Merrick*.

### i.     Direct Payment of Claims

First, Plaintiffs have adduced facts that United pays benefit claims directly to out-of-network service providers, regardless of anti-assignment provisions, and in doing so understands itself to be "honoring" an assignment of benefits.  (Dkt. No. 113 at 6–10; SUF ¶¶ 53, 65.) United counters that plan "administrators do not waive anti-assignment provisions by making direct payments to providers when such payments are explicitly authorized by the plan document," as they are here.  (Dkt. No. 108 at 16–17.)

Indeed, in a number of cases from this District and beyond, courts have rejected the argument that an administrator "waived the anti-assignment provision by its direct payment to [providers]" where the administrator "was explicitly permitted to pay [providers] directly under the plan in its discretion."  *Merrick*, 175 F. Supp. 3d at 122; *see, e.g.*, *Am. Orthopedic & Sports Med. v. Indep. Blue Cross Blue Shield*, 890 F.3d 445, 454 (3d Cir. 2018) ("[I]ssuing payment at the out-of-network rate . . . do[es] not demonstrate an evident purpose to surrender an objection to a provider's standing in a federal lawsuit." (internal quotation marks and citation omitted)); *Mbody Minimally Invasive Surgery, P.C. v. Empire Healthchoice HMO, Inc.*, No. 13 Civ. 6551, 2014 WL 4058321, at *3 (S.D.N.Y. Aug. 15, 2014) ("Health insurance companies routinely make direct payments to healthcare providers without waiving anti-assignment provisions."); *Advanced Orthopedics & Sports Med. v. Blue Cross Blue Shield of Mass.*, No. 14 Civ. 7280, 2015 WL 4430488, at *7 (D.N.J. July 20, 2015) (collecting cases).

The Court agrees with these cases.  Allowing a plan administrator to exercise its expressly reserved discretion to pay out-of-network providers directly, without relinquishing its right to enforce an express restriction on assignment of benefits, gives fullest effect to these adjacent plan provisions.  In adopting this interpretation of the effect of direct payment, courts

avoid "rewrit[ing]" the plans "under the guise of interpretation." *Burke*, 572 F.3d at 81.  Though several cases have reached a different conclusion about the implications of a direct payment provision for an anti-assignment clause, the Court finds their reasoning unpersuasive.  *See Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11 Civ. 425, 2014 WL 4271970, at *15 (D.N.J. Aug. 28, 2014), *vacated on other grounds*, 2014 WL 7073439 (D.N.J. Dec. 15, 2014); *Biomed*, 2011 WL 803097, at *5; *Protocare*, 866 F. Supp. at 761–62.  The Court holds that direct payment to a service provider—where the plan expressly permits such payment—does not waive the enforcement of an anti-assignment provision.

Here, each of the plans at issue contains both anti-assignment clauses and direct payment provisions.  (Dkt. No. 108 at 17–19.)  As a matter of law, direct payments to Columbia under these plans do not demonstrate waiver of United's right to invoke the anti-assignment provisions.

Additionally, the fact that United refers to directly paying service providers as "honoring an assignment" is inapposite.  Plaintiffs' argument on how United considers such direct payments relies primarily on internal documents and testimony from United employees.  (Dkt. No. 113 at 6.)  But as United correctly notes, "[o]nly external conduct or statements"—that a plan participant or beneficiary can observe and rely on—can give rise to waiver.  (Dkt. No. 122 at 5–6.)  United cannot waive an aspect of the plans through internal documents and statements that were not communicated to patients or service providers.  And to the extent that some of the plans at issue refer to direct payment as assignment (Dkt. No. 113 at 9; *see* SUF ¶¶ 26–27), direct payment does not effectuate waiver because the plans expressly reserve United's discretion to undertake direct payment, as described above.

Furthermore, these plans demonstrate an important distinction between colloquially referring to allowing out-of-network service providers to be paid directly as "assignment" and

the legal assignment of a right to sue under ERISA for alleged violations of the plan and statute. (*See* Dkt. No. 122 at 3–4, 6.)  The Third Circuit recognized this distinction recently, in reasoning that "routine processing of a claim form, issuing payment at the out-of-network rate, and summarily denying the informal appeal"—activity related to the direct payment of service providers—"do not demonstrate an evident purpose to surrender an objection to a provider's standing in a federal lawsuit."  *Am. Orthopedic & Sports Med.*, 890 F.3d at 454 (internal quotation marks omitted).

