UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE MEDICAL SOCIETY OF THE
STATE OF NEW YORK, *on behalf of its
members, et al.*,

                    Plaintiffs,

            -v-

UNITEDHEALTH GROUP INC., *et al.*,
                    Defendants.

16-CV-5265 (JPO)

OPINION AND ORDER

J. PAUL OETKEN, District Judge:

Plaintiffs the Medical Society of the State of New York, the Society of New York Office

Based Surgery Facilities, and Columbia East Side Surgery, P.C. bring this putative class action

under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et

seq.*, against Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., United

HealthCare Insurance Company, United HealthCare Service LLC, Optum Group, LLC, Optum,

Inc., and Oxford Health Plans LLC (collectively, "United").

Plaintiffs have moved for class certification under Federal Rule of Civil Procedure 23.

(Dkt. No. 142.)  For the reasons that follow, the motion is granted in part and denied in part.

**I.      Background**

The Court assumes familiarity with the background of this case, as set forth in the Court's

prior opinions.  *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2019 WL

1409806, at *1 (S.D.N.Y. Mar. 28, 2019); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16

Civ. 5265, 2018 WL 1773142, at *1 (S.D.N.Y. Apr. 12, 2018); *Med. Soc'y of N.Y. v.

UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2017 WL 4023350, at *1–2 (S.D.N.Y. Sept. 11,

2017).

### A.    Procedural History

Plaintiffs initiated this action on July 1, 2016, and filed a first amended complaint on

September 23, 2016.  (Dkt. Nos. 1, 36.)  United moved to dismiss the first amended complaint.

(Dkt. No. 50.)  In an Opinion and Order dated September 11, 2017, the Court granted that motion

in part, dismissing two claims due to the absence of a valid assignment from patients of the right

to seek reimbursement from United.  (Dkt. No. 59 at 10–13.)

Plaintiffs filed the operative Corrected First Amended Class Action Complaint

("Complaint") on January 10, 2018.  (Dkt. No. 73 ("Compl.").)  United moved to strike the class

allegations (Dkt. No. 75), and answered the Complaint (Dkt. No. 80).  The Court denied the

motion to strike (Dkt. No. 87), and on May 14, 2018 United filed an amended answer, asserting

counterclaims (Dkt. No. 96).  Plaintiffs moved to dismiss those counterclaims (Dkt. No. 97), and

United moved for partial summary judgment on twenty of Plaintiffs' claims (Dkt. No. 107).  In

an Opinion and Order dated March 28, 2019, the Court dismissed United's counterclaims as

preempted under ERISA, and granted partial summary judgment in favor of United on the claims

at issue due to the existence of valid anti-assignment provisions in the relevant health benefits

plans.  (Dkt. No. 153 at 13, 24–25.)

In the interim, Plaintiffs filed a motion for class certification (Dkt. No. 142), shortly

followed by a motion from United for summary judgment on the remaining claims (Dkt. No.

161).  The motion for class certification is now fully briefed (Dkt. Nos. 143, 156, 174), and ready

for resolution.

### B.    Factual Background

United is an insurer and administrator of employer-sponsored health benefit plans, which

are governed by ERISA.  (Compl. ¶ 1.)  For all of its plans, "United serves as the claims

administrator," whereby it is "responsible for determining whether any given claim is covered by

the corresponding United Plan and effectuating any resulting benefit payment."  (Compl. ¶ 5.)
This case involves the benefits provided under United's plans for outpatient surgery.

In New York State, outpatient surgical procedures can legally be performed in three kinds
of settings: hospitals, ambulatory surgical centers ("ASC"), and office-based surgery ("OBS")
practices.  (Compl. ¶ 8.)  An OBS practice essentially comprises "an operating room in [a
physician's] office."  (Compl. ¶ 8; *see* Dkt. No. 144-40 ¶ 6.)  Hospitals and ASCs are governed
by Article 28 of the New York Public Health Law, which imposes several requirements
including the need to maintain an operating certificate from the state Department of Health.  *See*
NY Pub. Health Law §§ 2801.1, 2805.  In contrast, OBS practices are regulated under Section
230-d of the New York Public Health Law, which requires them to maintain accreditation
through a third-party agency approved by the state Commissioner of Health.  *See* NY Pub.
Health Law § 230-d(1)(a), (1)(h).

In general, health insurers reimburse healthcare providers for two types of fees in
connection with outpatient surgical services: a "professional fee" to compensate for the medical
provider's "time and expertise," and a "facility fee" to compensate for the expense of using the
location where the service was performed.  (Compl. ¶ 7.)  Health insurance plans may consider
healthcare providers, such as OBS practices, to qualify as either "in-network" providers or "out-
of-network" providers, and most plans administered by United provide for benefits for services
by out-of-network providers.  (Compl. ¶ 6.)  In sum and substance, Plaintiffs allege that United
refuses to pay facility fees to out-of-network office-based surgery providers, which Plaintiffs
contend is contrary to the terms of United's health benefits plans and the requirements of ERISA.

Plaintiff Columbia East Side Surgery, P.C. ("Columbia") operated as an OBS practice
from 2013 to 2016, and is solely owned by Dr. Darrick Antell.  (Dkt. No. 144-40 ¶¶ 1–2; Compl.

¶¶ 13, 19.)  Columbia was properly accredited as an OBS practice under New York law during

that time (*see* Dkt. No. 144-39), and it provided out-of-network outpatient surgeries to patients

covered by United's plans (Compl. ¶ 19; Dkt. No. 144-40 ¶ 2).  Often these patients assigned to

Columbia their benefits claims for these surgeries, authorizing Columbia to seek reimbursement

from United through legal recourse if necessary.  (Dkt. No. 144 ¶ 10.)

     In billing United for its services, Columbia routinely submitted claims for facility fees.

(Dkt. No. 144-40 ¶ 2.)[1]  In April 2013, however, United decided that it would not pay facility

fees to Columbia for its outpatient surgical services.  In a letter to Columbia, United stated that

"without a valid operating certificate issued by the New York Commissioner of Health [under

Article 28], a physician's office is not eligible to bill facility charges as an Ambulatory Surgery

Center.  If you are certified for Office Based Surgery, UnitedHealth Group will not reimburse

facility fees."  (Dkt. No. 144-46 at 1.)  United rejected each of Columbia's subsequent attempts

to claim facility fees.  (*See* Dkt. No. 144-47.)

     Columbia alleges that United's denial of its claims for facility fees is not an isolated

practice, but rather the result of a policy that affects the proposed class of United plan

beneficiaries and assignees.  Indeed, as United's representatives admit, "United's standard

reimbursement policy, absent plan language to the contrary, is to treat providers of outpatient

surgical services in New York State that lack an Article 28 license as non-facilities that are not

eligible to charge facility fees for which United-administered plans provide benefits."  (Dkt. No.

144-13 at 4.)  But because "United has not identified any plans with cont[r]ary provisions," (Dkt.

No. 144-13 at 5), it does not pay facility fees to any OBS practices.

---

[1]    Specifically, as a plaintiff in this action, Columbia represents four patients insured under United plans whose claims for facility fees were denied.  (Compl. ¶¶ 13, 40–92.)

Plaintiffs contend that this policy is unlawful under ERISA because it was implemented for financial concerns and is unrelated to plan language.  (Dkt. No. 143 at 4.)  Moreover, Plaintiffs allege that the policy is inequitably applied to out-of-network OBS providers, but not those that are in-network.  (Dkt. No. 143 at 3–4, 9–10; *see* Dkt. No. 144-23 at 2.)

