UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE MEDICAL SOCIETY OF THE STATE OF NEW YORK, *on behalf of its members*, *et al.*,<br>Plaintiffs,<br><br>-v-<br><br>UNITEDHEALTH GROUP INC., *et al.*,<br>Defendants. | 16-CV-5265 (JPO)<br><br>OPINION AND ORDER |

J. PAUL OETKEN, District Judge:

Plaintiffs the Medical Society of the State of New York, the Society of Office Based Surgery Facilities, and Columbia East Side Surgery, P.C. ("Columbia"), bring this class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, against Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, United HealthCare Service LLC, Optum Group, LC, Optum, Inc., and Oxford Health Plans LLC (collectively, "United"). United has now moved to strike the expert report of Michael Miscoe (Dkt. No. 158), and moved for summary judgment (Dkt. No. 161). For the reasons that follow, Defendants' motion to strike is denied and Defendants' motion for summary judgment is granted in part and denied in part.

**I.  Background**

The Court assumes familiarity with the background of this case, as set forth in this Court's prior opinions. *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, 332 F.R.D. 138, 143–45 (S.D.N.Y. 2019); *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2019 WL 1409806, at *1 (S.D.N.Y. Mar. 28, 2019); *Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2018 WL 1773142, at *1 (S.D.N.Y. Apr. 12, 2018);

1

*Med. Soc'y of the State of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2017 WL 4023350, at *1–2 (S.D.N.Y. Sept. 11, 2017). Additional facts most relevant to the motions pending before the Court are briefly recounted below.

United processes the vast majority of its health benefit claims using an automatic benefit claim adjudication system. (Dkt. No. 170 ¶ 54.) While United asserts that the system "allows [it] to automatically process benefit claims in accordance with the coverage provisions of each individual plan . . . [by] follow[ing] the logic of the plan terms for each claim adjudication" (*id.*), Plaintiffs dispute that the auto-adjudication system applies the language of the plan terms with respect to the coverage of facility fees for office-based surgery ("OBS") providers. (Dkt. No. 183 ¶¶ 54–56, 59, 62–64, 379–416.)

United asserts that it is the industry standard to "presumptively follow" Medicare's billing practices. (Dkt. No. 170 ¶ 15.) As part of those billing practices, Medicare does not pay facility fees to OBS providers. (Dkt. No. 170 ¶¶ 20–21.) Plaintiffs dispute that Medicare is the medical billing lodestar of the commercial payers like United. (*See* Dkt. No. 183 ¶¶ 15–16, 20–21.) When Columbia submitted the claims that form the basis of this action, it purportedly did so by "using a variety of inaccurate claim forms and billing codes in unsuccessful attempts to convince United that it was a licensed facility entitled to receive facility fees." (Dkt. No. 170 ¶ 93.) While Plaintiffs do not dispute that United accurately recounts the claim forms and codes that Columbia used to bill, they do dispute that the claim forms and billing codes that Columbia used were improper and assert that Columbia made "good-faith efforts to bill properly." (Dkt. No. 183 ¶ 93.)

When Columbia's facility fee claims were ultimately denied, it received notices from United's system stating that it would not pay facility fees to OBS providers because such

providers are not facilities under New York law. (*See* Dkt. No. 200 ¶¶ 275, 279; *see also* Dkt. No. 73-6; Dkt. No. 73-7 (examples of letters).)

In the operative complaint, Plaintiffs assert claims for injunctive relief as well as damages for unpaid benefits. (Dkt. No. 73.) In addition to moving to strike the expert report of Michael Miscoe (Dkt. No. 158), United has moved for summary judgment on all of Plaintiffs' claims for relief (Dkt. No. 161).

