UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
─────────────────────────────────────────

THE MEDICAL SOCIETY OF THE
STATE OF NEW YORK, *on behalf of its
members*, *et al.*,

                        Plaintiffs,

                -v-

UNITEDHEALTH GROUP INC., *et al.*,

                        Defendants.

16-CV-5265 (JPO)

OPINION AND ORDER

─────────────────────────────────────────

J. PAUL OETKEN, District Judge:

    Plaintiffs the Medical Society of the State of New York, the Society of New York Office Based Surgery Facilities, and Columbia East Side Surgery, P.C. (collectively, "Plaintiffs") bring this putative class action under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001, *et seq.*, against Defendants UnitedHealth Group Inc., United HealthCare Services, Inc., United HealthCare Insurance Company, United HealthCare Service LLC, Optum Group, LLC, Optum, Inc., and Oxford Health Plans LLC (collectively, "United" or "Defendants").

    Defendants have moved for decertification of the class that this Court previously certified under Federal Rule of Civil Procedure 23(c)(1)(C). For the reasons that follow, the motion is denied.

**I.      Background**

    The Court assumes familiarity with this case, as set forth in the Court's prior opinions. *See Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2020 WL 1489800, at *1 (S.D.N.Y. Mar. 26, 2020); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2019 WL 6888613, at *1 (S.D.N.Y. Dec. 18, 2019); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, 332

1

F.R.D. 138 (S.D.N.Y. 2019); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2019 WL 1409806, at *1 (S.D.N.Y. Mar. 28, 2019); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2018 WL 1773142, at *1 (S.D.N.Y. Apr. 12, 2018); *Med. Soc'y of N.Y. v. UnitedHealth Grp. Inc.*, No. 16 Civ. 5265, 2017 WL 4023350, at *1 (S.D.N.Y. Sept. 11, 2017).

On September 11, 2019, the Court granted in part and denied in part Plaintiffs' motion for certification. *See Med. Soc'y of N.Y.*, 332 F.R.D. 138. The Court certified a class under Rule 23(b)(1) and Rule 23(b)(2) for purposes of seeking declaratory and injunctive relief that United's blanket policy denying coverage of facility fees for office-based surgery ("OBS") providers violated ERISA. *See id.* at 146–55. The Court declined to certify a class under Rule 23(b)(3). *See id.* at 155–58. United moved for reconsideration (*see* Dkt. No. 208), which this Court denied, *see Med. Soc'y of N.Y.*, 2019 WL 6888613, at *1.

Defendants now move to decertify the class based primarily on the Supreme Court's decision in *Thole v. U.S. Bank*, 140 S. Ct. 1615 (2020). They argue that *Thole* calls into question the Court's standing analysis and its conclusion that the Rule 23 requirements have been met.

## II.    Legal Standard

Under Rule 23 of the Federal Rules of Civil Procedure, "[a]n order that grants or denies class certification may be altered or amended before final judgment." Fed. R. Civ. P. 23(c)(1)(C). Courts may "decertify a class if it appears that the requirements of Rule 23 are not in fact met." *Sirota v. Solitron Devices, Inc.*, 673 F.2d 566, 572 (2d Cir. 1982). But the court ordinarily "may not disturb its prior [certification] findings absent some significant intervening

event, or a showing of compelling reasons to reexamine the question." *Jermyn v. Best Buy Stores, L.P.*, 276 F.R.D. 167, 169 (S.D.N.Y. 2011) (quotation marks omitted).[1]

### III. Discussion

Defendants make several arguments in their motion to decertify the class: (1) following *Thole*, certain class members no longer have Article III standing; (2) the class fails the commonality requirement because the common questions are not central to the validity of the members' claims and because injunctive and declaratory relief ordering a reprocessing of the members' benefits claims does not provide the class with *final* relief; and (3) Columbia East Side Surgery, P.C. ("Columbia") is not an adequate representative for the class. (*See* Dkt. No. 251.) These arguments, substantially made in Defendants' opposition to Plaintiffs' motion to certify the class, are unavailing.

#### A.   Class Member Standing

As an initial matter, Defendants again challenge the Court's standing analysis, primarily arguing that following *Thole*, patients absolved by their healthcare provider of any out-of-pocket liability for OBS facility fees lack standing to pursue claims for benefits under ERISA. (Dkt. No. 251 at 19–21.)