The Second Circuit has also noted that "[n]ot all ERISA assignments convey the same rights," and recognized the importance of parsing the particular assignment at issue.  *Rojas v. Cigna Health & Life Ins. Co.*, 793 F.3d 253, 258 (2d Cir. 2015).  Even if United could be said to have waived its objection to a patient's assigning to a service provider the right to receive direct payment for services, this does not necessarily constitute a clear manifestation of the intent to allow a plan beneficiary to assign the right to contest the denial of a benefits claim through internal appeals or in federal court.

### ii.     Other Conduct

Apart from the direct payment of service providers, Plaintiffs contend that United has waived enforcement of the anti-assignment provisions through its conduct with respect to claim denials, benefit appeals, and recoupment of overpayments.  As another court in this District has recognized, evidence of a plan administrator's course of conduct—beyond direct payment— often presents a "closer question" as to waiver.  *Merrick*, 175 F. Supp. 3d at 123.  But here, that course of conduct does not raise a genuine dispute of material fact as to waiver sufficient to defeat summary judgment.

*First*, Plaintiffs point to facts about the claim denial process that they assert demonstrate that "even when it denies claims, United still recognizes that the provider has a valid assignment." (Dkt. No. 113 at 11.) Plaintiffs point to specific conduct alleged to demonstrate waiver, including United's practice of not reviewing plan documents when adjudicating benefits claims submitted by out-of-network providers. (Dkt. No. 113 at 10, 12–13; SUF ¶¶ 66, 70–80.) But as explained above, United's internal adjudication process, which is not communicated to service providers or plan beneficiaries, cannot constitute a "clear manifestation" of United's intent to waive part of the plan.

Plaintiffs also rely on the fact that United's denial-of-claim explanations sent to Columbia do not rely on anti-assignment prohibitions as the basis for the claim denial. (Dkt. No. 113 at 11.) As another court in this District has explained, however, that United "did not raise the anti-assignment provision at the time [it] denied or reduced payment is irrelevant because the anti-assignment provision was not a factor determining the payment amount." *Mbody*, 2014 WL 4058321, at *3. This argument is simply a repackaging of the direct payment argument, which "courts have repeatedly rejected." *Id.*

Plaintiffs also contend that United has waived reliance on anti-assignment provisions in six particular plans by failing to assert those clauses in response to certain forms which instructed United "to please advise and disclose to [Columbia] in writing [any] anti-assignment provision" that United was invoking to bar the purported assignment of claims under those six plans. (SUF ¶ 46; Dkt. No. 113 at 12.) But United's "mere silence" in the face of a request to reaffirm the anti-assignment clause cannot effectuate waiver. *Beth Israel*, 448 F.3d at 585.

Overall, Plaintiffs' arguments regarding claim denial again conflate direct payment with the assignment of legal rights. In denying a claim submitted by an out-of-network service

provider, United's conduct acknowledges that a patient may have *intended* for United to pay the provider directly, and that United may have exercised its *discretion* to do so. But nothing in United's conduct is an acknowledgement that the patient has validly assigned to the provider the legal right to sue for payment under ERISA.

*Second*, to support their waiver argument, Plaintiffs also rely on United's conduct in dealing directly with service providers that appeal benefit denials. (Dkt. No. 113 at 13–14.) United contends that Columbia obtained permission to file appeals on its patients' behalf as an authorized representative, and not as an assignee of benefits; as such, any such appeal would be irrelevant to the potential waiver of anti-assignment clauses. (Dkt. No. 122 at 8.)

In the parties' statements of undisputed facts and Plaintiffs' brief, however, Columbia never alleges that it actually prosecuted any internal appeals of the benefit denials at issue. (SUF ¶¶ 81–84; Dkt. No. 113 at 13–14.) Therefore, the Court cannot speculate about United's conduct vis-à-vis Columbia in a hypothetical appeals process. *See Merrick*, 175 F. Supp. 3d at 125 (noting irrelevance of appeals process to waiver determination where most plaintiffs did not pursue appeal and where the only evidence of the insurer's response to another plaintiff's appeal was an acknowledgment that it had been considered and rejected).