United's policy is implemented through a process referred to as "C-flagging," whereby United flags certain providers as non-Article 28 entities and denies all subsequent facility fee claims submitted by those providers.  (Dkt. No. 144-11 at 2–3.)[2]  Plaintiffs allege that the denial of claims pursuant to C-flags, however, does not involve the interpretation of the terms of each health benefits plan to determine whether the specific terms at issue require the payment of facility fees to OBS practices.  (Dkt. No. 143 at 3, 7, 11–12; *see* Dkt. No. 144-11 at 2–3; Dkt. No. 144-19 at 71:11–22; Dkt. No. 144-18 at 58:8–10; Dkt. No. 144-15 at 108:4–9; Dkt. No. 144-32 at 3.)

When a C-flag is placed on a provider, the provider receives a standard letter communicating United's policy against paying facility fees to OBS practices.  (Dkt. No. 144-11 at 4–5, 200; *see* Dkt. No. 73-6.)  Letters reiterating the policy are then sent to the flagged provider for each subsequent facility fee claim submitted.  (Dkt. No. 144-29 at 2.)  In denying the facility fee claims, United also sends an explanation of benefits ("EOB") form to the provider and patient.  The EOBs communicate that the claims were denied pursuant to codes LW and D60H, which indicate that the provider was not licensed under Article 28 and thus could not receive facility fees.  (Dkt. No. 144-11 at 3, 209; *see* Dkt. No. 144-1.01.)

---

[2]      Where the Court relies on documents that have been filed under seal, the Court has concluded that the parties' interests in continued sealing of the portions referenced in this Opinion and Order are insufficient to overcome the presumption of public access to judicial documents.  *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119–20 (2d Cir. 2006).

Looking to the language of the United plans at issue, Plaintiffs allege that they should be interpreted to include OBS providers within the definition of the "facilities" that are entitled to provide outpatient surgical services and receive facility fees for such services.  (Dkt. No. 143 at 11–12.)  Consequently, Plaintiffs assert that by applying a blanket policy that fails to interpret these plan terms at all—much less interpret them correctly—United has violated ERISA in denying the claims of all proposed class members.

Plaintiff Columbia brings a claim on behalf of its four patients and the proposed class for United's failure to pay benefits in violation of ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B). (Compl. ¶¶ 13, 115–118.)  The other Associational Plaintiffs—the Medical Society of the State of New York ("MSSNY") and the Society of New York Office Based Surgery Facilities ("NYOBS")—are organizations that represent the interests of health care providers, and whose members include Dr. Antell and other physicians who own out-of-network OBS practices. (Compl. ¶¶ 12, 14–18; Dkt. No. 144-22 at 20:20–24, 22:12–17.)  Together, Columbia, MSSNY, and NYOBS, on behalf of themselves and the proposed class, bring a second claim for injunctive and declaratory relief from United's refusal-to-pay policy under ERISA § 502(a)(1)(B) or § 502(a)(3), 29 U.S.C. §§ 1132(a)(1)(B), (a)(3).  (Compl. ¶¶ 119–122.)

## II.    Legal Standard

Class certification is governed by Federal Rule of Civil Procedure 23.  Section (a) of Rule 23 requires the party seeking certification to establish four prerequisites:

> (1) the class is so numerous that joinder of all members is impracticable;
> (2) there are questions of law or fact common to the class;
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and
> (4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a).  In addition, "the movant must show that the action is one of three types described in section (b)."  *Jackson v. Bloomberg, L.P.*, 298 F.R.D. 152, 159 (S.D.N.Y. 2014).

The Rule 23 requirements are more than a "mere pleading standard."  *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).  "Rather, the party seeking class certification must actually establish [Rule 23's] requirements by a preponderance of the evidence."  *Jackson*, 298 F.R.D. at 159.  To determine whether this standard has been satisfied, a court must conduct "a rigorous analysis" that may "overlap with the merits of the plaintiff's underlying claim."  *Dukes*, 564 U.S. at 351 (citation omitted).  This analysis often requires going "beyond the pleadings to consider the parties' evidentiary submissions and make factual findings where those submissions conflict[]."  *Jacob v. Duane Reade, Inc.*, 602 F. App'x. 3, 5 (2d Cir. 2015).

## III.   Discussion

Plaintiffs have moved for certification of a class under Rule 23(b)(1) or Rule 23(b)(2) and under Rule 23(b)(3).  The proposed class seeks a declaratory judgment, an injunction prohibiting United from continuing to deny all facility fee claims from OBS practices, and either an order directing United to reprocess the denied claims or an award of benefits for those claims.  (Dkt. No. 143 at 25.)  The proposed class consists of:

> Any United Plan member, or member's valid assignee, whose claim for facility fees for services rendered by an out-of-network OBS provider accredited under Section 230-d was denied, where such claim was (1) submitted under a Plan governed by ERISA; (2) denied during the applicable statute of limitations; and (3) denied on the basis that the OBS provider was not certified under Article 28 of the New York Public Health Law.
>
> Excluded are Defendants, their parents, subsidiaries, and affiliates, their directors and officers and members of their immediate families; also excluded are any federal, state, or local governmental entities, any judicial officers presiding over this action and the members of their immediate families, and judicial staff.

(Dkt. No. 143 at 13; *see id.* at 25.)  Plaintiffs also ask the Court to appoint Columbia, MSSNY, and NYOBS as class representatives and to appoint Zuckerman Spaeder LLP and Buttaci Leardi & Werner LLC as co-lead class counsel.  (Dkt. No. 142.)

United opposes class certification in its entirety, challenging Plaintiffs' ability to certify a class under three of the requirements of Rule 23(a), and each subsection of Rule 23(b).[3]  The Court first considers the threshold question of class member standing, before addressing whether Plaintiffs have satisfied the requirements of Rule 23(a) and (b).

## A.      Class Member Standing

As an initial matter, the Court considers whether certification of the proposed class would raise standing issues.  In the Second Circuit, "a class cannot be certified if any person captured within that definition lacks Article III standing."  *Calvo v. City of N.Y.*, No. 14 Civ. 7246, 2017 WL 4231431, at *3 (S.D.N.Y. Sept. 21, 2017) (citing *Denney v. Deutsche Bank AG*, 443 F.3d 253, 263–64 (2d Cir. 2006)).  To satisfy the constitutional standing requirements, "plaintiff[s] must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of

---

[3]      In support of their motion for class certification, Plaintiffs submitted an expert report from Michael Miscoe.  (Dkt. No. 144-38.)  United subsequently moved to strike this report under Federal Rule of Evidence 702 and *Daubert v. Merrell-Dow Pharmaceuticals*, 509 U.S. 579 (1993).  (Dkt. Nos. 158, 159.)  As United notes, however, "[t]he exclusion of Miscoe's testimony will have minimal impact on the pending class certification motion, as Plaintiffs make only a single, passing reference to Miscoe's opinions in their class certification brief."  (Dkt. No. 159 at 2.)  Indeed, United is primarily concerned with the way Miscoe's report could be employed in opposition to its pending motion for summary judgment.  (*Id.*)

Examining Plaintiffs' class certification brief, the Court notes that the sole proposition for which it cites the Miscoe report is substantially similar to a point that United made in support of the motion to strike.  (Dkt. No. 159 at 9.)  Furthermore, the reliance on the Miscoe report in Plaintiffs' brief is so minimal, the Court concludes that whether or not the report is in evidence would not ultimately control the outcome of the motion for class certification.  Accordingly, the Court defers consideration of the motion to strike until it resolves the pending motion for summary judgment.

the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016).