## II. Motion to Strike

### A. Legal Standard

The admissibility of expert testimony is governed by Federal Rule of Evidence 702, which provides that an expert who is "qualified . . . by knowledge, skill, experience, training, or education may testify" if the testimony would be helpful to the trier of fact, is "based on sufficient facts or data," and is "the product of reliable principles and methods," reliably applied to the facts of the case. Fed. R. Evid. 702. And these factors, in turn, largely have their origins in *Daubert*, in which the Supreme Court held that the district court bears a critical gatekeeping function in assessing the admissibility of expert testimony. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589–95 (1993).

"[T]he proponent of expert testimony has the burden of establishing by a preponderance of the evidence that the admissibility requirements of Rule 702 are satisfied . . . ." *United States v. Williams*, 506 F.3d 151, 160 (2d Cir. 2007). Although Rule 702 requires courts to serve an initial gatekeeping function to keep out "junk science," *Davis v. Carroll*, 937 F. Supp. 2d 390, 412 (S.D.N.Y. 2013), it is nonetheless "a well-accepted principle that Rule 702 embodies a liberal standard of admissibility for expert opinions," *Nimely v. City of New York*, 414 F.3d 381, 395 (2d Cir. 2005). However, "nothing in either *Daubert* or the Federal Rules of Evidence

3

requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered." *Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).

**B.     Discussion**

Michael Miscoe was retained by Plaintiffs as a medical billing expert, in an effort to ascertain whether Columbia's bills were miscoded. (*See* Dkt. No. 160-1.) In relevant part, his expert report opined on three issues: (1) "[w]hether it is appropriate for an accredited Office-Based Surgical Facility to report the facility expenses associated with the surgical procedures performed on a UB-04 billing form," (2) "[w]hether the facility and provider claims submitted by [Columbia] appropriately identified the nature of the facility where services were rendered," and (3) "[w]hether it is appropriate for physicians performing surgical procedures in an accredited Office-Based Surgical Facility to use place of service code 24 or other facility-based place of service code on the physician claim." (Dkt. No. 160-1 at 3.)[1]

*Daubert* presents a two-step inquiry for deciding whether to admit expert testimony. The first question a court poses in conducting the *Daubert* inquiry is "whether the expert has sufficient qualifications to testify." *Davis*, 937 F. Supp. 2d at 412 (citation omitted). If so, the "next question is 'whether the proffered testimony has a sufficiently reliable foundation.'" *Id.* (quoting *Amorgianos v. Nat'l R.R. Passenger Corp.*, 303 F.3d 256, 265 (2d Cir. 2002)). "The ultimate determination the Court must make on a *Daubert* motion is that the expert 'employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in

---

[1] In his expert report, Miscoe also opined on a fourth issue — "[w]hether [Columbia] misused modifier 59 when submitting claims." (Dkt. No. 160-1 at 3.) However, Plaintiffs and United both agree that this issue is no longer relevant after this Court dismissed United's counterclaims relating to that issue. (*See* Dkt. No. 159 at 3; Dkt. No. 186 at 7.)

4

the relevant field.'" *Fort Worth Emps.' Ret. Fund v. J.P. Morgan Chase & Co.*, 301 F.R.D. 116, 127 (S.D.N.Y. 2014) (quoting *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999)).

Here, the Court finds that Miscoe clearly has sufficient qualifications to opine on the relevant issues. Miscoe has extensive experience in the medical coding field. He has been a Certified Professional Coder as determined by the American Academy of Professional Coders ("AAPC") since 2001. (Dkt. No. 160-1 at 25.) He also has been certified in several specialty coding areas by the AAPC, including as a Certified Ambulatory Surgical Coder, Certified Professional Compliance Officer, and Certified Professional Medical Auditor. (*Id.*) Indeed, he is the Chair of the AAPC Ambulatory Surgical Center Specialty Examination Committee. (Dkt. No. 160-1 at 38.) He has an extensive publication history (*see* Dkt. No. 160-1 at 34–36), and he has testified as an expert witness in numerous depositions, trials, and hearings since 2009 (*see* Dkt. No. 160-1 at 40–42).