The Court disagrees. Plaintiffs have standing to bring this suit even though some of the class members did not suffer any monetary harm. At the outset, it is worth noting that "economic injury is not the only kind of injury that can support a plaintiff's standing." *Vill. of*

---

[1] The Second Circuit recently held that a "significant intervening event is not required for a district court to *sua sponte* decertify a class if it finds the class no longer meets the requirements of Rule 23." *Jin v. Shanghai Original, Inc.*, 990 F.3d 251, 262 (2d Cir. 2021). However, "[b]ecause the issue of whether a significant intervening event or a similar type of showing might be appropriate when a defendant moves to decertify is not before us," *id.* at 262 n.18, it did not address this issue.

*Arlington Heights v. Metro. Hous. Dev. Corp.*, 429 U.S. 252, 262–63 (1977). To the extent that Defendants argue that Plaintiffs must show monetary harm to establish standing, this is incorrect, and *Thole* does not hold otherwise. *See Townsend v. Cochran*, No. 20 Civ. 1210, 2021 WL 1165142, at *7 (S.D.N.Y. Mar. 25, 2021) (finding that *Thole* did not compel the conclusion that plaintiff lacked standing to sue even though plaintiff did not suffer any monetary harm).

Moreover, *Thole* is distinguishable from the facts in this case. In *Thole*, the Supreme Court considered whether the plaintiffs — two retired participants in U.S. Bank's retirement plan — had standing to sue U.S. Bank for alleged mismanagement of a defined-benefit plan. *See Thole*, 140 S. Ct. at 1618. Under the defined-benefit plan, the plaintiffs received a fixed payment each month and the payments did not fluctuate with the value of the plan or because of the investment decisions made by the plan's fiduciaries. *See id.* The plaintiffs had received all their monthly benefit payments, the outcome of the suit would not affect their future benefit payments, and no benefits they sought had been wrongfully denied. *See id.* at 1619. Therefore, the Supreme Court explained, they had no "concrete stake in this lawsuit" and lacked Article III standing. *Id.*

Here, by contrast, Plaintiffs *do* have a "concrete stake" in the outcome of the action. As explained in a previous opinion and order, at least five Circuits have held that "the denial of plan benefits is a concrete injury for Article III standing even when patients were not directly billed for their medical services." *Springer v. Cleveland Clinic Emp. Health Plan Total Care*, 900 F.3d 284, 287 (6th Cir. 2018); *see also Mitchell v. Blue Cross Blue Shield of N.D.*, 953 F.3d 529, 536 (8th Cir. 2020) ("Plan participants are injured not only when an underpaid healthcare provider charges them for the balance of a bill; they are also injured when a plan administrator fails to pay a healthcare provider in accordance with the terms of their benefits plan. This follows from the

4

fact that plan participants are contractually entitled to plan benefits.  The wrongful denial of plan benefits breaches the parties' contract and deprives the participant of the benefit of their bargain."); *North Cypress Med. Ctr., Operating Co., Ltd. v. Cigna Healthcare*, 781 F.3d 182, 193 (5th Cir. 2015) (explaining that regardless of whether the patient suffered any monetary harm, "[f]ailure to pay also denies the patient the benefit of her bargain.  In purchasing her [healthcare] plan [plaintiff] agreed to pay for coverage at out-of-network providers . . . and [defendant] is failing to uphold the bargain"); *Spinedex Physical Therapy USA Inc. v. United Healthcare of Ariz., Inc.*, 770 F.3d 1282, 1291 (9th Cir. 2014); *HCA Health Servs. of Ga., Inc. v. Emp'rs Health Ins. Co.*, 240 F.3d 982, 991 (11th Cir. 2001), *overruled on other grounds by Doyle v. Liberty Life Assurance Co. of Bos.*, 542 F.3d 1352 (11th Cir. 2008).