The only evidence Plaintiffs point to in relation to the appeals process are the appeal notification letters from United to Columbia. And nothing in those letters evinces the "clear manifestation" of an intention to waive the anti-assignment clauses. To the contrary, the letters clearly convey that, if the patient does not appeal herself, United "may require that the patient has designated an authorized representative to file an appeal on [her] behalf." (SUF ¶ 81; Dkt. No. 129-33 at 4.)

Instead of recognizing an assignment, the letters instruct that Columbia could proceed in the internal appeals process as an authorized representative of particular patients. And indeed, Columbia alleges that it received permission to proceed as an authorized representative or attorney-in-fact for most of the claims at issue. (Dkt. No. 113 at 18; SUF ¶¶ 47–48.) These appeal notification letters thus fail to raise a genuine issue as to waiver.

*Third*, Plaintiffs have adduced evidence that United seeks to recoup any overpayments directly from service providers, and will offset overpayments for some claims by underpaying subsequent claims. (Dkt. No. 113 at 14–16.) United responds that issuing a refund request to a service provider that was overpaid, and offsetting against future payments, "in no way treat[s] overpaid providers as assignees of patients' legal rights." (Dkt. No. 122 at 4.) The Court agrees. Plaintiffs do not point to any specific language in the refund requests from United that treat service providers as the legal benefit holders. And absent any such language manifesting an intent to relinquish the anti-assignment clauses, in seeking to recoup overpayments from a service provider who was paid directly, a plan administrator is simply exercising another aspect of its "discretion to pay directly." *Merrick*, 175 F. Supp. 3d at 124.

\* \* \*

The Court concludes that no reasonable jury could find, on the basis of the evidence offered by Plaintiffs of United's course of dealings with the plans, that United clearly manifested an intention to relinquish its right to enforce the anti-assignment clauses. *See Aviation W. Charters, Inc. v. United Healthcare Ins. Co.*, No. 14 Civ. 338, 2014 WL 5814232, at *3 (D. Ariz. Nov. 10, 2014) (granting summary judgment in favor of insurer on the basis of an anti-assignment clause over the provider's waiver objection where there was no evidence to "show that [the insurer] dealt with [the provider] as though it were 'standing in the shoes' of the

Beneficiary"). As such, United's motion for partial summary judgment as to the nineteen plans at issue is granted.

### 3.     Standing as Authorized Representative

As an alternative to their waiver argument, Plaintiffs argue that "[f]or almost all the claims" at issue, Columbia has statutory standing to sue as the patients' authorized representative or attorney-in-fact. (Dkt. No. 113 at 18.)

In its Opinion and Order of September 11, 2017, the Court rejected this as a basis for service providers to seek payment for wrongfully denied benefits under ERISA. (*See* Dkt. No. 59 at 12–13.) But Plaintiffs ask the Court to reconsider its position on this issue in light of an intervening decision from the Third Circuit. (Dkt. No. 113 at 19 (citing *Am. Orthopedic & Sports Med.*, 890 F.3d at 455).)

Ultimately, however, the Court need not decide whether to revisit this issue because, in bringing this suit, Plaintiffs are not acting as the authorized representatives of the patients at issue in this motion. As United points out, neither the case caption nor the operative complaint indicates that Columbia brings this action on behalf of those nineteen plaintiffs as their representative. (Dkt. No. 122 at 8; *see* Compl. at 1, 11–22 (purporting to act as the representative of Patients C, D, E, and F only).) Rather, Columbia has asserted that it "seeks damages" for the unpaid claims involving these nineteen patients "on its own behalf" (Dkt. No. 110-1 at 4), which it can only do through a valid assignment.

Therefore, Plaintiffs' renewed argument regarding the standing of authorized representatives under ERISA does not defeat United's motion for partial summary judgment.

**IV.     Conclusion**

For the foregoing reasons, Columbia's motion to dismiss United's counterclaims is

GRANTED, and United's motion for partial summary judgment is GRANTED.  United shall file

amended counterclaims, if any, within 21 days of the date of this opinion.

The Clerk of Court is directed to close the motions at Docket Numbers 97 and 107.

SO ORDERED.

Dated: March 28, 2019
       New York, New York

_____
                    J. PAUL OETKEN
              United States District Judge