United points to two issues related to the standing of putative class members.  First, United contends that determining whether class members possess standing to bring a claim under ERISA will require individualized inquiry into whether patients validly assigned claims to their healthcare provider or maintained the right to pursue their claims.  (Dkt. No. 156 at 19.)  The type of "standing" that this argument refers to, however—what courts "formerly called 'statutory standing'"—is really a question of whether specific plaintiffs have a cause of action under the statute, and does not implicate the limits of Article III.  *Am. Psychiatric Ass'n v. Anthem Health Plans, Inc.*, 821 F.3d 352, 359 (2d Cir. 2016).  The assignment issue is thus better understood as relevant to the predominance inquiry under Rule 23(b), discussed below.  (*See* Dkt. No. 87 at 4.)

Second, United contends that some putative class members have not suffered any injury because Columbia "routinely releases patients from all responsibility to pay claims denied by United."  (Dkt. No. 156 at 24.)  Plaintiffs respond that patients were injured by United's alleged violation of ERISA in a manner sufficient to confer Article III standing even if they have no "out-of-pocket liability."  (Dkt. No. 174 at 18.)  The Court agrees with Plaintiffs.

At least four Circuits have held that "the denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services." *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018).  If patients were entitled to the payment of facility fees under the language of their health benefit plans, United's refusal to pay those fees denied patients the benefit of their bargain, which is an injury "stemm[ing] from traditional principles of contract law that d[oes] not depend on financial harm." *Id.*

Patient class members have thus suffered a sufficient injury-in-fact to confer Article III standing; and the Court is satisfied that the uncontested elements of standing have also been met here as to all forms of relief sought.

### B.      Rule 23(a) Requirements

#### 1.      Numerosity

The first subsection of Rule 23(a) requires that the class be "so numerous that joinder of each member is impracticable."  Fed. R. Civ. P. 23(a)(1).  Courts in the Second Circuit presume that the numerosity requirement is met if a putative class has forty or more members.  *See Shahriar v. Smith & Wollensky Rest. Grp., Inc.*, 659 F.3d 234, 252 (2d Cir. 2011).

Plaintiffs have identified claims submitted by approximately 245 providers, implicating an estimated 5,124 patients, in which facility fees were denied to what was likely an OBS practice.  (Dkt. No. 144 ¶¶ 26–30.)  United does not challenge the conclusion that the proposed class is numerous.  The Court thus finds that Plaintiffs have satisfied the first requirement of Rule 23(a) by demonstrating that the numerosity of the class would cause joinder of each member to be impracticable.

#### 2.      Commonality

The second subsection of Rule 23(a), the commonality requirement, mandates that "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  A question satisfies this condition if it is "capable of classwide resolution—which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 564 U.S. at 350.  "Where the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members, there is a common question."  *Johnson v. Nextel Commc'ns Inc.*, 780 F.3d 128, 137 (2d Cir. 2015) (citation omitted).  A single

common question is alone sufficient to satisfy the commonality requirement if the question has

the capacity to "materially advance the litigation." *Ruiz v. Citibank, N.A.*, 93 F. Supp. 3d 279,

289 (S.D.N.Y. 2015).

Plaintiffs offer three questions to satisfy the commonality requirement:  (1) "Was

United's decision to deny the OBS facility-fee claim based on its interpretation of any particular

written Plan term?"; (2) "Did United cover OBS facility-fee claims for in-network providers,

while denying coverage for out-of-network providers?"; and (3) "Do the written terms of any

United Plan exclude outpatient surgery facility-fee coverage for non-Article 28 providers?"

(Dkt. No. 143 at 15.)

The first of these questions involves whether United had a uniform policy of denying

OBS facility fee claims without interpreting any specific plan terms to justify that result.  (Dkt.

No. 143 at 15–16; *see* Dkt. No. 174 at 8–11.)  Plaintiffs argue that United did have such a policy,

as evidenced by United's C-flagging process:  United verifies that an OBS provider is not

licensed under Article 28, flags that provider as being incapable of receiving facility fees, and all

future facility fee claims from that provider are denied.  And this C-flagging process occurs

without reference to the specific terms of the health benefit plan under which the facility fee

claim was submitted.  (Dkt. No. 200 ¶¶ 266–67.)  For further support, Plaintiffs also point to the

standard letters and EOBs that United sends in denying these facility fee claims as common

evidence that notice to class members of claim denials did not reference specific plan terms.

(Dkt. No. 143 at 16; *see* Dkt. No. 144-47; Dkt. No. 144-1.01 at 5; Dkt. No. 144-1.19 at 3.)

Plaintiffs contend that this common evidence of how United's refusal-to-pay policy was

implemented through C-flags, without consideration of individual plan language, will

demonstrate that United violated its obligations under ERISA to the entire class requiring

classwide vacatur of benefit denials and remand.  (Dkt. No. 143 at 16.)  United responds that

Plaintiffs' argument regarding its interpretation of plan terms is factually incorrect, and that

answering this question requires individualized inquiry. (Dkt. No. 156 at 37.)

        In attacking the factual premise underlying Plaintiffs' argument, United alleges that it

vets the language of each plan when it "onboards" the plan into its "automatic adjudication

system," and that this vetting process ensures that no benefit provisions are inconsistent with

United's standard practice of not covering OBS claims for facility fees.  (Dkt. No. 156 at 37–38;

*see generally* Dkt. No. 183 ¶¶ 43–50, 52, 54–58, 62–64 (describing United's plan creation,

vetting, and onboarding processes.)  As Plaintiffs correctly note in reply, however, whether

United's vetting and onboarding processes satisfy its "duty under ERISA to apply plan terms in

denying OBS claims is itself a common question for class purposes."  (Dkt. No. 174 at 8.)[4]

Moreover, whether the vetting and onboarding processes actually took account of the OBS

facility fees issue and interpreted the relevant plan language in light of this issue is heavily

disputed by Plaintiffs in the context of United's pending motion for summary judgment.  (*See*

*generally* Dkt. No. 183 ¶¶ 62, 64; Dkt. No. 200 ¶¶ 379–416.)

        At this stage, "the proponent of class certification need not show that the common

questions 'will be answered, on the merits, in favor of the class.'"  *Johnson*, 780 F.3d at 138

(quoting *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 568 U.S. 455, 459 (2013)).  It need only

---

[4]        In a single footnote, United argues that the plan vetting process itself "varies by
plan." (Dkt. No. 156 at 39 n.20.)  The Court notes that "[a]rguments which appear in footnotes
are generally deemed to have been waived."  *In re MF Glob. Holdings Ltd. Inv. Litig.*, No. 11
Civ. 7866, 2014 WL 8184606, at *2 (S.D.N.Y. Mar. 11, 2014) (citation omitted).  Regardless,
these alleged variations nonetheless involve review of the plans for "consistency with United's
standard claim adjudication policies." (Dkt. No. 156 at 39 n.20; *see* Dkt. No. 183 ¶ 43 (noting
the existence of a "standard process for drafting, vetting, and loading the language of individual
plans into an automatic claim adjudication system").)  Consequently, how this review process
works and intersects with the C-flag process is capable of generalized proof.

demonstrate by a preponderance that there is at least one material question capable of classwide resolution, such as an issue demonstrating that "the same conduct or practice by the same defendant gives rise to the same kind of claims from all class members." *Id.* at 137 (citation omitted). Whether United's vetting, onboarding, and C-flagging processes actually involve the interpretation of plan terms in the ultimate decision to deny OBS facility fee claims, as a factual matter—and whether these processes satisfy ERISA, as a legal matter—present such common questions.