United does not challenge these credentials, instead arguing that Miscoe's expert report does not have a sufficiently reliable foundation. "[A] trial judge should exclude expert testimony if it is speculative or conjectural or based on assumptions that are so unrealistic and contradictory as to suggest bad faith or to be in essence an apples and oranges comparison. Other contentions that the assumptions are unfounded go to the weight, not the admissibility, of the testimony." *Zerega Ave. Realty Corp. v. Hornbeck Offshore Transp., LLC*, 571 F.3d 206, 213–14 (2d Cir. 2009) (alterations, citations, and internal quotation marks omitted).

United makes three arguments in support of that contention. First, United argues that the expert report is not based on any personal experience, supporting data, evidence, or authority. (*See* Dkt. No. 159 at 6–8.) This is inaccurate. Miscoe explicitly undertook a review to determine whether any contractually imposed standards, state law, or federal law provided any

5

binding authority regarding whether the specific billing codes and forms used by Columbia were defective. (*See* Dkt. No. 160-1 at 4–9.) That United believes that Miscoe should have considered other sources as well does not make his expert opinion so "speculative or conjectural" as to require the exclusion of his testimony. *See Zerega Ave. Realty Corp.*, 571 F.3d at 214. Nor is the core conclusion that Columbia's billing was proper because no law prohibited it "so unrealistic and contradictory as to suggest bad faith." *Id.* Accordingly, exclusion on this basis is unwarranted.

United makes two additional arguments that Miscoe's expert opinion should be excluded. It argues that Miscoe's theory that the surgical services provided by OBS practices cannot safely be performed in non-facility settings is "demonstrably wrong." (Dkt. No. 159 at 8–10.) It also argues that Miscoe failed to consider New York state law or New York State Department of Health guidance. (Dkt. No. 159 at 10–14.) However, these arguments go to "weight, not the admissibility of the testimony." *See Zerega Ave. Realty Corp.*, 571 F.3d at 214 (citation omitted). Further, because this case is not to be tried by jury, the presumption of admissibility is even stronger. Because the Court is the ultimate fact-finder, rather than "gate-keep expert testimony from itself," the Court can "take in the evidence freely and separate helpful conclusions from the ones that are not grounded in reliable methodology." *720 Lex Acquisitions v. Guess? Retail, Inc.*, No. 09 Civ. 7199, 2014 WL 4184691, at *10 (S.D.N.Y. Aug. 22, 2014) (alteration, citation, and internal quotation marks omitted).

Accordingly, because Miscoe's report is not so lacking in foundation as to be inadmissible, particularly when there will be no jury, United's motion to strike is denied.

6

**III.     Motion for Summary Judgment**

   **A.     Legal Standard**

Summary judgment under Rule 56 is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if, considering the record as a whole, a rational jury could find in favor of the non-moving party. *See Ricci v. DeStefano*, 557 U.S. 557, 586 (2009).

"On summary judgment, the party bearing the burden of proof at trial must provide evidence on each element of its claim or defense." *Cohen Lans LLP v. Naseman*, No. 14 Civ. 4045, 2017 WL 477775, at *3 (S.D.N.Y. Feb. 3, 2017) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986)). "If the party with the burden of proof makes the requisite initial showing, the burden shifts to the opposing party to identify specific facts demonstrating a genuine issue for trial, *i.e.*, that reasonable jurors could differ about the evidence." *Clopay Plastic Prods. Co. v. Excelsior Packaging Grp., Inc.*, No. 12 Civ. 5262, 2014 WL 4652548, at *3 (S.D.N.Y. Sept. 18, 2014). The court views all "evidence in the light most favorable to the non-moving party," and summary judgment may be granted only if "no reasonable trier of fact could find in favor of the nonmoving party." *Allen v. Coughlin*, 64 F.3d 77, 79 (2d Cir. 1995) (second quoting *Lunds, Inc. v. Chem. Bank*, 870 F.2d 840, 844 (2d Cir. 1989)) (internal quotation marks omitted).