      Defendants do not explain how *Thole* overrules, let alone implicates, these five court of appeals decisions.  Rather, they argue that a "breach-of-contract claim—in New York and everywhere else—requires proof of damages as an element."  (Dkt. No. 251 at 20.)  Setting aside the fact that this argument is not a "significant intervening event" (as that was the law prior to the opinion and order certifying the class), Defendants also miss the point by confusing the Article III requirement of injury in fact with the elements in a breach of contract action.  The Eighth Circuit's recent decision in *Mitchell*, 953 F.3d 536, is instructive.  There, the plaintiffs filed an action under ERISA alleging that their health insurance company improperly denied their claim for air-ambulance benefits under an employee health plan, even though the healthcare provider had already absolved the plaintiffs of any out-of-pocket liability for the air ambulance.  *See id.* at 533–35.  The Eighth Circuit concluded that the plaintiffs had standing under the same theory applied here:  "The denial of benefits to which a plan participant is contractually entitled is a particularized injury that affects the participant in a personal and individual way.  It is also a

5

concrete injury that actually exist[s] . . . . A court can redress this injury by awarding the contractual benefits to which the participant is entitled." *Id.* at 536 (internal quotation marks and citations omitted). The injury here, as was the case in *Mitchell*, is the alleged denial of contractual benefits, *not* alleged monetary harm.

In a supplemental letter, Defendants also argue that *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190 (2021), compels the Court to reach a different conclusion under its Article III standing analysis. (Dkt. No. 276). Again, the Court disagrees.

TransUnion is a credit reporting agency that introduced the "OFAC Name Screen Alert" in 2002, identifying individuals who were on the U.S. Treasury Department's list of "specially designated individuals" threatening the national security of the United States. *TransUnion*, 141 S. Ct. at 2201. It is generally illegal to engage in business with any person on this list. *Id.* Of course, thousands of individuals share the same names as those on the Treasury Department's list, resulting in many false positives. *See id.* But TransUnion took no additional steps (aside from comparing the person's first and last name to the names on the Treasury's list) to determine whether the individual had indeed been designated as a threat to America. *Id.* A class of individuals put on TransUnion's list sued TransUnion, alleging several violations of the Fair Credit Reporting Act. *See id.* at 2202.

In its standing analysis, the Supreme Court differentiated between two groups of class members. On the one hand, it found that members whose reports bearing a misleading alert were disseminated to third-party businesses had standing to sue because they suffered a reputational harm. *See id.* at 2208–09. The Court required no showing that these members had been denied credit or suffered any other type of tangible harm. On the other hand, the Court concluded that members whose reports bearing the misleading alert were never disclosed to any businesses

suffered no concrete harm. *See id.* at 2209–10. Here, the patients who were absolved of any out-of-pocket liability by their healthcare provider are akin to the first group of class members. Though they suffered no monetary harm, their alleged harm is a denial of the benefit of their bargain. Under *TransUnion*, they are not required to first show that they will be successful at the reprocessing stage.[2]

### B. Rule 23 Requirements

Defendants also raise challenges to this Court's conclusion that the class satisfies the requirements of Rule 23. These arguments are without merit.

First, United claims that the 23(b)(2) class fails the commonality requirement because the common question — whether United's adoption of a blanket policy denying coverage of facility fees from OBS providers violates ERISA — is not central to the validity of each claim. (*See* Dkt. No. 251 at 9–12.) Rather, according to Defendants, the central question is whether each plan covers facility fees from OBS providers, which necessarily requires an individualized inquiry as to each contract. (*See* Dkt. No. 251 at 9.) It makes a similar argument with respect to the 23(b)(1) class. (*See* Dkt. No. 251 at 16–18.)

The Court already rejected this argument in its decision certifying the class. Defendants wrongly assume that to certify a class in the ERISA context, injunctive or declaratory relief must

---

[2] In a second supplemental letter, Defendants also direct the Court's attention to *Atlantic Neurosurgical Specialists P.A. v. United Healthcare Group Inc.*, No. 20 Civ. 13834, 2021 WL 3124313 (D.N.J. July 22, 2021), an out-of-Circuit district court opinion considering Article III standing of a class alleging ERISA violations. (*See* Dkt. No. 278). *Atlantic Neurosurgical Specialists* is inapposite. There, the plaintiffs, healthcare providers acting as their patients' authorized representatives, challenged defendant United's refusal to process administrative appeals contesting the amount paid by United for emergency care. *See id.* at *1–*2. United explained that it declined to process the appeals because the form designating the providers as authorized representatives lacked certain information. *Id.* at *1. Plaintiffs then sued United, alleging that its procedure for designating authorized representatives violated ERISA. *Id.* But the actual basis for denying coverage was *not* challenged, which distinguishes the situation here.