United briefly argues that the ultimate need for injunctive relief in this case would depend upon the interpretation of specific plan language, which presents an individualized inquiry. (Dkt. No. 156 at 39.)[5] However, this argument assumes the correctness of United's factual allegations regarding its onboarding and vetting processes, and whether those standard processes satisfy ERISA. Those assumptions present common questions that the Court does not conclusively resolve at the class certification stage.

Overall, the Court concludes that Plaintiffs have adequately demonstrated the existence of at least one common question that will drive the resolution of this litigation. The commonality requirement has thus been satisfied.

### 3.    Typicality and Adequacy

The third and fourth subsections of Rule 23(a) require that the claims or defenses of the proposed class representatives "are typical of the claims or defenses of the class" and that the proposed representatives "will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3)–(4). To establish typicality, plaintiffs "must show that each class member's

---

[5]    The bulk of the other arguments that United style as challenges to commonality are more properly considered as relevant to the predominance inquiry, and are thus addressed below as necessary. (Dkt. No. 156 at 18–23, 25–33.)

claim arises from the same course of events and each class member makes similar legal arguments to prove the defendant's liability." *In re Flag Telecom Holdings, Ltd. Sec. Litig.*, 574 F.3d 29, 35 (2d Cir.2009) (internal quotation marks omitted).  To establish adequacy, plaintiffs must show that "the proposed class representative [has] an interest in vigorously pursuing the claims of the class, and [has] no interests antagonistic to the interests of other class members." *In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 827 F.3d 223, 231 (2d Cir. 2016) (citation omitted).  In addition, plaintiffs must demonstrate that "plaintiff's attorneys are qualified, experienced and able to conduct the litigation."  *In re Flag Telecom*, 574 F.3d at 35 (citation omitted).

Several aspects of typicality and adequacy are not contested in this case, and the Court finds the requirements to be partially satisfied in these respects.  As an initial matter, it is clear that the claims of the class members arise from the same course of events:  United flagged OBS practices as ineligible to receive facility fees and denied claims for such fees pursuant to those C-flags.  Any "minor variations in the fact patterns underlying individual claims" do not overcome the fact that the same alleged "unlawful conduct was directed at or affected both the named plaintiff and the class sought to be represented."  *Jacob v. Duane Reade, Inc.*, 289 F.R.D. 408, 417 (S.D.N.Y. 2013) (quoting *Robidoux v. Celani,* 987 F.2d 931, 936–37 (2d Cir. 1993)).  On its face, then, typicality appears to be satisfied.

Additionally, under the adequacy inquiry, United does not contest the ableness of the proposed class co-counsel.  The Court concludes that counsel is sufficiently experienced and qualified to conduct this litigation on behalf of the proposed class.  (*See* Dkt. No. 143 at 24.) Furthermore, United does not argue that Columbia will not vigorously pursue the claims of the class, or that Columbia's interest in pursuing facility fees is out of step with the interests of the

14

proposed class of patients and OBS practice assignees.  The Court concludes that Columbia has adequately demonstrated that it will vigorously pursue this action and that its interests are generally consonant with those of the proposed class.  (*See* Dkt. No. 143 at 22–23.)

Notwithstanding these undisputed matters, United argues that Columbia, NYOBS, and MSSNY are not adequate or typical representatives of the proposed class.  The Court first addresses the challenges to Columbia's typicality and adequacy, and then those pertaining to the Associational Plaintiffs.

### a.     Columbia

United contends that Columbia is not a typical or adequate class representative because United has asserted an "unclean hands" affirmative defense against Columbia's claims.  (Dkt. No. 156 at 10–11.)  Columbia raises a number of responses, including that United's "unclean hands" defense is facially meritless.  (Dkt. No. 174 at 20–21.)

"[W]here a putative class representative is subject to unique defenses which threaten to become the focus of the litigation, certification of the class is not appropriate because the representative cannot act in the best interest of the class."  *Vargas v. Howard*, 324 F.R.D. 319, 327 (S.D.N.Y. 2018) (internal quotation marks omitted) (quoting *Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 59 (2d Cir. 2000)).  The issue of unique defenses is "routinely consider[ed] . . . under the typicality, commonality, and/or the adequacy prongs of Rule 23(a)."  *Lapin v. Goldman Sachs & Co.*, 254 F.R.D. 168, 179 (S.D.N.Y. 2008).  At the class certification stage, the defendant "need not show . . . that the unique defense will prevail, only that it is meritorious enough to require the plaintiff to devote considerable time to rebut the unique defense."  *Id.* (citation and internal quotation marks omitted).  A "groundless, far-fetched defense" alone is insufficient to disqualify a plaintiff.  *Id.* (citation omitted).  Moreover, "the rule

barring certification of plaintiffs subject to unique defenses is not rigidly applied in this Circuit," and plaintiffs can be certified as class representatives even if they are subject to a particular defense that may bar their recovery. *Id.* (brackets, internal quotation marks and citation omitted).

Here, United asserts a unique defense under the "unclean hands" doctrine, which "closes the doors of a court of equity to one tainted with inequitableness or bad faith relative to the matter in which he seeks relief." *Holm v. First Unum Life Ins. Co.*, 7 F. App'x 40, 41 (2d Cir. 2001) (quoting *Precision Instrument Mfg. Co. v. Automotive Maint. Mach. Co.*, 324 U.S. 806, 814 (1945)). To succeed on an unclean hands defense, a defendant must demonstrate that the plaintiff engaged in fraudulent, deceitful, or bad faith behavior, and that the "bad faith *related to the matter at issue* in th[e] litigation." *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Supp. 2d 126, 131 (S.D.N.Y. 1999).

This relation requirement has resulted in the "narrowness of the doctrine's application." *Specialty Minerals, Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005). Cases that have applied the unclean hands defense in this Circuit have done so where "the misconduct that forms the basis for the unclean hands defense was directly related to plaintiff's use or acquisition of the right in suit." *Id.* at 113; *see Curley v. Brignoli Curley & Roberts Assocs.*, 746 F. Supp. 1208, 1219 (S.D.N.Y. 1989) ("What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." (citation omitted)).

Here, United points to five categories of allegedly fraudulent conduct by Columbia to support its unclean hands defense: (1) using deceptive coding in billing claims; (2) ignoring regulatory statements that it was not entitled to facility fees; (3) billing for services that were not provided; (4) deliberately inflating bills; and (5) employing a specific billing service because it would inflate bills. (Dkt. No. 156 at 8–10.) The problem, however, is that United does not

16

adequately demonstrate that these practices are "directly related to plaintiff's use or acquisition of the right in suit." *Specialty Minerals*, 395 F. Supp. 2d. at 113.  The right in suit originates from ERISA and the language of the plans, which Columbia contends entitle OBS practices to the payment of facility fees.  The legal claims brought by Columbia in this action target the failure to pay these fees, whereas the fraudulent conduct alleged by United targets the propriety of billing for certain fees that *were paid*.  (*See* Dkt. No. 174 at 19–20.)

If United could demonstrate that Columbia fraudulently billed for certain services when in fact it did not perform *any*, then perhaps it would have a viable defense from equitable relief associated with the facility fee claims for those services.  But United does not specifically allege that this was ever the case.  In United's stated examples where Columbia allegedly billed for services not provided, it is clear in each instance that Columbia did in fact perform a service for the patients.  (*See* Dkt. Nos. 157-15, 157-16, 157-17).  And United does not establish that these services were improperly billed such that, even if Columbia prevails on its legal arguments, it would not be entitled to facility fees in connection therewith.