   **B.     Discussion**

United moves for summary judgment on all claims, including Plaintiffs' class claims for injunctive relief and Plaintiffs' benefits claims.

### 1.      Injunctive Relief Claims

Plaintiffs have asserted that United adopted a "Uniform Refusal to Pay" facility fees to OBS providers. (Dkt. No. 73 ¶¶ 10, 97.) United argues that, far from having such a uniform policy, it simply uses default interpretation positions and standard claim adjudication procedures to process the almost two million claims it receives daily. (Dkt. No. 162 at 12–13.) United asserts that it is permissible under ERISA for it to develop default interpretation positions and vet plans as they are onboarded to ensure that they do not conflict with those default interpretations. (Dkt. No. 162 at 14.) United has created a standard adjudication practice "fully consistent with industry norms" by which it does not pay OBS providers facility fees "absent clear plan language to the contrary," because OBS providers are classified as "offices" rather than "facilities" under its default interpretation position. (Dkt. No. 170 ¶¶ 59–60.) Based on that default interpretation, OBS providers do not qualify as facilities because they are not certified as ambulatory surgical centers ("ASCs") under Article 28. (Dkt. No. 170 ¶ 60.)

United asserts that it has had this practice since 2005, and that all "Fully-Insured and ASO Plan provisions that were either drafted or vetted by United personnel since at least 2010" have been created or reviewed with the default interpretations in mind. (Dkt. No. 170 ¶¶ 61–62.) During the drafting or review of plan terms, if a plan had language that conflicted with this default interpretation, it would have been considered a "nonstandard" term and triggered a review. (Dkt. No. 170 ¶ 64.) United asserts that it has never encountered a "nonstandard" term, and thus no review concerning facility fee benefits for OBS providers has ever been conducted. (*Id.*)

In response, Plaintiffs reject the notion that plan terms were ever considered during this auto-adjudication process and point to several disputes of fact that it considers material. (Dkt.

No. 182 at 16–26.) While the discussion that follows is not intended to be exhaustive, two major areas of disputed fact are discussed below that preclude this Court from granting summary judgment in United's favor on Plaintiffs' injunctive claims.

First, New York's OBS law was enacted in 2007. While United asserts that all plans have been vetted with the understanding that OBS providers were not facilities since 2010 (Dkt. No. 170 ¶ 62), most of the plans were onboarded before OBS providers came into existence in 2007 (Dkt. No. 183 ¶ 386). While United denies that the date of onboarding was "necessarily . . . the last time the language of the plans in question was vetted," it notes in the same paragraph that "the passage of the 2007 [OBS] legislation did not provide a reason for United to revisit its initial construction of the surgical provisions of any of the plans." (Dkt. No. 200 ¶ 386.) Plaintiffs argue that because the change in New York law apparently did not trigger a re-review of the plan terms, and the plans were onboarded before OBS providers existed, United could not have not made an affirmative determination whether OBS providers were covered under the plan terms. (Dkt. No. 162 at 22.)

ERISA requires that plan administrators, such as United, are required to make benefit determinations in accordance with the governing plan documents. *See* 29 U.S.C. § 1104(a)(1)(D); 29 C.F.R. § 2560.503-1(b)(5). And this Court is required, on a motion for summary judgment, to view the "evidence in the light most favorable to the non-moving party." *Allen*, 64 F.3d at 79. In that light, it cannot be said that "no reasonable trier of fact could find" that United failed to properly consider its plan terms within the context of its auto-adjudication system when it decided not to pay facility fees to OBS providers. *Lunds*, 870 F.2d at 844.

Further, United writes off Plaintiffs' claims that the denial notices it sent were deficient because the claims were raised merely "to be excused from administrative exhaustion." (Dkt.