encompass the ultimate final relief for the class. But this Court and other courts have found that a reprocessing injunction is appropriate for class certification under Rule 23(b)(2). *See Med. Soc'y of N.Y.*, 332 F.R.D. at 147. Whether United's onboarding and vetting processes, as well as its standard practice of not covering OBS claims for facility fees, satisfy ERISA are sufficient common questions that substantially drive the resolution of this litigation. After all, if these practices are found to violate ERISA, the next step in the litigation will be to reprocess the class members' claims; if they are found to satisfy ERISA, this will foreclose any further action by Plaintiffs.

Second, United argues that there is no risk of inconsistent results, as is required to satisfy class certification under Rule 23(b)(1), if plaintiffs were required to bring individualized actions because resolving the question of whether its blanket policy denying coverage for OBS facility fees violates ERISA does not determine any class member's entitlement to benefits. (*See* Dkt. No. 251 at 18–19.) But as this Court previously explained, there is a risk in the absence of a class action that courts may reach varying conclusions about whether Defendants' blanket policy violates ERISA. *See Med. Soc'y of N.Y.*, 332 F.R.D. at 153–54. United may therefore be presented with inconsistent decisions about the validity of its uniform policy denying facility fees to OBS providers. *See id.*; *see also Des Roches v. Cal. Physicians' Serv.*, 320 F.R.D. 486, 507 (N.D. Cal. 2017) ("In the absence of a class action, there is a risk that in issuing individual injunctions, different courts would come to different conclusions about what generally accepted standards require, and it is possible that different injunctions could require Defendants to adopt inconsistent policies or conform their new guidelines to inconsistent standards.").

Finally, Defendants argue that Columbia cannot fairly and adequately represent the class because the relief it seeks for itself — monetary damages — is different from what it seeks for

class members — a reprocessing demand.  (*See* Dkt. No. 251 at 21.)  This is incorrect.  The Court denied certification for a benefits awards class under Rule 23(b)(3), so the only remedy sought by Columbia for its thirty-one remaining claims in this action is a reprocessing demand.  Nor does the action filed by Podiatric OR of Midtown Manhattan, P.C., *see Podiatric OR of Midtown Manhattan, P.C. v. United Health Group Inc.*, No. 20 Civ. 9333, reflect negatively on Columbia's ability to adequately represent the class.  As Plaintiffs note, Podiatric OR is pursuing claims against United under the same theory as those pursued in the instant action.  (*See* Dkt. No. 265 at 20 n.9).

      United also raises an unclean hands defense against Columbia.  Specifically, Jordan Kravitz, a Columbia employee who handles billing, testified that Columbia regularly submitted facility fee claims to insurers that misrepresented Columbia as an ambulatory surgery center ("ASC").  (*See* Dkt. No. 251 at 23).  According to United, the vast majority of Columbia's benefits claims in this action incorrectly represent Columbia as an ASC.

      But, as Plaintiffs point out, this is not new information.  In its opposition to Plaintiff's motion for class certification, Defendants alleged essentially the same facts — that Columbia "repeatedly submitted claims for reimbursement to United in which [Columbia] knowingly and falsely represented it was licensed to operate as an Ambulator Surgery Center."  (Dkt. No. 156 at 10.)  And even if these were new factual allegations, United fails to adequately demonstrate that this practice "*related to the matter at issue* in th[e] litigation," *Gidatex, S.r.L. v. Campaniello Imports, Ltd.*, 82 F. Sup. 2d 126, 131 (S.D.N.Y. 1999) (emphasis in original).  United does not argue, for instance, that the real reason for denying these claims was the fraudulent coding.  Nor is it clear that such a claim would even pass muster given the Second Circuit's repeated emphasis

on the "narrowness of the [unclean hands] doctrine's application." *Specialty Mins., Inc. v. Pluess-Staufer AG*, 395 F. Supp. 2d 109, 112 (S.D.N.Y. 2005).

## IV.     Conclusion

For the foregoing reasons, United's motion for class decertification is DENIED.

The Clerk of Court is directed to close the motion at Docket Number 250.

SO ORDERED.

Dated: September 20, 2021
New York, New York

_____
J. PAUL OETKEN
United States District Judge