Ultimately, United has not persuasively established that Columbia dirtied its hands "in acquiring the right [it] now asserts." *Curley*, 746 F. Supp. at 1219.  Because "the Court cannot, at this point, find that the unique defense is 'meritorious,'" *Lapin*, 254 F.R.D. at 180, the assertion of the defense does not prevent Columbia from being a typical or adequate representative of the proposed class.  Having rejected this unique defenses argument, and in light of the uncontested aspects of adequacy and typicality inquiry discussed above, the Court concludes that Columbia is an adequate and typical representative of the proposed class.

### b.      Associational Plaintiffs

United also argues that the Associational Plaintiffs are inadequate and atypical class representatives, raising some arguments specific to NYOBS, and some arguments applicable to both NYOBS and MSSNY.  (Dkt. No. 156 at 12–17.)

To the extent United contends that NYOBS will be subject to unique defenses due to any alleged fraudulent conduct or relationship with Columbia (Dkt. No. 156 at 12–14), that argument fails for the reasons given above.  United also contends that NYOBS "places the interests of its officers over those of other practices," and has thus "demonstrated an unwillingness or inability to represent even its own membership," rendering it an inadequate class representative.  (Dkt. No. 156 at 12–13.)  That NYOBS may have placed the interests of some members over that of the membership body as whole on specific occasions in the past, however, does not establish that it lacks "an interest in vigorously pursuing the claims of the class" in this case.  *In re Payment Card*, 827 F.3d at 231.  There is no cause to suspect that, in the event a class is certified, the interests of the NYOBS leadership and the interests of its members diverge with respect to the desired outcome of this litigation.

United also suggests more generally that NYOBS lacks the proper character and integrity to serve as a class representative.  (Dkt. No. 156 at 13–14.)  Whether a person "is of sufficient moral character to represent a class" is indeed relevant to the adequacy requirement.  *Torres v. Gristede's Operating Corp.*, No. 04 Civ. 3316, 2006 WL 2819730, at *15 (S.D.N.Y. Sept. 29, 2006) (citation omitted).  But this inquiry is specifically "directed at improper or questionable conduct arising out of or touching upon the very prosecution of the lawsuit."  *Id.* (citation omitted).  Because none of the complained-of conduct occurred during the course of this

litigation, the Court is unwilling to conclude on this basis that NYOBS is an inadequate class representative.

United also raises three arguments challenging the ability of both NYOBS and MSSNY to serve as class representatives.

*First*, United contends that the associations cannot be class representatives because they fall outside the definition of class members.  (Dkt. No. 156 at 14–15.)  In support, United relies on the text of Rule 23, which provides that "[o]ne or more members of a class may sue" as a class representative.  Fed. R. Civ. P. 23(a).  United also cites *Sosna v. Iowa* for the proposition that "[a] litigant must be a member of the class which he or she seeks to represent at the time the class action is certified by the district court."  419 U.S. 393, 403 (1975).

United is correct that NYOBS and MSSNY do not technically qualify as class members because they are not "United Plan member[s]"—*i.e.*, patients—or "valid assignee[s]" of member's claims—*i.e.*, OBS practices.  (Dkt. No. 143 at 13.)  But courts in this Circuit have long permitted associations to serve as class representatives under similar circumstances.  *See, e.g.*, *Norwalk CORE v. Norwalk Redevelopment Agency*, 395 F.2d 920, 937 (2d Cir. 1968); *Brooklyn Ctr. for Indep. of the Disabled v. Bloomberg*, 290 F.R.D. 409, 419 (S.D.N.Y. 2012); *United States v. City of N.Y.*, 258 F.R.D. 47, 63 (E.D.N.Y. 2009).  Following this body of precedent, the Court concludes the Rule 23 permits an association, the members of which fall within the definition of the proposed class, to serve as a class representative.  The cited proposition from the Supreme Court in *Sosna*—which came in the context of a discussion of standing and mootness, did not purport to interpret Rule 23, and was made in a case that did not involve any associational plaintiff seeking to represent a class—is not to the contrary.

*Second*, United contends that the motivating purpose of NYOBS and MSSNY are not sufficiently in line with the proposed class.  (Dkt. No. 156 at 15–16.)  As the Second Circuit has indicated, an association may "represent[] a class where its raison d'etre is to represent the interests of that class."  *Norwalk*, 395 F.2d at 937.  Courts have interpreted this statement to mean that the association's "purpose" must be "consonant with the interests of the class."  *City of N.Y.*, 258 F.R.D. at 62; *see United for Children, Inc. v. City of N.Y.*, 214 F.R.D. 252, 263 (S.D.N.Y. 2003) (reasoning that the "organization appears to be consistent with the objectives of the proposed class").

Here, both NYOBS and MSSNY exist to represent the interests of OBS providers, either exclusively or as part of the representation of the interests of the medical profession in New York State.  (Dkt. No. 144-43 ¶ 2; Dkt. No. 144-44 at 1, 3–4; Dkt. No. 59 at 13–14.)  This representation is consistent with the interests of the class in securing facility fees for OBS practices where the plan language so requires.

United nonetheless contends that, because NYOBS and MSSNY lack patient members and do not represent the interests of patients, they cannot be adequate class representatives. (Dkt. No. 156 at 16.)  But United does not argue that the interests of patient class members differ in any way from that of OBS practices with valid assignment of patients' claims in this action. Nor does United dispute that an OBS practice, as the assignee of patient claims, can adequately represent the interests of patient class members.  *See Cordes & Co. Fin. Servs., Inc. v. A.G. Edwards & Sons, Inc.*, 502 F.3d 91, 101–02 (2d Cir. 2007).  Because the associations represent OBS practices that stand in the shoes of patients through valid assignments, the associations can adequately represent the shared interests of a class consisting of both patients and practices.

*Third*, United contends that because liability in this case will turn on individualized evidence, the Associational Plaintiffs are inappropriate class representatives.  (Dkt. No. 156 at 16–17.)  Plaintiffs respond that the case does not turn on individualized assessments of plan terms.  (Dkt. No. 174 at 22 n.37.)  This issue is best understood as challenge to associational standing.

The Court notes that, in addressing associational standing in an earlier Opinion and Order, it recognized that NYOBS and MSSNY would lack standing if United could demonstrate that Plaintiffs' claims required an "unacceptable amount" of "examination of individual benefit determinations."  (Dkt. No. 59 at 14–15.)  This issue is intertwined with the Court's consideration of the commonality requirement.  (*See supra* Section III.B.2.)  Because the question at the core of Plaintiffs' request for injunctive and declaratory relief does not turn on individualized evidence, as explained above, the Court need not and does not revisit its conclusion regarding associational standing.

Overall, the Court concludes that the Associational Plaintiffs have demonstrated that they are typical and adequate representatives of the proposed class for purposes of seeking declaratory and injunctive relief.

### C.      Rule 23(b) Requirements

Plaintiffs seek to certify a class under either Rule 23(b)(1) or (b)(2) to obtain declaratory judgment and injunctive relief, including an order requiring reprocessing of the class members' denied claims; and under Rule 23(b)(3) for the same relief and to "provid[e] the Court the flexibility to award benefits in lieu of reprocessing."  (Dkt. No. 143 at 25.)  The Court first addresses whether certification of the class for purposes of declaratory and injunctive relief is appropriate, before considering the requirements for certifying a benefits award class.

1.    **Declaratory and Injunctive Class Under Rule 23(b)(1) and (b)(2)**

a.    **Subsection (b)(1)**

Rule 23(b)(1) provides that a class may be satisfied if "prosecuting separate actions by or against individual class members would create a risk of":

> (A) inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class; or (B) adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

Fed. R. Civ. P. 23(b)(1).