9

No. 162 at 15 n.1.) United asserts that it is not "pressing an exhaustion defense," which "render[s] any challenge to the notices moot." (*Id.*) It goes on to say, in any event, that United "clearly inform[ed]" Plaintiffs that they could establish that they were facilities by furnishing an Article 28 license. (*Id.*)

Plaintiffs, however, do affirmatively seek relief in part for United's alleged failure to state the basis of its denial of benefits. (Dkt. No. 73 ¶¶ 93, 121.) The notices received did not point to particular plan terms. Instead, the notices simply stated that OBS providers are not facilities within the meaning of New York law, and that United would not pay facility fees on that basis. (Dkt. No. 200 ¶ 275; *see also* Dkt. No. 73-6; Dkt. No. 73-7 (examples of letters).) ERISA requires that denial notices fully explain the basis of the denial, including "the specific plan provisions on which the determination is based." 29 C.F.R. § 2560.503-1(g)(ii); *see also* 29 U.S.C. § 1133. United has not claimed that the denial notices did any such thing. Because United has not shown that the denial notices, when viewed in the light most favorable to Plaintiffs, do not violate ERISA as a matter of law, this Court cannot grant summary judgment in favor of United.

To be sure, Plaintiffs raised numerous other disputes of fact that they assert are genuine and defeat United's motion for summary judgment. The Court does not comment on the strength of these arguments one way or the other; this Court has no doubt they will be aired at the impending bench trial. At a minimum however, the two areas of genuine factual dispute discussed here preclude this Court from dismissing Plaintiffs' injunctive relief claims at the summary judgment stage. Accordingly, summary judgment on Plaintiffs' injunctive claims is denied.

### 2. Benefits Claims

First, United moves for summary judgment on seventeen of Columbia's benefits claims — the claims for Patients E, J, N, V, W, X, Z, AB, AF, AN, AO, AQ, AV, BA, BC, and BJ — because the plans that underlie these claims contain anti-assignment clauses, thus preventing Columbia from bringing these claims on its patients' behalf. (*See* Dkt. No. 183 ¶¶ 108–124.) On March 28, 2019, this Court granted summary judgment to United on twenty benefits claims because their anti-assignment clauses deprived Columbia of standing to bring those claims. (Dkt. No. 153.) Plaintiffs have conceded that any legal argument about the enforceability of these anti-assignment provisions has already been adjudicated by this Court, and do not factually dispute that the anti-assignment provisions exist. (*See* Dkt. No. 182 at 50 n.36.) Accordingly, summary judgment on the aforementioned claims is granted, and the claims are dismissed.

Second, United moves for summary judgment on all but one of Plaintiffs' benefits claims on the basis that Columbia "used claim forms and coding that misrepresented to United that it was a facility, when in fact it was at all times an office." (Dkt. No. 162 at 16.) According to United, only two of Columbia's claim forms — those for Patients AM and BF — "accurately represented" that Columbia was an office rather than a facility. (Dkt. No. 162 at 17.) However, genuine disputes of material fact prevent this Court from granting summary judgment on the basis of a misrepresentation argument.

United argues that Columbia's inaccurate coding gives it an independent basis to reject Columbia's claims. (*Id.*) However, Plaintiffs dispute that Columbia's coding constituted a misrepresentation. United argues that Columbia's characterization of itself as a facility is "inaccurate" because the industry standard dictates that OBS providers do not constitute facilities. (Dkt. No. 162 at 16.) And, United asserts, the industry standard is the relevant metric

11

by which to determine whether OBS providers constitute "facilities" under the relevant plans. (Dkt. No. 197 at 10 (citing cases).) Plaintiffs dispute that the industry standard is the relevant standard by which to interpret the plan,[2] and that any purported industry standard prevented Columbia from utilizing UB-04 forms or billing as an ASC. (*See* Dkt. No. 182 at 30–31.)