Plaintiffs argue that certification is appropriate under subsection (b)(1)(A) because if individual class members brought separate suits, "United could be forced to reprocess some OBS facility-fee claims, but not others, even though the evidence underlying United's conduct would not vary." (Dkt. No. 143 at 26.)

United's response is twofold.  It contends first that Plaintiffs have failed to demonstrate that there is a real risk of separate actions in the event a class is not certified.  (Dkt. No. 156 at 40.)  But it is not clear that this showing is actually required under subsection (b)(1)(A).  In the sole case on which United relies for this requirement, the Second Circuit observed no danger of individual actions under the circumstances because the plaintiff had expressly conceded "that individual actions could not be brought as the small claimants who constitute the entire class could not, on an individual basis, afford the expense of lengthy anti-trust litigation." *Eisen v. Carlisle & Jacquelin*, 391 F.2d 555, 564 (2d Cir. 1968).  More recently, a court in this District expressly rejected the argument that plaintiffs must affirmatively demonstrate a risk of separate actions to obtain certification.  *See In re Citigroup Pension Plan ERISA Litig.*, 241 F.R.D. 172, 180 (S.D.N.Y. 2006); *see also Meidl v. Aetna, Inc.*, No. 15 Civ. 1319, 2017 WL 1831916, at *17

n.19 (D. Conn. May 4, 2017) (disagreeing with the "false premise that putative class members' financial interests and resources are a reason to avoid certification" under subsection (b)(1)(A)).

The Court concludes that *Eisen* applies where plaintiffs admit the inapplicability of subsection (b)(1)(A), but does not require an affirmative showing of the risk of separate actions to obtain certification under that subsection. Because Plaintiffs do not concede the impossibility of separate actions in this case, *Eisen* does not bar certification.

For its second objection to certification under subsection (b)(1)(A), United contends that it would not be subject to inconsistent standards because it "owes the class differing obligations based on differing plan terms." (Dkt. No. 156 at 40.) This response misconstrues the nature of Plaintiffs' argument. The obligation that United owes the class—about which courts could disagree and require incompatible standards of conduct—comes not from plan terms but from the statute and regulations.

As an ERISA plan administrator, United is required to discharge its duties "in accordance with the documents and instruments governing the plan." 29 U.S.C. § 1104(a)(1)(D); *see Heimeshoff v. Hartford Life & Acc. Ins. Co.*, 571 U.S. 99, 108 (2013) (discussing the importance of the written terms of an ERISA plan). In denying claims for facility fees, United is required to "provide adequate notice in writing to any participant or beneficiary whose claim for benefits under the plan has been denied, setting forth the specific reasons for such denial." 29 U.S.C. § 1133(1). Such notice must make "[r]eference to the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(1)(ii).

Plaintiffs contend that in adopting its policy of refusing to pay OBS facility fees and processing claims for such fees consistent with that policy, United has run afoul of these obligations. And the Court observes that these are precisely the kinds of obligations for which

23

subsection (b)(1)(A) aims to save defendants from incompatible judicial directives.  *See Kindle v. Dejana*, 315 F.R.D. 7, 12 (E.D.N.Y. 2016) ("The risk of inconsistent adjudications raised in Rule 23(b)(1)(A) 'speaks directly to ERISA suits, because defendants have a statutory obligation, as well as a fiduciary responsibility, to treat the members of the class alike.'" (quoting *In re Citigroup*, 241 F.R.D. at 179)).

Contrary to United's characterization (Dkt. No. 156 at 41), this is not a case "where the risk of inconsistent results in individual actions is merely the possibility that the defendants will prevail in some cases and not in others, thereby paying damages to some claimants and not others."  *Meidl*, 2017 WL 1831916, at *16.  Rather, separate actions could put United into a position in which its structure for processing facility fee claims from OBS practices is deemed permissible by some courts but held to violate the requirements of ERISA by others.  This falls squarely into the circumstances in which courts have certified classes under subsection (b)(1)(A).  *See, e.g.*, *id.* at *18 (holding certification appropriate where the insurer "applied the same [policy] to all putative class members, and [applicable] regulations call for consistent application of each plan's provisions");  *Premier Health Ctr., P.C. v. UnitedHealth Grp.*, No. 11 Civ. 425, 2014 WL 4271970, at *28–29 (D.N.J. Aug. 28, 2014) (certifying class where separate actions involving compliance with "ERISA's notice and appeal requirements" could impair defendants "ability to pursue a uniform course of conduct").

Accordingly, certification of a class seeking declaratory and injunctive relief under subsection (b)(1)(A) is appropriate in this case.[6]

---

[6]      Because Plaintiffs have satisfied Rule 23(b)(1)(A), the Court need not consider the parties' arguments regarding the application of subsection (b)(1)(B).  Additionally, because the Court is granting class certification in part, Plaintiffs' request in the alternative for issue certification (Dkt. No. 143 at 35–36) is denied as moot.

       **b.**        **Subsection (b)(2)**

Plaintiffs also seek to certify a class for injunctive and declaratory relief under Rule 23(b)(2).  This subsection of Rule 23(b) provides that a class action may be maintained if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2).  "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class."  *Dukes*, 564 U.S. at 360.

Here, Plaintiffs seek a declaratory judgment that the process employed by United to deny facility fee claims violates ERISA and an order requiring United to "reprocess the denied claims to fairly apply the terms of its Plans."  (Dkt. No. 143 at 27.)  In numerous ERISA cases, courts have certified classes under subsection (b)(2) where defendants allegedly employed an unlawful general policy that affected the process for adjudicating all claims of the class, and plaintiffs sought declaratory and injunctive relief requiring reprocessing of the claims.  *See*, *e.g.*, *Trujillo v. UnitedHealth Grp., Inc.*, No. 17 Civ. 2547, 2019 WL 493821, at *8 & n.6 (C.D. Cal. Feb. 4, 2019); *Meidl*, 2017 WL 1831916, at *20; *Wit v. United Behavioral Health*, 317 F.R.D. 106, 137 (N.D. Cal. 2016).[7]

United counters that certification under subsection (b)(2) is nonetheless inappropriate because a reprocessing injunction would not actually result in a final benefit to all members of

---

[7]      The ERISA cases on which United relies are not to the contrary (Dkt. No. 156 at 42), because those courts determined that there was no unlawful blanket policy or process employed by defendants that could be assessed on a classwide basis without individualized determinations of plan language and claims.  *See In re WellPoint, Inc. Out-of-Network UCR Rates Litig.*, No. MDL 09-2074, 2014 WL 6888549, at *20–21 (C.D. Cal. Sept. 3, 2014); *Lipstein v. UnitedHealth Grp.*, 296 F.R.D. 279, 292 (D.N.J. 2013).

the class; instead, it would only provide for subsequent individualized determinations of specific

plan language by which some members might receive plan benefits.  (Dkt. No. 156 at 42–43.)

The Seventh Circuit appears to have adopted the reasoning that United offers, holding that

injunctive or declaratory relief sought under Rule 23(b)(2) must itself be *final* relief benefiting

the whole class.  *See*, *e.g.*, *Kartman v. State Farm Mut. Auto. Ins. Co.*, 634 F.3d 883, 893 (7th

Cir. 2011).  But other courts have expressly rejected this position in the ERISA context, holding

that a reprocessing order is sufficient generalized relief under Rule 23(b)(2) even where every

individual class member might not ultimately receive benefits upon reprocessing of their claims.