United asserts that "[i]t is industry standard for commercial payers such as United to presumptively follow Medicare's practices regarding payment to . . . OBS practices." (Dkt. No. 170 ¶ 15.) That industry practice, according to United, precludes the payment of facility fees to OBS providers. (Dkt. No. 170 ¶ 16.) Plaintiffs dispute that such an industry standard exists. Plaintiffs' expert, Michael Miscoe, clearly stated: "Outside of Medicare, there are no industry standards; there are just payer-specific standards." (Dkt. No. 169-4 at 76:6–8.) He further noted that there is no basis for rejecting these claims on the basis of improper billing because OBS providers are facilities, and if there is no explicit distinction drawn between OBS providers and Article 28 ASCs in the plans themselves, the bills are accurate. (*See* Dkt. No. 169-4 at 102:9–103:23, 267:8–17.) Drawing, as this Court must, "all reasonable inferences" in favor of Plaintiffs, there is a dispute of fact regarding whether there exists an industry standard that interprets the term "facility" to exclude OBS facilities and whether the bills were reasonably rejected on the basis that the bills were inaccurate. Accordingly, summary judgment on the basis that the claims contained misrepresentations is denied.

Finally, United argues that it is entitled to summary judgment on all of Columbia's benefits claims because it is entitled to abuse-of-discretion review, and its interpretations of each

---

[2] Plaintiffs argue that the "plain meaning" of the plan terms is the relevant method to interpret ERISA plans. (*See* Dkt. No. 182 at 30 (citing cases).) However, even assuming that industry-standard definitions are relevant to the analysis here, there is a genuine dispute of fact regarding whether the representations on the forms can be considered inaccurate. Accordingly, the Court sets aside the question of how to interpret the plan terms themselves.

of the plans at issue in this action was reasonable. (*See* Dkt. No. 162 at 17–39.) However, there is a genuine dispute of material fact regarding whether United actually interpreted the plan terms to determine whether OBS providers were entitled to facility fees pursuant to the plans.[3] *See supra* Section III.B.1.

Because there is a genuine dispute of fact regarding whether United interpreted the plan terms in the first instance, *see supra* Section III.B.1, it creates a dispute regarding whether the plans are part of the administrative record. A "newly coined rationale" that was not actually relied upon at the time of the benefit denial cannot be raised for the first time during litigation. *See Novella v. Westchester Cty.*, 661 F.3d 128, 142–143 (2d Cir. 2011). Accordingly, a court's review is limited to the administrative record which "consists of the evidence before the entity that decided the claim *when that decision was rendered*." *Pruter v. Local 210's Pension Tr. Fund*, 858 F.3d 753, 762 (2d Cir. 2017) (emphasis added) (citation omitted). This includes plan terms that were not considered when the decision to deny a benefit was made. *See Novella*, 611 F.3d at 142 (excluding a plan term from the administrative record because "the defendants did not use Section 3.16 [to make the decision] in the first instance"). Here, because there is a dispute regarding whether plan documents were consulted when United made its decision to deny facility fee benefits to OBS providers, it cannot be determined on a motion for summary judgment whether the plan terms are indeed part of the administrative record in this case. Accordingly, summary judgment on the basis that United's denials were reasonable is denied.

---

[3] As this Court noted in its September 11, 2017 Opinion and Order, if United failed to interpret the plan terms in the first instance, their benefits decisions are subject to *de novo* review, not the more deferential abuse-of-discretion standard. (Dkt. No. 59 at 6–8); *see also Halo v. Yale Health Plan*, 819 F.3d 42, 45 (2d Cir. 2016). In other words, the legal standard to be used in this case depends on the disputed factual issue regarding whether United properly referred to plan terms when it denied Columbia's claims.

**IV.   Conclusion**

For the foregoing reasons, Defendants' motion to strike is DENIED and Defendants' motion for summary judgment is GRANTED in part and DENIED in part.

The parties are directed to file a status letter on or before April 27, 2020. The letter should also indicate whether the parties are interested in pursuing mediation before a bench trial is scheduled.

The Clerk of Court is directed to close the motions at Docket Numbers 158 and 161.

SO ORDERED.

Dated: March 26, 2020
       New York, New York

_____
J. PAUL OETKEN
United States District Judge