*See Meidl*, 2017 WL 1831916, at *22 (distinguishing *Kartman*); *Des Roches v. Cal. Physicians'*

*Serv.*, 320 F.R.D. 486, 509–10 (N.D. Cal. 2017) (same); *Wit*, 317 F.R.D. at 136–38 (same).  In

reliance on the persuasive reasoning of courts to have encountered this issue in ERISA cases, this

Court holds that a reprocessing order and related relief are sufficient to satisfy the requirements

of Rule 23(b)(2) under the circumstances.

Overall, Plaintiffs have adequately demonstrated that, in adopting its policy toward OBS

facility fee claims and its process for rejecting such claims, United acted on grounds that apply

generally to the class and the relief sought would inure to the benefit of each member of the

class.  Accordingly, Rule 23(b)(2) provides an additional basis for certifying the class for

injunctive and declaratory relief.

### 2.      Benefits Award Class Under Rule 23(b)(3)

Plaintiffs also seek certification under Rule 23(b)(3) so that the Court has the option of

awarding benefits directly to class members rather than remanding to United to reprocess their

denied benefits claims.  (Dkt. No. 143 at 25.)  The class's benefits claims in particular, then—

and the nature of the inquiry the Court would need to engage in to determine whether an award

of benefits is required under the class members' respective health benefit plans—are thus crucial to the Rule 23(b)(3) inquiry.

To certify a class under Rule 23(b)(3), plaintiffs must satisfy three requirements. First, they must demonstrate predominance: "that the questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3). Second, plaintiffs must demonstrate superiority: "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." *Id.* Third, they must show that the proposed class is ascertainable: that the "proposed class is defined using objective criteria that establish a membership with definite boundaries." *In re Petrobras Sec.*, 862 F.3d 250, 269 (2d Cir. 2017). Because Plaintiffs have failed to show that common questions predominate for their proposed benefit award class, the Court need not consider the other two requirements.

"The predominance inquiry tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation." *Tyson Foods, Inc. v. Bouaphakeo*, 136 S. Ct. 1036, 1045 (2016) (citation and internal quotation marks omitted). The requirement is satisfied "if resolution of some of the legal or factual questions that qualify each class member's case as a genuine controversy can be achieved through generalized proof, and if these particular issues are more substantial than the issues subject only to individualized proof." *In re U.S. Foodservice Inc. Pricing Litig.*, 729 F.3d 108, 118 (2d Cir. 2013) (citation omitted). In making this determination, courts must "give careful scrutiny to the relation between common and individual questions in a case." *Tyson Foods*, 136 S. Ct. at 1045.

United contends that common questions do not predominate for the class's benefits claims in part because determining whether OBS facility fees are covered under the terms of

specific health benefits plans will require substantial individualized inquiries.  (Dkt. No. 156 at

44–45; *id.* at 25–34.)  Specifically, United argues that the Court will need to examine individual

plan language for each denied OBS facility fee claim in the class to determine whether the

specific plan terms at issue should have been interpreted to cover the fees.  (Dkt. No. 156 at 27–

28.)  In support, United relies on several cases involving benefits claims under ERISA in which

courts denied class certification on predominance grounds because class members were subject

to different plan language requiring individualized interpretation.  *See, e.g.*, *In re WellPoint*,

2014 WL 6888549, at *7–11, *21; *Lipstein*, 296 F.R.D. at 288–91, 293; *Franco v. Conn. Gen.

Life Ins. Co.*, 289 F.R.D. 121, 135–37 (D.N.J. 2013).

     In arguing to the contrary that the proposed class's claims for benefits will not require

substantial individualized inquiries into plan language, Plaintiffs make two points.

### a.     Similarity of Plan Terms

     First, Plaintiffs contend that the class members' plans are sufficiently similar in relevant

respects that the benefits claims can be adjudicated on a classwide basis.  (Dkt. No. 143 at 18–

20.)  To demonstrate this similarity, Plaintiffs allege that all plans cover outpatient surgery

facility fees and no language in any United plan expressly limits these fees to Article 28

providers.  (Dkt. No. 143 at 18.)  However, the second of these allegations is hotly contested,

requiring the interpretation of plan language to determine whether certain plans indeed have

express restrictions against paying facility fees to OBS practices.  (Dkt. No. 156 at 28, 33 n.17;

Dkt. No. 174 at 13–14 ¶ 1.)  And even absent such express restrictions, the Court would need to

interpret the language of the plans in the class to determine whether, by their terms, they provide

coverage for such fees.  *See Heimeshoff*, 571 U.S. at 108 (recognizing "the particular importance

of enforcing plan terms as written in § 502(a)(1)(B) claims").

Plaintiffs nonetheless argue that adjudication of the class's benefits claims will not require individualized inquiry, because the relevant plan definitions are substantially similar. (Dkt. No. 143 at 12, 19.)  To understand this argument, it is necessary to lay out some background about the sample of claims considered by the parties and the contours of the class as a whole:  Columbia has 49 remaining claims in this action under 45 different health benefit plans.  (Dkt. No. 162 at 1.)  United assembles these into 20 groupings within which the plans at issue have substantively identical relevant plan terms.  (Dkt. No. 162 at 18–39.)  The total sample considered by Plaintiffs in moving for class certification includes 69 claims submitted by 63 patients, corresponding to plans for 46 different employer-sponsors.  (Dkt. No. 144 ¶¶ 8–11.)[8] This sample is taken from a class that United estimates to contain "more than 2,300 separate plans."  (Dkt. No. 102 at 2.)  And United takes the position that it "cannot tell the prevalence of a certain variant of plan language across the universe of plans it administers."  (Dkt. No. 200 ¶ 416.)[9]

Based on the sample of claims and plans before them, Plaintiffs argue that the plans are materially indistinguishable.  Some of the plans in the sample do indeed have certain similarities: the plans of 24 different employers, covering the claims of 32 patients, share a common definition of "alternate facility" (Dkt. No. 144 ¶ 15); and the plans of 11 different employers, covering the claims of 13 patients, share a common definition of "ambulatory surgical center"

---

[8]     The total sample is larger than the number of claims remaining because the Court previously granted partial summary judgment to United on assignment grounds for twenty of Columbia's claims.  (Dkt. No. 153 at 6, 25; Dkt. No. 156 at 28 n.14.)

[9]     Plaintiffs have not established whether the entire class of plans can be sorted into approximately the 20 groupings identified by United, or whether the proportion of variation observed in the sample will be the same proportion across the entire class.  If the latter is correct, and the 20/45 ratio from this sample holds across the estimated universe of plans in the class, the class would contain over 1,000 distinct groupings within which plans would have substantively identical relevant plan terms.

(Dkt. No. 144 ¶ 16).  According to Plaintiffs, these facility definitions encompass OBS practices, demonstrating that any outpatient surgery fees covered by the plan cannot be denied to OBS providers.  (Dkt. No. 143 at 19–20.)

On the merits, United offers a different interpretation of these facility definitions.  (*See* Dkt. No. 156 at 29–30; Dkt. No. 162 at 19–20, 23–25.)  And for class certification purposes, it responds that these similar definitions alone will not prevent the class's benefit claims from being swallowed up by individualized inquiries.  United's primary argument posits that even though some plans may share a common facility definition, the provisions relevant to the plan's scope of coverage nonetheless differ, and the Court must interpret all of a plan's provisions together to determine whether OBS facility fees are covered.  (Dkt. No. 156 at 31–32.)

United is correct.  In interpreting ERISA plans in the context of benefits claims, courts must "review the Plan as a whole."  *In re DeRogatis*, 904 F.3d 174, 187 (2d Cir. 2018) (citation omitted); *see Browe v. CTC Corp.*, 331 F. Supp. 3d 263, 303 (D. Vt. 2018) ("[I]n construing the plan documents, a court cannot interpret words in a vacuum, but rather must carefully consider the parties' context and the other provisions in the plan." (brackets and citation omitted)).

Of Columbia's 49 remaining benefits claims in this action brought under 45 different plans, United sorted them into 20 groupings within which the plans at issue have substantively identical relevant plan terms.  (Dkt. No. 162 at 18–39.)  And as explained in United's summary judgment briefing, these 20 groupings of plans contain various terms, apart from any common definitions, that are relevant to interpreting whether OBS facility fees are covered.  (*See* Dkt. No. 162 at 26–28 (plans for Patients BJ, Z, AI, and BA).)  To resolve the merits of Columbia's benefits claims alone, the Court will need to individually analyze the specific terms within these 20 groupings of plans to determine whether the plans cover OBS facility fees.  To resolve the

benefit claims of the entire class, the Court would need to sort approximately 2,300 plans

covering over 5,000 patients into similar groupings, then interpret the language of the plans

within each grouping to determine whether the corresponding facility fee claims should have

been granted.

This exercise would entail substantial individualized inquiry into plan language.   And

where such inquiry is required, courts have held that certification of a class under Rule 23(b)(3)

is inappropriate.  *See, e.g.*, *In re WellPoint*, 2014 WL 6888549, at *21; *Lipstein*, 296 F.R.D. at

293; *Franco*, 289 F.R.D. at 135–37.

Plaintiffs respond to this argument only briefly in their reply, asserting in conclusory

fashion that "United overstates the amount of plan-term variation."  (Dkt. No. 174 at 24.)  But as

the party seeking class certification, Plaintiffs bear the burden of establishing by a preponderance

of the evidence that the predominance requirement is satisfied.  *See Johnson*, 780 F.3d at 137.

And here, Plaintiffs have not adequately explained why common facility definitions in some

class members' plans render the variations among other plan terms irrelevant.

United argues as a secondary point that, even accepting that some plans have

substantially similar definitions relating to covered facilities, these similarities only occur in 35

plans in the sample, covering 48 claims.  (Dkt. No. 144 ¶¶ 15–16.)  Indeed, Plaintiffs

acknowledge that for 10 claims asserted on behalf of 9 patients, the plans at issue contain no

definition for facility.  (Dkt. No. 144 ¶ 18; Dkt. No. 143 at 12.)  And Plaintiffs make no

argument respecting the relevant plan terms for the remaining 11 claims in the sample.  (*See* Dkt.

No. 144 ¶ 11.)

For 30% of the claims in the sample, then, the plans lack any shared facility definitions.

(Dkt. No. 156 at 32.)  Plaintiffs make no attempt to rebut this point on reply, or to explain why

interpreting the terms of the plans underlying these claims would not require individualized inquiries.  Moreover, assuming the 30% ratio holds across the entire class—and that each of the estimated 5,124 patients in the class only has one claim for unpaid facility fee benefits— approximately 1,537 class members would not be subject to plans with similar facility definitions.  For this substantial proportion of class members, the Court would need to analyze the specific terms of their health benefits plans to determine their entitlement to a benefits award.

Overall, on their first argument that the minimal variation in plan terms allows for classwide adjudication of benefits claims, Plaintiffs have not demonstrated that each class member's entitlement to a benefits award is indeed capable of common proof.

### b.      Granting Benefits in Light of ACA § 2706

Second, Plaintiffs briefly argue that United cannot deny OBS facility fee claims "regardless of plan language" because any such denial would impermissibly conflict with Section 2706 of the Affordable Care Act.  (Dkt. No. 143 at 19 (citing 42 U.S.C. § 300gg-5; 29 U.S.C. § 1185d).)  Plaintiffs read this provision to prohibit United from discriminating against OBS practices by denying their facility fee claims but granting those of other providers.  (Dkt. No. 143 at 19.)  As United explains, however, this argument does not save the Court from needing to interpret individual plan language to resolve the benefit claims.  (Dkt. No. 156 at 33– 34.)[10]

The proposed class's claims for benefits are brought under ERISA § 502(a)(1)(B). (Compl. ¶ 116.)  As this Court has noted previously, "courts may invoke ERISA § 502(a)(1)(B) only to enforce the terms of the Plan, 'as written.'"  *Laurent v. PricewaterhouseCoopers LLP*,

---

[10]      Notably, Plaintiffs do not continue to press the relevance of ACA § 2706 to the proposed class's benefit claims in their reply brief.  (Dkt. No. 174 at 15.)

No. 06 Civ. 2280, 2017 WL 3142067, at *4 (S.D.N.Y. July 24, 2017) (quoting *CIGNA Corp. v. Amara*, 563 U.S. 421, 436 (2011)).  Assuming that Plaintiffs' understanding of the legal import of ACA § 2706 is correct, the Court can interpret the class members' plans in light of that provision, using it to help determine "what the language [of the plans] means."  *Id.* at *5 (quoting *Amara*, 563 U.S. at 436.)  On the other hand, if the language of the plans cannot be *interpreted* to cover OBS facility fees, the Court cannot *alter* the words of the plans—*i.e.*, reform them—in light of ACA § 2706 in order to grant benefits under ERISA § 502(a)(1)(B).  *Id.* at *6.

But either way, the Court is required to examine the language of each class member's plan to determine whether it is capable of interpretation consistent with ACA § 2706.  Even if Plaintiffs' understanding of this anti-discrimination provision is correct, then, it will not save the Court from engaging in individualized inquiry into the language of class members' plans.

\* \* \*

Plaintiffs seek to certify a class under Rule 23(b)(3) so that the Court has the ability to award class members benefits in the event that their facility fee claims were unlawfully denied. But the Court can only award benefits that are covered by the class members' respective plans, and to determine whether benefits are covered the Court must interpret the language of those plans.  In the circumstances of this case, this interpretative exercise would necessarily devolve into "a series of mini-trials" to establish each class member's entitlement to benefits.  *Moore v. PaineWebber, Inc.*, 306 F.3d 1247, 1253 (2d Cir. 2002).

Given the centrality of issues of plan interpretation to determining liability for the class's benefit claims, the Court concludes that these individualized questions would predominate at

trial.[11]  Accordingly, because Plaintiffs have not adequately demonstrated that the predominance

requirement is satisfied, their request to certify a class under Rule 23(b)(3) is denied.

## IV.   Conclusion

For the foregoing reasons, Plaintiffs' motion for class certification is GRANTED in part

and DENIED in part.  A class composed of "any United Plan member, or member's valid

assignee, whose claim for facility fees for services rendered by an out-of-network OBS provider

accredited under Section 230-d was denied," as set out in Part III, is certified for purposes of

seeking declaratory and injunctive relief.  The Court hereby appoints Columbia, MSSNY, and

NYOBS as representatives of the certified class, and appoints Zuckerman Spaeder LLP and

Buttaci Leardi & Werner LLC as co-lead class counsel.

The Clerk of Court is directed to close the motion at Docket Number 142.

SO ORDERED.

Dated: September 11, 2019
       New York, New York

_____
                 J. PAUL OETKEN
              United States District Judge

---

[11]     Because individual questions involving the assessment of plan language alone
will predominate over any common questions relevant to the proposed class's benefits claims,
the Court need not address the parties' arguments regarding the relevance of assignment issues to
the predominance inquiry.  (Dkt. No. 156 at 18–23, 45; Dkt. No. 174 at 16–17, 25.)